UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
| --- | --- | --- |
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION | : : | |
| | : | Misc. Action No. 06-0507 (ESH) |
| | : | MDL Docket No. 1792 |
| This Document Relates To: ALL CASES | : : : | |

---

## JOINT CASE MANAGEMENT REPORT

### I.    INTRODUCTORY STATEMENT

Plaintiffs and Defendants, InPhonic, Inc. ("InPhonic"), Continental Promotion Group, Inc. ("CPG"), and Helgeson Enterprises, Inc. ("Helgeson"), by their undersigned counsel and pursuant to this Court's Initial Practice & Procedure Order filed on December 8, 2006 (the "Order"), hereby file their Joint Case Management Report (the "Joint Report"). This Joint Report is submitted in anticipation of the Initial Scheduling and Case Management Conference (the "Conference") currently set for January 26, 2007 at 11:00 a.m. Attached hereto as Exhibits "A" and "B" are, respectively, Plaintiffs' and Defendants' proposed scheduling orders in compliance with paragraph 19 of the Court's Initial Practice & Procedure Order.

By transfer orders dated October 25, November 20, and December 27, 2006, the Judicial Panel on Multidistrict Litigation has directed that cases pending in six different districts be centralized in this District for pretrial proceedings. *See, e.g., In re InPhonic, Inc., Wireless Phone Rebate Litig.,* MDL No. 1792, 2006 WL 3079421 (J.P.M.L. Oct. 25, 2006); *see also* Exhibit "C" (listing the actions now before this Court for consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407). Prior to and following issuance of the transfer orders, counsel for Plaintiffs in the various pending class actions met and conferred and discussed, among other things, their organizational structure to

prosecute these cases. Counsel for Plaintiffs and Defendants met and conferred in Washington, DC on December 13, 2006 and January 11, 2007 to discuss the matters and issues outlined in the Order and their respective portions of this Joint Report, which they had exchanged electronically on January 8, 2007.

## II.    CASE MANAGEMENT ISSUES

The parties' agreement(s) upon and/or their respective positions regarding the matters and issues enumerated in Paragraph 19(a)-(q) of the Order are set forth below:

### A.    POSSIBILITY OF SETTLEMENT

**Plaintiffs' Position:**

Counsel for Plaintiffs believe there is currently no realistic possibility of settling this proposed nationwide class action without judicial action because, among other things, opposing counsel disagree about what effect, if any, InPhonic's purported settlement of the pending enforcement action brought by the Attorney General of the District of Columbia, entitled *District of Columbia v. InPhonic, Inc.*, D.C. Super. Court, Civil Action No. 06-4390 (the "AG Enforcement Action"), will have upon this nationwide class action.

InPhonic has represented to Plaintiffs that it has reached a "settlement in principle" with the District of Columbia Attorney General's office, settling the lawsuit brought by that enforcement agency in June 2006. *See* Letter from Mitchell Berger to Steven Hart, Kevin Roddy & John Climaco dated Dec. 21, 2006 (copy attached). According to InPhonic, that settlement will "provide a mechanism for InPhonic customers to resolve their claims and receive the amounts of their rejected rebates if they have, before the settlement agreement is signed, filed complaints with government agencies like the DCAG, or the Better Business Bureau." *Id.* at 2.

However, settlement of the AG Enforcement Action, even assuming that it eventually is agreed upon and approved by a court in the District of Columbia, (a) is not a class action settlement

pursuant to Rule 23 but, rather, settlement of an enforcement action brought in the name of the District of Columbia, *not* on behalf of a nationwide class of consumers who have been defrauded by InPhonic and its business associates, in accordance with the statutory authority provided in D.C. Code § 28-3909; (b) it is well-settled that its impact, if any, is limited to giving InPhonic a dollar-for-dollar credit in the amount of the money it actually pays to consumers through settlement of that enforcement action; and (c) it will not and cannot release the claims of all consumers nationwide. As a result, the purported settlement of the AG Enforcement Action will have little effect on the consumer protection class actions that have been centralized in this District.

Plaintiffs have found no controlling authority holding that a single state attorney general enforcement action that is not a class action can release the claims of out-of-state consumers for whom no restitution or remedy has been provided by such settlement. Moreover, such a result makes good sense because the notice requirements and other Rule 23 protections for absent class members would not exist in such a case.

**Defendants' Position:**

Plaintiffs apparently have not yet availed themselves of an opportunity to settle their claims and receive a rebate payment through a consent order to which InPhonic has agreed in principle with the Attorney General of the District of Columbia ("DCAG") in connection with the lawsuit captioned, *District of Columbia v. InPhonic, Inc.*, Civil Action No. 4390-06 (D.C. Super. Ct.) (the "DCAG Action"). InPhonic has publicly announced that it reached a settlement in principle of the DCAG Action, and the DCAG has so notified the D.C. Superior Court, which has ordered the parties to submit a further status report if the settlement is not finalized by February 7, 2007.

The DCAG Action is a lawsuit brought by the DCAG against InPhonic pursuant to the D.C. Consumer Protection Procedures Act (D.C. Official Code §§ 28-3904 and 28-3909) for the express purpose of obtaining "restitution" for "consumers throughout the United States" who claim

that they were offered, but did not receive, a rebate on a wireless phone and related equipment and services purchased through InPhonic. DCAG Action Compl., ¶ 1. Many of the named Plaintiffs' complaints in these consolidated cases make claims under the D.C. Consumer Protection Procedures Act, and most make allegations that are copied essentially verbatim from the complaint in the DCAG Action.

In effect, the DCAG is InPhonic's primary regulator because InPhonic is headquartered in the District of Columbia, and the DCAG enforces the D.C. Consumer Protection Procedures Act. In addition to restitution, the complaint in the DCAG Action seeks injunctive and declaratory relief with respect to the display and disclosure of rebate terms and conditions on the websites used by InPhonic. DCAG Action Compl., ¶¶ 1, 30. Similar claims appear in many of the complaints in these consolidated cases. The consent order settling the DCAG Action ("Consent Order") also will include InPhonic's agreement with the DCAG stipulating to the content and display of rebate terms and conditions on the websites used by InPhonic.

Counsel purporting to act for all named Plaintiffs apparently met with the DCAG on December 12 to discuss the settlement in principle of the DCAG Action. Further, in a December 13 meeting, InPhonic's counsel informed Plaintiffs' counsel that, among other things, the Consent Order will provide a mechanism for InPhonic customers (including the named Plaintiffs and all other members of the putative class) to resolve their claims and receive the amount of their unpaid rebates if they have, before the Consent Order is signed and finalized, filed complaints with government agencies like the DCAG, or with the Better Business Bureau. The settlement is not yet signed and finalized. Defendants do not know whether, and to what extent, Plaintiffs' counsel have notified either the named Plaintiffs or other putative class members that they have an opportunity to

settle their claims on this basis before the Consent Order is finalized and signed.[1]  However, Plaintiffs' counsel have informed InPhonic's counsel that "the D.C. Attorney General does not speak for our clients or the national classes they seek to represent" and that "we will object to any proposed orders in that matter [the DCAG Action] that seek to extinguish our clients' claims . . . ." Letter from Steven Hart, Kevin Roddy, & John Climaco to Mitchell Berger dated Dec. 12, 2006.

Under these circumstances, InPhonic does not believe that it is realistic to engage in settlement discussions with the named Plaintiffs outside the framework of the Consent Order.

## B.   ALTERNATIVE DISPUTE RESOLUTION

**Plaintiffs' Position:**

At this preliminary stage of the proceedings, Plaintiffs' counsel do not believe that settlement of this proposed nationwide class action could benefit from this Court's alternative dispute resolution ("ADR") procedures or some other form of ADR.

**Defendants' Position:**

For the reasons noted in pages 3-5, Defendants do not believe that alternative dispute resolution procedures would be productive at this stage.

## C.   RULE 23 PROCEDURES

**Plaintiffs' Position:**

Although Plaintiffs and Defendants Inphonic and Continental agree that the parties will need to conduct discovery before Plaintiffs can file their anticipated motion for nationwide (or even multi-state) class certification, we disagree about the appropriateness of dividing (or bifurcating) fact discovery and expert witness discovery into "class certification" and "merits" discovery.  This

---

[1]      Under the Consent Order, InPhonic has further agreed to a mechanism by which consumers whose rebates were denied for certain specified reasons may, even without filing a complaint with a government agency or the Better Business Bureau, resolve their claims and receive the amount of their rejected rebate.

subject was discussed at great length at the above-referenced meet-and-confer sessions, and the parties' respective positions are set forth below:

### 1. Plaintiffs Assert That Discovery Should *Not* Be "Bifurcated"

Plaintiffs assert that Defendants' proposed "bifurcation" of discovery between so-called "class certification" and "merits" discovery is ill-advised because it is unworkable and unnecessary. In the words of one authority:

> Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits pertains to the strength or weakness of the claims or defenses and tests whether they are likely to succeed. There is not always a bright line between the two. Courts have recognized that information about the nature of claims on the merits and the proof that they require is important to deciding certification. Arbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes.

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.14 at 256 (2004).

Addressing the MANUAL'S position on bifurcation of discovery, in *In re Plastics Additives Antitrust Litigation*, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004), Judge Davis concluded that:

> [T]he Manual suggests that the prime considerations in whether bifurcation is efficient and fair include whether merits-based discovery is sufficiently intermingled with class-based discovery and whether the litigation is likely to continue absent class certification.

*Id.* at *3. Such considerations regarding the intermingling of merits and class discovery have long been at the heart of judicial determinations when addressing so-called "bifurcation" of discovery in class actions:

> Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation. *See Manual for Complex Litigation 2d* § 30.12 (1985). An order staying discovery pending class certification would be unworkable, since plaintiffs must be able to develop facts in support of their class certification motion. An order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery.

*Gray v. First Winthrop*, 133 F.R.D. 39, 41 (N.D. Cal. 1990). In short, there should be no "bifurcation" of discovery when "merits" claims and the propriety of Rule 23 class certification are inextricably intertwined. *See generally* John Randall Whaley *et al.*, *Precertification Discovery: A User's Guide*, 80 TULANE L. REV. 1827, 1866 (2006) (stating that "it is usually very difficult to establish a bright line between 'merits' and 'class certification' discovery because of inherent ovelap and, in practice, such clear bifurcation normally does not occur").

In the instant matter, Plaintiffs assert that so-called "class certification discovery" is not readily differentiated from "merits discovery." As such, the merits of the claims asserted by Plaintiffs against Defendants and the propriety of class certification are inextricably intertwined, and the overlap renders "bifurcation" inefficient and unduly complicates the discovery process. For example, it will be well-nigh impossible to differentiate between what is needed to prove the wrongfulness of Defendants' systemic failure to properly process Plaintiffs' and Class representatives' rebate claims, and set that apart from what is needed to determine class certification under Rule 23 insofar as typicality and commonality of claims. Indeed, discovery on typicality and commonality will necessarily involve the merits of the claims raised in many of the consolidated class actions, such as whether Defendants made material misrepresentations or omitted to disclose material facts; whether Defendants knew or should have known of the falsity of their misrepresentations or misleading nature of their omissions; whether Defendants sought to induce or were reckless in inducing reliance on such misrepresentations and omissions; whether Defendants' advertising was fraudulent in that it was part of a scheme or plan not to sell products at other than the advertised price; whether Defendants processed rebates in an unconscionable or fraudulent manner intended to ensure the greatest number of denials for rebate applications; and whether Defendants were contractually obligated to issue rebates within the time period specified in the Rebate Offers and breached such contract.

In light of the preceding, failure to permit simultaneous discovery of merits-related issues and class certification-related issues will needlessly lengthen the overall discovery period, and prevent Plaintiffs from receiving an expeditious resolution of their claims. *See, e.g., In re Sulfuric Acid Antitrust Litigation,* MDL No. 1561, No. 03 C 4576 (N.D.Ill.2003) (refusing to bifurcate discovery in antitrust litigation in part because of delays created by bifurcation) (cited in *Plastic Additives,* 2004 WL 2743591, at *3).

Defendants' anticipated position on bifurcating discovery, if adopted, would not resolve the issue of class certification until (at a minimum), far into 2007 or early 2008, during which period Plaintiffs would not be permitted to engage in "merits"-based discovery. Such a position improperly delays both adjudication of class certification issues and the ultimate resolution of this litigation, whether through a trial on the merits, settlement, or dispositive motions. Such a position thus violates the rationale of efficiency upon which the theory of discovery bifurcation is based.

Bifurcation would also undermine principles of judicial economy because this Court will invariably be forced to spend time and resources resolving discovery disputes over what constitutes "merits" discovery as compared to "class" discovery. *See, e.g., In re Hamilton Bancorp, Inc. Securities Litigation,* 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (noting that "bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery"); and *Plastic Additives,* where Judge Davis declined to bifurcate discovery because:

> Due to the intermingling of the facts necessary to evaluate class certification and the merits of plaintiffs' claims, separating the two would duplicate discovery efforts, which, in turn, would force both parties to incur unnecessary expenses and would further protract the litigation.

2004 WL 2743591, at *4. In light of the preceding, discovery in this case should not be bifurcated into "merits" and "class," and instead ought be allowed to proceed simultaneously as to both matters.

Plaintiffs propose that, once the parties' dispute about the proposed "bifurcation" of discovery has been resolved by this Court and a time frame for discovery has been set, counsel for the parties should discuss (a) dates for filing Plaintiffs' Rule 23 motion for class certification, Defendants' opposition(s), and Plaintiffs' reply brief(s); and (b) possible dates for oral argument and/or an evidentiary hearing on Plaintiffs' class certification motion. As set forth below (*see* page 30-31, *infra*), Plaintiffs respectfully request that this Court immediately appoint Co-Lead Counsel for Plaintiffs and the Class.

**Defendants' Position:**

Although the Plaintiffs have not yet filed a motion for class certification, the complaints in these consolidated actions seek certification under all three sub-parts of FED. R. CIV. P. 23(b). In determining whether certification is proper under Rule 23(b)(3), the Court must address whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for resolving the dispute fairly and efficiently." FED. R. CIV. P. 23(b)(3). Two of these three issues— choice of law (*i.e.*, legal predominance) and superiority— likely can be resolved as a matter of law, or after very minimal discovery. The third of these issues— factual predominance— likely would require only slightly more extensive discovery to resolve.

All three of these Rule 23(b)(3) predicate issues should be resolved before the Court authorizes full merits discovery.[2] *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.14, p. 256 ("Courts often bifurcate discovery between certification issues and those related to the merits of the allegations. Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits

---

[2]    For reasons explained below, InPhonic submits that no discovery is necessary to determine whether certification is proper under Rules 23(b)(1) and (b)(2).

pertains to the strength or weaknesses of the claims or defenses and tests whether they are likely to succeed."). The Court "has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits." *In re Initial Public Offering Securities Litigation*, --- F.3d ----, 2006 WL 3499937, at *15 (2d Cir. Dec. 5, 2006); *see also Balaton, Inc. v. Reno*, 93 F. Supp. 2d 61, 61-62 (D.D.C. 2000) (Facciola, J.) ("Unless and until certification occurs, a class action, and the discovery attending it, cannot take place. Plaintiffs cannot evade those rules by filing an individual action and then demanding [Defendants] provide them discovery as to a class of persons. Potential claims by a class of which Plaintiffs are members cannot possibly have anything to do with the individual action that has been pled because Plaintiffs cannot assert anyone's rights besides their own."); *see* LCvR 23.1(b) (court "may order that a ruling [on a motion for class certification] be postponed pending discovery or other preliminary proceedings.").

Given the Consent Order to be entered in the DCAG Action, and the nationwide scope of the putative plaintiff class in these cases, Defendants submit that it would be most efficient if the Court required the parties to brief the superiority and choice of law issues promptly, before authorizing even limited discovery on the factual predominance inquiry. *See In re Prempro*, 230 F.R.D. 555, 561 (E.D. Ark. 2005) ("Not only must the choice-of-law issue be addressed at the class certification stage--it must be tackled at the front end since it pervades every element of FRCP 23."). Both of those issues are potentially decisive, because Rule 23(b)(3) certification requires a finding of both legal predominance and superiority. If the Court concludes that neither of those issues can be resolved as a matter of law, then Defendants submit that the Court should authorize limited discovery confined to the choice of law, superiority, and factual predominance issues identified below, followed by briefing and a ruling on class certification.

### 1.    The Superiority Requirement.

As part of the Rule 23(b)(3) superiority inquiry, the Court should consider whether:

(a) The Consent Order to be entered in the DCAG Action provides a reasonable alternative method by which putative class members may resolve their claims. *See, e.g., Thornton v. State Farm Mut. Auto Ins. Co., Inc.*, No. 1:06-cv-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) ("Proceedings by the state, whether in a judicial or an administrative forum, are presumably taken with the best interests of state residents in mind. Reasonable settlement by the accused should be encouraged. Indeed, potential class members will often recover more than they would in a private action when costs and attorneys' fees are factored in. ... However, if courts consistently allow parallel or subsequent class actions in spite of state action, the state's ability to obtain the best settlement for its residents may be impacted, since the accused may not wish to settle with the state only to have the state settlement operate as a floor on liability or otherwise be used against it."); *Berley v. Dreyfus & Co.*, 43 F.R.D. 397, 398-99 (S.D.N.Y. 1967) (rejecting the plaintiffs' proposal to "needlessly replace a simple, amicable settlement procedure with complicated, protracted litigation" where the defendant offered a purchase price refund to its customers).

(b) The DCAG Action and the Consent Order provide evidence that government authorities are willing and able to prosecute claims on behalf of the remaining members of the putative class who do not avail themselves of the opportunity to settle under the DCAG Consent Order. *See, e.g., Kamm v. California City Development Co.*, 509 F.2d 205, 209, 212 (9th Cir. 1975) (affirming the trial court's conclusion that a class action was " 'not superior to other available methods for the fair and efficient adjudication of the controversy herein, especially in light of the proceedings already brought by the California Attorney General and Real Estate Commissioner ... and of the relationship of these proceedings to the facts and posture of this particular case' "); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 532 (D.Md. 2001) ("Not only does the [Maryland Insurance Administration] have

the authority to order individualized remedies if the circumstances warrant; it has apparently indicated that it will exercise that authority. But if that is so, it is clear that adding a class action overlay in federal court makes little sense. ... In any event, as a supplement to administrative proceedings, the small claims courts of the Maryland state system appear to be perfectly adequate venues to consider the claims of State Farm's PIP insureds if and when disputes arise over whether they are properly payable.").

(c) To the extent that a large proportion of the putative Plaintiff class has not filed complaints with a government agency or the Better Business Bureau, it is an indication that certification of the proposed class would merely serve to create lawsuits where none otherwise would exist. *See, e.g.*, *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 214 F.R.D. 614, 622-23 (W.D. Wash. 2003) (where defendants maintained a refund and product replacement program, "[i]t makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress . . . . The fact that consumers have not sought refunds in large numbers may well demonstrate that certification of the proposed class would merely serve to create lawsuits where none previously existed.") (citing, *inter alia*, *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 462-65 (D.N.J. 1998) (finding lack of superiority where reimbursement was available through a recall program and through an administrative remedy)); *see also In re Hotel Telephone Charges*, 500 F.2d 86, 91 (9th Cir. 1974) ("Whenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute.").

These three "superiority" issues likely can be determined as a matter of law. For example, to determine whether the Consent Order provides a reasonable alternative for putative class members to resolve their claims, the Court would need only to compare: (1) the Plaintiffs' allegations here with those made by the DCAG; (2) the scope of Plaintiffs' proposed class with the scope of persons

who had an opportunity to pursue a refund under the Consent Order by filing the appropriate claims; and (3) the relief provided to members of Plaintiffs' putative class to the types of injury alleged by Plaintiffs here. These can be determined from the four corners of the complaints and the Consent Order. Similarly, whether government authorities are willing and able to prosecute claims on behalf of the remaining members of the putative class who do not avail themselves of the opportunity to settle under the DCAG Consent Order can be determined by identifying the statutory powers and jurisdiction of, and any proceedings commenced by, the relevant governmental authorities. Finally, the extent to which a large proportion of the putative Plaintiff class has not filed complaints with a government agency or the Better Business Bureau would require only a simple inquiry to the relevant agencies.

### 2.    The Predominance Requirement.

#### a.    Common Issues of Law.

The complaints in these consolidated cases invoke the consumer protection laws of multiple jurisdictions, and two complaints (*Davis* and *Workman*) invoke the consumer protection laws of all 50 states and the District of Columbia. The D.C. Circuit has held:

> [T]o establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles. ... The issue can only be resolved by first specifically identifying the applicable state law variations and then determining whether such variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines.

*Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016-17 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915 (1987) (internal quotations and footnote omitted) ("[Plaintiffs] see the 'which law' matter as academic. They say no variations in state warranty laws relevant to this case exist. ... A court cannot accept such an assertion 'on faith.' [Plaintiffs], as class action proponents, must show that it is accurate."). On remand in *Walsh*, another judge from this Court noted that state law variations "cannot be reduced to mere semantics," but rather "[t]hey reflect divergent judicial philosophies on the scope

and content of the breach of implied warranty standard, which may significantly effect the wording of jury instructions, the standard for a directed verdict and ultimately, the outcome of the case." *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 273 (D.D.C. 1990); *see also Schmidt v. Interstate Fed. Sav. & Loan Ass'n*, 74 F.R.D. 423, 428-29 (D.D.C. 1977) (declining to certify a class when plaintiffs were located in three different states and the court would have to apply the laws of the three states to the plaintiffs' breach-of-contract and unjust-enrichment claims).

The extent of variations among state laws implicated by Plaintiffs' complaints is itself a question of law. Further, the factors considered as part of the choice of law inquiry in this jurisdiction, *see Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 104 (D.D.C. 2006) (Huvelle, J.), would require examination only of the States in which the members of the Plaintiffs' putative class were located at the relevant times. This fact likely can be determined from the definition of the Plaintiffs' proposed class alone without the need for discovery.

### b.    Common Questions of Fact.

"In order to show that issues of fact are common to the proposed class litigation under Rule 23, the plaintiffs must show that the substance of the evidence is substantially the same for all class members." *Walsh*, 130 F.R.D. at 269 (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413-14, n.8 (D.C. Cir. 1984)). Here, however, Plaintiffs' claims for money damages will require examination of the individualized issues of causation—*i.e.*, the reasons for the alleged denial or delay of rebate payments claimed by each putative class member. *See Love v. Johanns*, 439 F.3d 723, 731 (D.C. Cir. 2006) ("The District Court was well within the bounds of its discretion to find a lack of commonality where two out of every five of the Appellants' own declarants—to say nothing of the silent non-declarants—would be forced to prove at trial that individual reasons for their loan denials were not pretextual (*e.g.*, one woman had poor credit, another had no collateral, a third was victimized by gender discrimination, etc.)."); *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 585 (N.D. Ill.

2000) ("Individual issues of causation ... often plague class actions brought under the [Illinois Consumer Fraud Act]"; "[e]xamples of individual issues" included "why the claims of [extended service plan] policyholders were denied" based on reasons ranging from "a non-covered repair" to failure "to maintain their vehicle" to exceeding "the time or mileage limitations").

> 3.    **Rule 23(b)(3) Discovery Topics.**
>
> a.    **Discovery Topics Relating to Choice of Law.**

As noted above, the choice of law question may be determined without discovery. However, if any discovery is required, it should be limited to the following relevant inquiries:

- The jurisdictions in which the named Plaintiffs and other putative class members (1) resided at the time that they placed their purchase order with InPhonic, received a wireless phone product from InPhonic, and received a response regarding their claim for a rebate from InPhonic, or (2) contend their contract with InPhonic was to be performed.

> b.    **Discovery Topics Relating to Superiority.**

The superiority question may be determined without discovery. However, if any discovery is required, it should be limited to the following relevant inquiries:

- Whether the named Plaintiffs or other putative class members complained to any government agency, or to the Better Business Bureau, about the rebate claims that are the subject of these lawsuits.

- Whether the named Plaintiffs or other putative class members who have asserted claims under the consumer protection statutes of the District of Columbia and/or the 50 states, were aware of an opportunity to make complaints to the government enforcement authority of those jurisdictions concerning their claim for a rebate from InPhonic.

- Whether the named Plaintiffs or other putative class members were aware of an opportunity to resolve their claims and receive payment of their rebates under the terms of InPhonic's settlement of the DCAG Action.

- Whether the named Plaintiffs or other putative class members sought to resolve their claims informally by complaining to InPhonic.

> c.    **Discovery Topics Relating to Predominance.**

To establish a factual record on which to adjudicate the factual predominance issue, the Court should authorize limited discovery on the following topics:

### (i)    Rebate Terms and Conditions.

• Whether during the class period, for the named Plaintiffs and other putative class members, the stated terms and conditions of InPhonic's rebate offers varied in material respects (a) over time, (b) by the wireless carrier selected by the consumer, (c) in the nature of the information and documents the consumer was required to submit to support a rebate claim, (d) in the amount of the offered rebate, or (e) by inclusion of an Equipment Purchase Discount chargeback provision ("EPD chargeback").

• Whether the named Plaintiffs and other putative class members are seeking (a) rebates offered by InPhonic, as opposed to rebates offered by equipment manufacturers or wireless carriers, and (b) the same type of rebate among the various types offered by InPhonic.

• Whether there are terms and conditions of the contracts between the wireless carriers and named Plaintiffs and other putative class members of which InPhonic is an intended beneficiary, and which materially limit the ability to maintain a class action against InPhonic.

• Whether the named Plaintiffs and other putative class members contend that InPhonic or its rebate processors made oral or written representations beyond the rebate terms and conditions stated at the time of purchase, on which they relied in connection with their rebate claims, including representations allegedly made through telephone communications, correspondence, or on websites that permitted consumers to check the status of their rebate claim.

### (ii)    Disclosure of Rebate Terms and Conditions.

• Whether the named Plaintiffs and other putative class members reviewed InPhonic's rebate terms and conditions on an InPhonic website (a) when placing a purchase order with InPhonic, (b) in written materials that were included in each customer's shipment of product(s) from InPhonic, and/or (c) on the rebate claim forms that they signed and submitted to InPhonic or its rebate processing vendors.

• Whether the manner of disclosure of InPhonic's rebate terms and conditions differed in material ways during the class period.

### (iii)    Consent to Rebate Terms and Conditions.

• Whether and in what ways the named Plaintiffs and other putative class members manifested their consent to InPhonic's rebate terms and conditions.

### (iv)    Rebate Claim Processing.

• Whether each decision to reject, or to require resubmission of, a consumer's rebate claim was evidenced by various "error codes" (alone or in combination) that identified the way(s) in which an individual rebate claim form did not (in the judgment of InPhonic and/or its rebate processing vendors) comply with the terms and conditions of the applicable rebate offer(s).

• Whether, other than by individual examination of each putative class member's rebate claim submission file, there is any way to determine if InPhonic and its rebate processing vendors correctly

applied the stated terms and conditions of the rebate offer to the rebate claims of putative class members when their rebate claim was rejected, returned for resubmission, or was not paid on a timely basis.

- Whether the named Plaintiffs and other class members were offered an opportunity to cure specified defects in their rebate submissions and, if so, whether they in fact resubmitted their claims.

### (v)     Payment.

- Whether the named Plaintiffs or other putative class members received any InPhonic rebate-related payment from Defendants, regardless of whether they chose to accept the payment.

- Whether the named Plaintiffs or other putative class members were charged any amount of money by InPhonic as an EPD chargeback.

4. **Discovery is Not Necessary to Adjudicate Possible Rule 23(b)(1) and (b)(2) Certification.**

a. **Rule 23(b)(1)(A).**

Rule 23(b)(1)(A) allows certification only in circumstances where "individual adjudications could force Defendants to act in legally conflicting ways." *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 643 (N.D. Okla. 2000). "Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages," as the Plaintiffs do here. *In re Dennis Greenman Sec. Litigation*, 829 F.2d 1539, 1545 (11th Cir. 1987); *Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982) (noting that monetary relief "creates the risk of inconsistent but not incompatible standards of conduct"). Further, because Rule 23(b)(1)(A) exists for the Defendants' benefit, Defendants' objection to certification should defeat certification under that Rule. *See, e.g., Corley v. Entergy Corp.*, 222 F.R.D. 316, 320 (E.D. Tex. 2004) (declining to certify a class under Rule 23(b)(1)(A) because the defendants objected to class certification).

b. **Rule 23(b)(1)(B).**

Rule 23(b)(1)(B) does not apply in these cases because there is no risk that individual actions "would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." FED. R. CIV.

P. 23(b)(1)(B).  "Rule 23(b)(1)(B) includes, for example, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 & 623 n.19 (1997) ("This case, we note, involves no 'limited fund' capable of supporting class treatment under Rule 23(b)(1)(B), which does not have a predominance requirement.").  "'Classic' limited fund class actions 'include claimants to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, proceeds of a ship sale in a maritime accident suit, and others.'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34, 842 (1999) (citations omitted) ("The prudent course, therefore, is to presume that when subdivision (b)(1)(B) was devised to cover limited fund actions, the object was to stay close to the historical model.").

      c.      **Rule 23(b)(2).**

Rule 23(b)(2) "does *not* apply where 'the appropriate final relief relates exclusively or predominately to money damages'"— as is the case here. *Walsh*, 130 F.R.D. at 264 (quoting *Walsh*, 807 F.2d at 1003 n.7; FED. R. CIV. P. 23(c)(1)(A) Advisory Committee Note (1966)).  Moreover, in light of the DCAG Consent Order provisions concerning the content and presentation of InPhonic websites, any injunction entered in these cases that addressed those subjects could force InPhonic to comply with inconsistent standards of conduct. *See Lightfoot v. District of Columbia*, 233 F.R.D. 28, 30 (D.D.C. 2006) ("a class can be certified under Rule 23(b)(2) only after the court determines that the type of relief sought (i.e., injunctive or declaratory relief) would apply to the class as a whole") (citing *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997)).

     5.     **Schedule for Class Certification Motion.**

Defendants propose that the Court require the parties to brief the choice of law and superiority issues on the following schedule:  Plaintiffs' brief due 30 days after the Initial Scheduling and Case Management Conference; Defendants' response due 30 days after Plaintiffs' brief; and, Plaintiffs' reply due 15 days after Defendants' response.  If the Court concludes that those issues

preclude class certification, then there will be no need for further class certification proceedings. If the Court concludes that these issues do not preclude class certification, or that they cannot be resolved as a matter of law, then Defendants submit that the Court should authorize a 90-day period to complete limited discovery confined to the choice of law, superiority and factual predominance issues identified above, followed by briefing and a ruling on class certification.

### D.    CONSOLIDATED AMENDED COMPLAINT

**Plaintiffs' Position:**

Plaintiffs expect to file a Consolidated Amended Class Action Complaint (the "Consolidated Amended Complaint") asserting federal and state law claims on behalf of the Plaintiffs in the class actions that have been centralized in this District. We will be prepared to discuss the timing of that filing with this Court during the Case Management Conference on January 26, 2007.

**Defendants' Position:**

To facilitate the Court's decision on class certification, and otherwise to streamline pretrial proceedings, InPhonic submits that Plaintiffs should file a master consolidated complaint that: (1) proposes a uniform class definition; and, (2) specifies the legal claims Plaintiffs intend to pursue, and the Defendants against which they intend to pursue those claims, on behalf of the proposed class. The fourteen non-identical class definitions proposed in the existing complaints currently differ in terms of: geographic scope (with eight proposed nationwide classes, and six different proposed statewide classes of New Jersey, Illinois, Arizona and California plaintiffs); legal claims pursued on behalf of the putative class; the Defendants against which the claims are being pursued; and the law governing the putative class claims. These differences affect both the scope of the discovery required to determine the propriety of class certification, and the ultimate application of Federal and Local Rule 23 criteria for class certification. Defendants understand that Plaintiffs intend to file some sort of amended consolidated complaint. InPhonic submits that a consolidated complaint is

necessary to provide the Court and the parties with a single point of reference during class certification proceedings.

"Master complaints help the Court and the parties focus on common issues in an efficient and effective manner [.]" *In re Vioxx Prods. Liab. Litig.*, ---F. Supp.2d---, 2006 WL 3391432, at *2 (E.D. La. Nov. 22, 2006); *see also Katz v. Realty Equities Corp. of N.Y.*, 521 F.2d 1354, 1359 (2d Cir. 1975) (consolidated complaints "achiev[e] economies of effort on the part of the parties and of the court"). A consolidated complaint "guarantees a simplified management system and avoids the problems of selecting one lead case. ... [A] consolidated complaint may present dramatic efficiencies in judicial administration. It by definition reduces the proliferation of papers that must be filed and allows the court and counsel to reference one document ... in resolving all pretrial matters." Hon. Diana E. Murphy, U.S.D.J., *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597, 599 (1991).[3] As a result, "[a] common practice in consolidated multiple cases, including class actions, is to encourage the use of a master pleading." ANNOTATED MANUAL FOR COMPLEX LITIGATION § 20.15, at 266 (4th ed. 2004) (author's comments).

A master complaint typically "is intended only as a procedural device to promote judicial efficiency and economy." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141 (E.D.La. 2002) (citing Hon. Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation, supra*); *see also United States v. Microsoft Corp.*, 2002 WL 319366, at *2 n.3 (D.D.C. Feb. 28, 2002) (consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another. Rather, consolidation is a purely ministerial act which ... relieves the parties and the Court of the burden of duplicative pleadings and Court Orders"). Other MDL transferee courts have taken just such an approach. *See, e.g., In re Vioxx, supra; In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003); *In re*

---

[3]     Judge Murphy now serves on the United States Court of Appeals for the Eighth Circuit.

*Propulsid, supra; In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 174 F. Supp. 2d 4, 6 & n.4 (S.D.N.Y. 2001).

Implementing FED. R. CIV. P. 23(c)(1)(B), the Local Rules require that the complaint contain "[a]ppropriate allegations justifying [a] claim" that a suit is "properly... maintainable as a class action," including "the alleged questions of law and fact claimed to be common to the class" and, for putative Rule 23(b)(3) class actions, "allegations supporting the findings required by that subdivision." LCvR 23.1(a). The complaints here demonstrate no consensus among the Plaintiffs on these issues. Rather, the complaints collectively allege eighteen different legal claims, but: no complaint contains more than seven such claims; only one claim— unjust enrichment— appears in more than seven of the complaints; and, seven claims appear only in three or fewer of the complaints. For example, six complaints propose a nationwide class solely for claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, while five complaints propose nationwide classes that lack any RICO claim, and another complaint proposes a nationwide class action for both RICO and state law claims.[4] Moreover, the complaints that assert RICO claims name Defendants in addition to InPhonic— *i.e.*, Continental Promotion Group, Inc.[5] and Helgeson Enterprises.[6] While five of the complaints pursue unjust enrichment claims on behalf of proposed nationwide classes, seven complaints pursue unjust enrichment claims only on behalf of proposed statewide classes, and two complaints lack any unjust enrichment claim at all.[7]

---

[4]    Compare *Sutherland, Cover, Roquemore, Morales*, and *Feldman* Compl. ¶¶ 49-54; *Pevnick* Compl. ¶¶ 50-55 (pursuing only a RICO claim on behalf of proposed nationwide class); with *Davis, Hongyi Yu, Rock, Heller*, and *Workman* Cplts. (no RICO claim for proposed nationwide class); and *Salzman* Compl. ¶¶ 53-78 (pursuing RICO and state law claims on behalf of proposed nationwide class).

[5]    *See Sutherland, Cover, Roquemore, Morales*, and *Feldman* Compl. ¶¶ 49-54; *Pevnick* Compl. ¶¶ 50-55; *Salzman* Compl. ¶¶ 53-59.

[6]    *See Pevnick* Compl. ¶¶ 50-55.

[7]    Compare *Davis* Compl. ¶¶ 38-41; *Hongyi Yu* Compl. ¶¶ 66-69; *Salzman* Compl. ¶¶ 68-73; *Heller* Compl. ¶¶ 70-81; *Workman* Compl. ¶¶ 49-52 (pursuing unjust enrichment claim on behalf of proposed nationwide class), with *Sutherland* Compl. ¶¶ 63-67 (pursuing unjust enrichment claim solely on behalf of proposed Illinois statewide class); *Pevnick* Compl. ¶¶ 67-71; *Cover, Roquemore, Morales, Feldman* Compl. ¶¶ 66-70 (pursuing unjust

Nor do the complaints concur on what law should govern the claims that Plaintiffs seek to pursue on behalf of a putative class. For example, among the complaints that allege violations of state consumer protection statutes: three proposed nationwide classes—and one proposed California-only class—pursue claims under the District of Columbia Consumer Protection Procedures Act; others propose one nationwide and one Illinois-only class to pursue claims under the Illinois Uniform Deceptive Trade Practices Act; still others propose two nationwide and two New Jersey-only classes to pursue claims under the New Jersey Consumer Fraud Act; five complaints allege a claim under the Arizona Consumer Fraud Act on behalf of an Arizona-only proposed class; two propose California-only classes to pursue claims under various California consumer protection statutes; and, two complaints propose nationwide classes to pursue claims under all 51 state consumer protection statutes.[8]

These differences—in the putative class definition, the claims to be pursued as "class claims," the Defendants named, and the law that would govern those claims—all will frustrate the conduct of discovery relevant to the certification decision. MDL courts have required the filing of a consolidated complaint, finding that:

> argument and consideration of class action issues has been made considerably easier by the consolidated complaint, because the court has not had to go through varying and conflicting class allegations that may have been stated in each separate complaint. ... Simply stated, completed pretrial of the actions included in M.D.L. Docket No. 142 would have been impractical without the consolidated complaint.

---

enrichment claim solely on behalf of proposed Arizona statewide class); *Friedrich* Compl. ¶¶ 40-42 (pursuing unjust enrichment claim solely on behalf of proposed California statewide class); and *Rock* Cplt. (no unjust enrichment claim on behalf of proposed nationwide or state classes); *Everett* Cplt. (no unjust enrichment claim on behalf of proposed state class).

[8]     *See Hongyi Yu* Compl. ¶¶ 39-48; *Salzman* Compl. ¶¶ 60-67; *Heller* Compl. ¶¶ 40-49 (nationwide proposed class for DC law); *Friedrich* Compl. ¶¶ 62-67 (California proposed class for DC law); *Heller* Compl. ¶¶ 50-59 (nationwide proposed class for IL law); *Sutherland* Compl. ¶¶ 55-62 (Illinois proposed class for IL law); *Rock* Compl. ¶¶ 36-46 (two proposed nationwide and two proposed New Jersey classes for NJ law); *Cover, Morales, Roquemore, Feldman* Compl. ¶¶ 55-65; *Pevnick* Compl. ¶¶ 56-66 (proposed Arizona classes for AZ law); *Friedrich* Compl. ¶¶ 68-73, 82-91; *Everett* Compl. ¶¶ 38-46 (proposed California classes for CA laws); *Davis* Compl. ¶¶ 27-37; *Workman* Compl. ¶¶ 41-48 (proposed nationwide classes for 51 states' laws).

*In re Equity Funding Corp. of America Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976). The goal of a consolidated amended complaint here should be to "help avoid the problem of conflicting classes or subclasses which the multidistrict transfers are designed to prevent." Hon. Diana E. Murphy, U.S.D.J., *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. at 606.

## E.    JOINDER OF PARTIES AND AMENDMENT OF PLEADINGS

**Plaintiffs' Position:**

During the Case Management Conference, counsel for Plaintiffs will be prepared to discuss a schedule governing the joinder of parties and the amendment of pleadings.

**Defendants' Position:**

Plaintiffs should file an amended consolidated complaint (*see* pp. 18-19, *supra*) not later than 30 days after the Initial Scheduling and Case Management Conference, simultaneous with the filing of Plaintiffs' brief on the Rule 23(b)(3) choice of law and superiority issues (*see* pp. 18-19, *supra*). Defendants submit that the Court should allow a period of 30 days following the Court's decision on class certification to submit motions to join additional parties.

## F.    DEFENDANTS' RESPONSE(S) TO CONSOLIDATED AMENDED COMPLAINT

**Plaintiffs' Position:**

It is Plaintiffs' position that Defendants should file and serve their Answer(s) to the Consolidated Amended Complaint and/or Rule 12 Motion(s) to Dismiss no later than 30 days after its filing.

**Defendants' Position:**

Rulings on the merits entered prior to a determination of class certification bind only the named parties. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.11, at 246 ("Motions such as challenges to jurisdiction and venue, motions to dismiss for failure to state a claim, and motions for summary judgment may be decided before a motion to certify the class, <u>although such</u>

<u>precertification rulings bind only the named parties</u>.") (emphasis added).  Accordingly, Defendants submit that responsive pleadings and/or Rule 12 motions should await this Court's ruling on class certification.

## G.    AGREEMENT UPON FACTUAL AND LEGAL ISSUES

<u>Plaintiffs' Position</u>:

Based upon the discussions with InPhonic's and Continental's counsel at the above-referenced meet-and-confer sessions and at this preliminary stage of the proceedings, counsel for Plaintiffs do not believe that some or all of the factual or legal issues presented in this nationwide class action can be agreed upon or narrowed.

<u>Defendants' Position</u>:

After Plaintiffs file an amended consolidated complaint, Defendants will be in a position to determine if there are any relevant facts that are not in dispute.

## H.    RULE 26(a) DISCLOSURES

<u>Plaintiffs' Position</u>:

Plaintiffs do not believe that Rule 26(a)(1) initial disclosures should be dispensed with; indeed, Plaintiffs respectfully submit that such initial disclosures should be exchanged by the parties as soon as practicable.  Plaintiffs note that in *Sutherland v. InPhonic*, Case No. 06 C 3281 (N.D. Ill.) ("*Sutherland*"), one of the pending cases that has been centralized in this District, Judge Pallmeyer directed Defendant InPhonic to make such initial disclosures to Plaintiff.

<u>Defendants' Position</u>:

Defendants submit that discovery should be limited initially to class certification issues and that, in lieu of initial disclosures, the parties should propound discovery requests limited to the previously identified issues that are relevant to Rule 23(b)(3) certification.  *See* 9-19, *supra*.

## I.    DISCOVERY BIFURCATION OR MANAGEMENT

As set forth above (*see* pages 5-19, *supra*), Plaintiffs and Defendants disagree about whether fact and expert discovery should be "bifurcated" into so-called "class certification" and "merits" phases.

## J.    EXTENT OF DISCOVERY/PROTECTIVE ORDER.

**Plaintiffs' Position:**

As set forth above (*see* pages 5-19, *supra*), Plaintiffs and Defendants disagree about whether fact and expert discovery should be "bifurcated" into so-called "class certification" and "merits" phases. Once that issue has been resolved by this Court, counsel for Plaintiffs will be prepared to discuss (a) how long discovery should take; (b) what limits, if any, should be placed on discovery; (c) whether a protective order is appropriate; and (d) cutoff dates for fact witness and expert witness discovery, including depositions. Plaintiffs submit, however, that if this Court does not order bifurcation of discovery, they can complete requisite fact witness discovery within six months.

**Defendants' Position:**

As previously noted, Defendants submit that discovery should be limited initially to class certification issues. *See* 9-19, *supra*. After the Court issues its decision on the certification motion, the parties will be in a better position to address the schedule for any remaining discovery. Defendants submit that a protective order should be entered to protect against actual competitive injury that will result from public disclosure of the proprietary information contained in their documents, including electronically stored information ("ESI"), that Defendants expect will be responsive to Plaintiffs' discovery requests.

InPhonic bases this assertion on its recent experience with document production in the parallel DCAG Action. (Discovery in the DCAG Action has now been stayed while the parties finalize their settlement in principle.) In the DCAG Action, the Superior Court entered a Protective

Order based on the parties' agreement that InPhonic's business proprietary information should be protected from public disclosure. Among other things, these documents describe InPhonic's proprietary business models and strategy for competition in the industry, reflect the internal record-keeping databases that InPhonic has created to maintain its business, disclose InPhonic's customer lists and the personal, financial information of its customers, reflect internal financial reports, analyses and related documents, and describe InPhonic's policies and procedures related to its marketing, advertising, sales, customer service, technology and other initiatives.

Documents that Continental Promotion Group, Inc. ("CPG") and Helgeson Enterprises ("Helgeson") expect will be responsive to Plaintiffs' discovery requests describe the internal record-keeping databases that CPG and Helgeson have created or use to maintain their business, disclose customer lists and the personal, financial information of CPG's and Helgeson's customers, reflect internal financial reports, analyses and related documents, and describe CPG's and Helgeson's policies and procedures related to their marketing, advertising, sales, customer service, technology and other initiatives.

### K.    APPOINTMENT OF SPECIAL MASTER

The Parties submit that, to the extent that assistance in monitoring discovery is required, the magistrate judges of this district are well suited to provide such assistance, particularly given the likelihood of discovery questions concerning ESI under recently-amended FED. R. CIV. P. 26(b)(2), with which the magistrate judges have particular familiarity. *See* pages 27-29, *infra.*

### L.    ELECTRONIC DISCOVERY

**Plaintiffs' Position:**

Paragraph 12 of this Court's Order addresses electronic discovery and document preservation, stating that "any orders, including protective orders, previously entered by any transferor district court shall remain in full force and effect unless modified by this Court upon

application." On July 19, 2006, in *Sutherland*, Judge Pallmeyer of the Northern District of Illinois issued an Order addressing document preservation obligations. Citing controlling case law language regarding document preservation obligations (*see Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 33 n.3 (D.D.C. 2004), Judge Pallmeyer ordered defendants (including InPhonic) to "preserve what it knows, or reasonably should know, preserve what they know, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." Plaintiffs request that Judge Pallmeyer's document preservation order, with additional specific additions, be deemed effective in these centralized cases.

## Defendants' Position:

InPhonic is continuing to review the type and extent of the computer and other electronic systems in which it maintains its ESI that is potentially relevant to this case. Rather than maintaining a single, centralized computer system, InPhonic's various departments and regional offices store different information in different physical locations and in different types of software applications. Depending on the scope of discovery authorized by the Court, InPhonic may need to search the following types of software applications for potentially relevant ESI, without limitation: electronic mail; Word documents; Excel spreadsheets; .jpeg files; data files that store financial, sales and other company performance information; .pdf files; databases; recorded audio files; customer sales and customer service tracking information; payroll information; and, human resources records. InPhonic also will need to search in the following locations for this information, without limitation: file servers; custodians' individual hard drives; proprietary software systems and databases; workstations; personal digital assistant (PDAs); laptops; Blackberrys and other wireless communication devices; home computers; backup tapes; portable media (CDs, DVDs, disks, removable driver, flash drives); databases; voicemail systems; legacy systems; and, decommissioned

computers and servers. Again depending on the scope of discovery authorized by the Court, the cost to InPhonic of searching for potentially relevant ESI in this case could be substantial, and it may be appropriate for the Court to require the Plaintiffs to bear a share of the costs of the requested searches of ESI pursuant to Rule 26(b)(2)(B).

CPG is continuing to confirm the type and extent of the information generated by the InPhonic rebate and promotional programs. CPG has at least two main servers, one in Tempe, Arizona, the second one in Tampa, Florida. CPG also operated three call centers in this program: one in Tempe, Arizona, one in Canada, and one in Mexico. CPG has contracted individuals separate from the company who assisted via computer and databases, the data entry and tracking information using their home computers. Depending on the scope of discovery authorized by the Court, CPG may need to search electronic mail, data files, voice mail systems, databases, customer tracking information, custodial individual hard drives, proprietary software systems and databases, and home computers, among other potential sources of received information. Depending on the scope of discovery authorized by the Court, the cost to CPG to search and produce relevant information could be substantial, and it may be appropriate for the Court to require a "sampling" and Plaintiffs to share the costs of the services pursuant to Rule 26(b)(2)(B).

Helgeson is continuing to confirm the type and extent of the information generated by the InPhonic rebate and promotional programs. Depending on the scope of discovery authorized by the Court, Helgeson may need to search various sources of information, including but not limited to, electronic mail, data files, voice mail systems, databases, customer tracking information, and proprietary software systems and databases. Depending on the scope of discovery authorized by the Court, the cost to Helgeson to search and produce relevant information could be substantial, and it may be appropriate for the Court to require a "sampling" and Plaintiffs to share the costs of the services pursuant to Rule 26(b)(2)(B).

## M.    CLAIMS OF PRIVILEGE & RELATED PROCEDURES

**Plaintiffs' Position:**

Plaintiffs are currently unaware of any claims of privilege that Defendants may seek to assert with any good faith basis. Defendants operate a consumer internet retail business with open market communications.

**Defendants' Position**

Rule 26(f)(4) was designed, in part, to address the time and expense that parties spend reviewing potentially discoverable information in order to avoid waiving privilege, a problem that is more acute when voluminous ESI is sought. Defendants expect that they will need additional time in their review of their ESI for responsiveness to confirm that the ESI does not contain privileged information and to minimize the risk of inadvertent disclosure. Defendants submit that it would be appropriate for the parties to enter into a "clawback" agreement, to be incorporated into a protective order (*see* pp. 25-26, *supra*) pertaining to legally privileged information that is inadvertently produced in discovery. Under such an agreement, the parties: (1) would be required to notify one another of inadvertent production of privileged material within a reasonable period of time after learning of the information's disclosure, and to immediately return or destroy such information; (2) would be prohibited from using such inadvertently disclosed privileged information; and, (3) would not have waived the privilege(s) applicable to that information.

## N.    EXPERT WITNESS DISCLOSURES & DISCOVERY

**Plaintiffs' Position:**

Plaintiffs do not believe that the procedures set forth in Rule 26(a)(2) need to be modified in this nationwide class action.

<u>**Defendants' Position:**</u>

Until Plaintiffs file their motion for class certification, Defendants do not know whether it would be either necessary or appropriate for the parties to present expert testimony in connection with the class certification determination. If either the Plaintiffs or Defendants do proffer certification-related expert testimony in connection with their motion for, or opposition to, class certification, then the Court should allow the opposing party a reasonable period of time (*e.g.*, 30 days) to complete discovery of any such experts, in addition to the time allowed for briefing either the opposition to, or reply in support of, class certification (*see* pp. 18-19, *supra*).

O.    **DISPOSITIVE MOTIONS**

<u>**Plaintiffs' Position:**</u>

Plaintiffs respectfully submit that dispositive motions, if any, should be filed within 30 days following the conclusion of fact witness and expert witness discovery.

<u>**Defendants' Position:**</u>

Defendants submit that summary judgment motions should be filed only after completion of the merits discovery, if any, conducted after this Court rules upon class certification. *See* pp. 9-19, 23-25, *supra*.

P.    **OTHER MATTERS TO BE DISCUSSED AT CASE MANAGEMENT CONFERENCE**

<u>**Plaintiffs' Position:**</u>

As set forth above, prior to and following the issuance of the Transfer Order, counsel for Plaintiffs met and conferred about the organizational structure necessary to prosecute this nationwide class action. As a result of those meetings and communications, Plaintiffs' counsel have agreed to (a) the designation of Co-Lead Counsel; (b) the appointment of counsel to an Executive Committee; (c) the designation of the Chair of the Executive Committee; and (d) the appointment of Liaison Counsel to this Court. The specifics are set forth in the Order entitled Appointment and

Duties of Class Counsel, attached hereto as Exhibit "D," which Plaintiffs respectfully request this Court to enter.

**Defendants' Position:**

The MANUAL FOR COMPLEX LITIGATION recommends that "the proponent of a civil RICO claim shall file and serve ... a case statement that shall include the facts relied on to initiate the RICO claim." MANUAL FOR COMPLEX LITIGATION, FOURTH § 40.54, at 783-85 (4th ed. 2004). The MANUAL FOR COMPLEX LITIGATION also contains a recommended form of a RICO Case-Statement Order that "has been designed to establish a uniform and efficient procedure for deciding civil actions containing claims made pursuant to 18 U.S.C. §§ 1961–1968 ("civil RICO")." *Id* at 785 n.1. Defendants submit that, if the Plaintiffs' amended consolidated complaint alleges a RICO claim, then Plaintiffs should complete a RICO statement in the form prescribed by the MANUAL FOR COMPLEX LITIGATION unless they can demonstrate that their master consolidated complaint already provides all of the detail required by such a statement.

## Conclusion

Counsel for Plaintiffs and Defendants will be prepared to discuss each of the matters set forth in this Joint Report at the Case Management Conference on January 26, 2007.

31

DATED:  January 19, 2007

By_____/s/_____
JOHN R. CLIMACO

CLIMACO, LEFKOWITZ, PECA, WILCOX &
GAROFOLI CO., LPA
888 16th Street, NW, Suite 800
Washington, DC 20006
(216) 621-8484
[Proposed] Co-Lead Counsel for Plaintiffs and
[Proposed] Co-Chair of Plaintiffs' Executive
Committee


By_____/s/_____
STEVEN A. HART

SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.
330 North Wabash Avenue, Suite 200
Chicago, IL 60611
(312) 645-7800
[Proposed] Co-Lead Counsel for Plaintiffs and
[Proposed] Co-Chair of Plaintiffs' Executive
Committee

By_____/s/_____
KEVIN P. RODDY

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive Suite 900, Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
[Proposed] Co-Lead Counsel for Plaintiffs and
[Proposed] Co-Chair of Plaintiffs' Executive
Committee

DATED:  January 19, 2007

By_____/s/_____
MITCHELL R. BERGER (D.C. Bar No. 385467)

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
(202) 457-6000
Counsel for Defendant InPhonic, Inc.

By_____/s/_____
C. PHILIP CAMPBELL, JR.

SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, FL 33602
(813) 229-7600
Counsel for Defendant Continental Promotion
Group, Inc.

By_____/s/_____
RICHARD G. MARK

BRIGGS AND MORGAN, P.A.
2200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8400
Counsel for Defendant Helgeson Enterprises

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2007, a copy of the foregoing Joint Case Management Report and accompanying exhibits was filed with the court's electronic filing system. I hereby further certify that on January 19, 2007, a true and correct copy of the foregoing Joint Case Management Report and accompanying exhibits was served by first-class mail upon: (1) all of Plaintiffs' counsel listed on the Initial Practice & Procedure Order entered by the Court on December 8, 2006; (2) Counsel for Defendant Continental Promotion Group, Inc., C. Philip Campbell, Jr.; and (3) Counsel for Defendant Helgeson Enterprises, Richard G. Mark.


By_____/s/_____
                Mitchell R. Berger

EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE INPHONIC, INC., WIRELESS
PHONE REBATE LITIGATION

                                                **Misc. Action No. 06-0507(ESH)**
                                                **MDL Docket No. 1792**

This Document Relates To:
ALL CASES

## PLAINTIFFS' PROPOSED SCHEDULING ORDER

Pursuant to the court's initial practice and procedure order (Dkt. # 4), and having considered the parties' proposed case management plans submitted in response thereto and the comments of the parties at the Initial Scheduling and Case Management Conference held January 26, 2007, it is hereby **ORDERED** that:

1.     Plaintiffs shall file a consolidated master amended complaint within 30 days after the Initial Scheduling and Case Management Conference, or on or before February 26, 2007.

2.     Defendants shall to file their response to plaintiffs' consolidated master amended complaint 30 days thereafter, or on or before March 28, 2007. In the event that defendants file a Rule 12 motion, plaintiffs shall have 30 days thereafter to file a response, or on or before April 27, 2007. Defendants shall have 15 days thereafter to file a reply, or on or before May 14, 2007.

3.     Oral argument for motion on the pleadings is set for May _____, 2007 and the Court will enter a ruling by _____.

4.     The stay on discovery will be lifted as of February 26, 2007.

5.     Plaintiff and defendants shall exchange Rule 26(a)(1) Initial Disclosures on or before March 28, 2007.

6.     Consolidated fact discovery closes on September 28, 2007.

7.     Plaintiffs shall file their motion for class certification on or before October 28, 2007. Defendants shall have 30 days thereafter to file a response, or on or before November 28, 2007.  Plaintiffs shall have 15 days to file a reply, or on or before December 13, 2007.

8.     Oral argument for motion on the pleadings is set for December _____, 2007 and the Court will enter a ruling by January _____, 2008.

9.     Plaintiff and defendants shall exchange Rule 26(a)(2) Disclosure of Expert Testimony on or before January 31, 2008.

10.    Depositions of parties' experts shall be completed March 31, 2008.

11.    The parties shall file any dispositive motions on or before April 15, 2008.  The parties shall have 30 days thereafter to file a response to any motions, or on or before May 15, 2008.  The parties shall have 15 days thereafter to file a reply to any responses, or on or before May 30, 2008.

12.    Final pretrial hearing is set for May 30, 2008.

13.    Trial is set for June _____, 2008.

14.    The next status hearing is set for April 13, 2007.

IT IS SO ORDERED.


DATED: _____     _____
                                 THE HONORABLE ELLEN S. HUVELLE
                                 UNITED STATES DISTRICT JUDGE

EXHIBIT "B"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION<br><br>This Document Relates To:<br>ALL CASES | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Misc. Action No. 06-0507 (ESH)
MDL Docket No. 1792

## DEFENDANTS' PROPOSED SCHEDULING ORDER

Pursuant to the Court's Initial Practice and Procedure Order (Dkt. # 4), and having considered the parties' proposed case management plans submitted in response thereto and the comments of the parties at the Initial Scheduling and Case Management Conference held January 26, 2006, it is hereby **ORDERED** that:

1.      Not later than 30 days after the Initial Scheduling and Case Management Conference, Plaintiffs shall file an amended consolidated complaint that: (1) proposes a uniform class definition; and, (2) specifies the legal claims Plaintiffs intend to pursue, and the Defendants against which they intend to pursue those claims, on behalf of the proposed class.   The amended consolidated complaint shall contain the information required by LCvR 23.1(a).

2.      If the Plaintiffs' amended consolidated complaint alleges a RICO claim, then Plaintiffs shall file concurrently with their amended consolidated complaint a RICO statement in the form prescribed by the MANUAL FOR COMPLEX LITIGATION, FOURTH § 40.54.

3.      In determining whether certification is proper under Rule 23(b)(3), this Court must address whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and whether "a class action is superior to other

available methods for resolving the dispute fairly and efficiently." FED. R. CIV. P. 23(b)(3). The Court may be able to resolve the choice of law (i.e., legal predominance) and superiority issues as a matter of law. Accordingly, not later than 30 days after the Initial Scheduling and Case Management Conference (concurrently with the filing of a consolidated amended complaint) Plaintiffs shall file a memorandum of law not to exceed 45 pages addressing the choice of law and superiority issues. To the extent that Plaintiffs in their amended consolidated complaint also seek class certification under FED. R. CIV. P. 23(b)(1) or 23(b)(2), Plaintiffs shall include in their memorandum any arguments in support of certification under those provisions. Not later than 30 days after the filing of Plaintiffs' memorandum, Defendants shall file a responsive memorandum of law not to exceed 45 pages. Plaintiffs may file a reply memorandum of law not to exceed 25 pages not later than 15 days after the filing of Defendants' response.

4.    If the Court concludes that choice of law and superiority do not preclude class certification, then the parties shall immediately commence fact discovery addressed only to the factual predominance class certification issues listed in Section II.C.3.c of the Defendants' portion of the proposed Joint Case Management Report. Such discovery shall be completed within 90 days after the Court's ruling on the choice of law and superiority issues.

5.    Not later than 30 days after the completion of fact discovery related to issues of class certification, Plaintiffs shall move under FED. R. CIV. P. 23(c)(1) and LCvR 23.1 for certification of the class(es) proposed in their amended consolidated complaint. The statement of points and authorities in support of Plaintiffs' motion, not to exceed 45 pages, shall at least: (1) identify the class(es) and any subclass(es) for which Plaintiffs seek certification; (2) detail the facts that meet the requirements of Fed. R. Civ. P. 23(a) and (b), including the identity of named plaintiff(s) to represent each class and subclass, and the qualifications of counsel for each class and subclass; (3) describe the forms, methods, and financing to be used to give notice to class members; and (4) identify and

include reports and affidavits of any experts to be used to support class certification. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 40.21, at 737 (Sample Order, § 5(e)). Not later than 30 days after Plaintiffs move for class certification, Defendants shall file a memorandum of points and authorities in response thereto, not to exceed 45 pages, which shall also identify and include reports and affidavits of any experts to be used in opposition to class certification.. Plaintiffs may file a reply memorandum not to exceed 25 pages not later than 15 days after Defendants' response. If either the Plaintiffs or Defendants proffer certification-related expert testimony in connection with their motion for, or opposition to, class certification, the Court will allow the opposing parties an additional 30 days to complete discovery of the proponents' experts, after which the opposing parties shall have the time originally allotted to file their responsive memoranda.

6.     The parties shall file any motions to join additional within 30 days following the Court's decision on class certification.

7.     The Court shall conduct a further status conference following its decision on class certification.


       SO ORDERED.



                                        _____
                                        ELLEN SEGAL HUVELLE
                                        United States District Judge

Date: _____, 2007.

EXHIBIT "C"

## LIST OF CASES

The following cases are now before this Court for consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407, as part of *In re InPhonic, Inc., Wireless Phone Rebate Litigation*, Case No. 1:06-mc-00507-ESH – MDL-1792:

1. *Davis v. InPhonic, Inc.*, Case No. 1:06-cv-00528 (D.D.C.);

2. *Rock, et al. v. InPhonic, Inc.*, Case No. 2:06-cv-02156 (D.N.J.);

3. *Yu, et al. v. InPhonic, Inc.*, Case No. 1:06-cv-00951 (D.D.C.);

4. *Sutherland v. InPhonic, Inc., et al.*, Case No. 1:06-cv-03281 (N.D. Ill.);

5. *Cover v. Continental Promotion Group, Inc., et al.*, Case No. 2:06-cv-01560 (D. Ariz.);

6. *Roquemore v. Continental Promotion Group, Inc., et al.*, Case No. 2:06-cv-01664 (D. Ariz.);

7. *Morales v. Continental Promotion Group, Inc., et al.*, Case No. 2:06-cv-01671 (D. Ariz.);

8. *Salzman v. InPhonic, Inc., et al.*, Case No. 1:06-cv-01266 (D.D.C.);

9. *Feldman v. Continental Promotion Group, Inc., et al.*, Case No. 2:06-cv-1891 (D. Ariz.);

10. *Pernick v. Continental Promotion Group, Inc., et al.*, Case No. 2:06-cv-1992 (D. Ariz.);

11. *Heller v. InPhonic, Inc.*, Case No. 1:06-cv-01577 (D.D.C.);

12. *Friedrich, et al. v. InPhonic, Inc., et al.*, Case No. 2:06-cv-6110 (C.D. Cal.);

13. *Workman v. InPhonic, Inc.*, Case No. 1:06-cv-1647 (D.D.C.);

14. *Everett v. InPhonic, Inc.*, Case No. 3:06-cv-6422 (N.D. Cal.).

EXHIBIT "D"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE INPHONIC, INC., WIRELESS
PHONE REBATE LITIGATION

Misc. Action No. 06-0507(ESH)
MDL Docket No. 1792

This Document Relates To:
ALL CASES

## APPOINTMENT AND DUTIES OF CLASS COUNSEL

Pursuant to Fed. R. Civ. P. 23(g), the Court makes the following appointment of class counsel who shall be generally responsible for conducting the prosecution of the litigation on behalf of the plaintiffs and the putative class (the "Class") as follows:

1.    The organizational structure of plaintiffs' counsel established by this Order shall bind plaintiffs' counsel in the Consolidated Actions, including any action subsequently governed by this Order.

2.    The Court appoints the following individuals to act on behalf of plaintiffs in the Consolidated Actions, including any plaintiffs subsequently governed by this Order, with the responsibilities hereinafter prescribed.

    a.    As Co-Lead Counsel:

        (1)    Steven A. Hart of Segal McCambridge Singer & Mahoney, Ltd;

        (2)    Kevin P. Roddy of Wilentz, Goldman & Spitzer; and

        (3)    John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA.

b.    As Members of the Executive Committee:

(1)    Steven A. Hart of Segal McCambridge Singer & Mahoney, Ltd;

(2)    Kevin P. Roddy of Wilentz, Goldman & Spitzer;

(3)    John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA

(4)    Barry Eichen of Eichen, Levinson & Crutchlow, LLP

(5)    Stephen M. Garcia of The Garcia Law Firm;

(6)    Jon Cuneo of Cuneo Gilbert & LaDuca, LLP;

(7)    Bruce Simon of Cotchett, Pitre, Simon & McCarthy;

(8)    David P. Meyer of David P. Meyer & Associates Co.;

(9)    Gallagher & Kennedy, P.A.;

(10)    Knoll Lowney of Smith & Lowney;

(11)    Mark Friedlander of Friedlander & Friedlander, P.C.;

(12)    Gary Mason of The Mason Law Firm, PC;

(13)    Eric Eisen of Eisen & Shapiro;

(14)    Miranda Kolbe of Schubert & Reid LLP;

(15)    Daniel Warshaw of Pearson, Soter, Warshaw & Penny, LLP; and

(15)    Keith Belt of Belt Law Firm, P.C.

c.    As Co-Chairs of the Executive Committee

(1)    Steven A. Hart of Segal McCambridge Singer & Mahoney, Ltd;

(2)    Kevin P. Roddy of Wilentz, Goldman & Spitzer; and

        (3)     John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA.

   d.    As Liaison Counsel:

       (1)     Steven A. Hart of Segal McCambridge Singer & Mahoney, Ltd;

       (2)     Kevin P. Roddy of Wilentz, Goldman & Spitzer; and

       (3)     John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA.

3.    <u>Co-Lead Counsel</u>. Co-Lead Counsel shall have day-to-day responsibility for the conduct of the consolidated litigation; shall determine, after consultation with the Executive Committee and its chair, how to prosecute the case and shall initiate, coordinate and supervise the efforts of plaintiffs' counsel in the consolidated action in the areas of discovery, briefing, trial and settlement. Co-Lead Counsel shall also be deemed to be members of the Executive Committee.

4.    Co-Lead Counsel shall designate responsibilities for specific tasks to plaintiffs' counsel in the consolidated cases in a manner to assure that pretrial preparation is conducted effectively, efficiently and economically; shall assist the Executive Committee and it's chair in maintaining communication among counsel; and shall monitor the activities of plaintiffs' counsel to assure that schedules are met and unnecessary expenditures of time and money are avoided. Co-Lead Counsel shall maintain the official service list of all plaintiffs and plaintiffs' counsel in the consolidated and coordinated actions, including their addresses. Co-Lead Counsel shall perform whatever any additional functions that may be assigned to them by the Court.

5.  <u>Executive Committee</u>.  To the extent delegated by Co-Lead Counsel, members of the Executive Committee and its Chair shall execute the orders of the Court concerning the conduct of the litigation; formulate and draft material for plaintiffs in the consolidated actions, including the initiation and conduct of discovery on behalf of the plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(2), and 26(g), including the preparation of interrogatories and document requests; drafting of pleadings, briefs and motion papers; and performance of such other tasks as are delegated by Co-Lead Counsel, including, for example, the taking of depositions upon oral examination.  Co-Lead Counsel and the Executive Committee members may organize whatever subordinate bodies or subcommittees they deem expedient, such as discovery committees and briefing committees.

6.  <u>Chair of the Executive Committee</u>.  The Chair of the Executive Committee shall be responsible for overseeing the work of that Committee, and coordinating the assignments established by the Co-Leads.  The Chair may participate in the conferences and planning meetings conducted by Co-Leads.

7.  <u>Liaison Counsel</u>.  Plaintiffs' Liaison Counsel shall be the contact between plaintiffs' counsel and the Court.  Liaison Counsel shall serve as spokesmen for plaintiffs in the consolidated actions in presenting those plaintiffs' views to the Court and in acting on behalf of those plaintiffs' views in matters of joint or common action.  This does not diminish the right of the other counsel to be heard on matters not susceptible to joint or common action or when genuine and substantial disagreement exists among counsel.  Plaintiffs' Liaison Counsel shall forward any notices from the Court and report upon any communications to Co-Lead Counsel, to members of the plaintiffs' Executive Committee, and to other plaintiffs' counsel as appropriate.

8.     Defendants shall serve all notices, orders, pleadings, motions, discovery, and memoranda relating to the Consolidated Actions on Co-Lead Counsel, which shall constitute service on all plaintiffs' counsel. An agreement reached with any Co-Lead Counsel or Co-Lead Counsel's designee shall be binding on all other plaintiffs' counsel in the Consolidated Actions.

9.     Defendants shall effect service of papers on the members of plaintiffs' Co-Lead Counsel, as applicable, by email and either: (i) overnight mail service or comparable delivery; (ii) telecopier or (iii) hand delivery. Service through electronic filing to all counsel of records is the preferred method to serve notice on all Plaintiff counsel of record. Plaintiffs in the Consolidated Action shall effect service of papers on defendants by serving a copy of the same on all defendants' counsel by email and either: (i) overnight mail service or comparable delivery; (ii) telecopier or (iii) hand delivery.

## SUBSEQUENT ACTIONS

This Order will apply to all subsequent "tag-a-long" actions related to this litigation. A copy of this Order shall be served on counsel for plaintiffs of all subsequent "tag-a-longs" in related actions by Co-Lead Counsel.

IT IS SO ORDERED.

DATED: _____    _____
                                      THE HONORABLE ELLEN S. HUVELLE
                                      UNITED STATES DISTRICT JUDGE

**ATTACHMENT 1**

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

December 21, 2006

Mitchell R. Berger
(202) 457-5601
mberger@pattonboggs.com

### E-MAIL AND FIRST-CLASS MAIL

Steven A. Hart, Esq.
Segal McCambridge Singer & Mahoney
One IBM Plaza
Suite 200
Chicago, IL 60611

Kevin P. Roddy, Esq.
Wilentz Goldman & Spitzer
90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958

John R. Climaco, Esq.
Climaco Lefkowitz Peca Wilcox & Garofoli
1220 Huron Road
Suite 1000
Cleveland, OH 44115

Re:   *In re InPhonic, Inc., Wireless Phone Rebate Litigation,*
      MDL No. 1792 (D.D.C.)

Gentlemen:

This responds to your letter dated December 12, 2006, which you handed to me at the end of our approximately two-hour long meeting on December 13, 2006. I remain puzzled that you chose to communicate by letter after we had just completed a lengthy discussion of the same subjects. We also agreed to meet again on January 11, 2007, to complete our discussion of the subjects listed in Paragraph 19 of the Court's Initial Practice & Procedure Order (the "IPPO"), and to exchange drafts of the parties' positions on those subjects on January 8, 2007, for inclusion in the report to the Court due by January 19. Accordingly, in the interim, beyond reiterating a few of the points that we discussed on December 13, I do not believe it would be productive to respond at length to your letter.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Steven A. Hart, Esq.
Kevin P. Roddy, Esq.
John R. Climaco, Esq.
December 21, 2006
Page 2

The first paragraph of your letter addresses the settlement in principle of the lawsuit brought by the D.C. Attorney General, which expressly sought "restitution" of InPhonic-offered rebates on behalf of "consumers throughout the United States." I understand that at least some of you met with the DCAG's office on December 12 to ask for information about that settlement. Among other things, as we discussed, the settlement in principle with the DCAG provides a mechanism for InPhonic customers to resolve their claims and receive the amount of their rejected rebates if they have, before the settlement agreement is signed, filed complaints with government agencies like the DCAG or with the Better Business Bureau. The settlement agreement is not yet finalized or signed. The D.C. Superior Court has ordered the DCAG and InPhonic to submit a further status report by February 21, 2007, if the settlement is not finalized and signed, and the DCAG lawsuit dismissed, by February 7, 2007. Following our meeting, the DCAG's office informed me that it believes it is premature to disclose copies of the settlement documents, which are still in draft form, to plaintiffs in the MDL actions. Because the settlement drafts have been exchanged on a confidential basis, InPhonic cannot unilaterally disclose them, and InPhonic does not wish to jeopardize completion of the settlement in principle with the DCAG.

The second paragraph of your letter discusses plaintiffs' position concerning a Rule 26(f) conference, Rule 26(a) initial disclosures, discovery and document preservation— all subjects that we had discussed before you delivered your letter. InPhonic is complying with the IPPO, which provides the Court's directions concerning the timing, necessity and/or scope of a Rule 26(f) conference, Rule 26 disclosures, and other discovery, and which also has the effect of adopting the minute order concerning document preservation that Judge Pallmeyer entered on July 19, 2006 in the *Sutherland* action (which is quite different than the preservation order that the *Sutherland* plaintiff proposed, as described in your letter). *See* IPPO ¶¶ 11-12.

I expect that the parties will document their positions on these issues further in the statements that will be included in the report to the Court due by January 19 and, before then, in the drafts of those statements that we agreed to exchange on January 8.

Very truly yours,

Mitchell R. Berger

cc:    C. Philip Cambell, Jr., Esq.