**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------   :
                                                            :
IN RE INPHONIC, INC., WIRELESS    :
PHONE REBATE LITIGATION           :
---------------------------------------------------------:   **Misc. Action No. 06-0507 (ESH)**
                                                            :   **MDL Docket No. 1792**
This Document Relates To:         :
ALL CASES                         :
---------------------------------------------------------   :

### SUPPLEMENTAL JOINT CASE MANAGEMENT REPORT

Pursuant to the Court's Order of January 26, 2007 (MDL Dkt. #12), Plaintiffs and

Defendants InPhonic, Inc. ("InPhonic"), Continental Promotion Group, Inc. ("CPG"), and

Helgeson Enterprises ("Helgeson"), submit the following joint report addressing: "(a) a proposed

schedule for motions pursuant to Federal Rule of Civil Procedure 12(b)(6), if any, including the need

to resolve any such motions before discovery regarding class certification begins; (b) a proposed

schedule for discovery regarding class certification; (c) a proposed protective order, if necessary, and

(d) a proposed order regarding electronic discovery, if necessary." *Id.*, at 2.

**I.    Rule 12(b)(6) Motions.**

**Areas of Agreement:**

Of the eight "causes of action" alleged in the Consolidated Amended Class Action

Complaint (MDL Dkt. #19) ("Consol. Complt.") against InPhonic, only three are also asserted

against CPG and Helgeson:  Count 3 (RICO); Count 6 (Unjust Enrichment); and, Count 8 (Civil

Conspiracy).   The Consolidated Complaint was served on Monday evening, February 26.

Defendants have informed Plaintiffs that they have not been able to complete their analysis of

whether any claims of the Consolidated Complaint, including the three claims against CPG and

Helgeson, are subject to dismissal on a motion under Fed. R. Civ. P. Rule 12(b)(6).  Accordingly, the

parties agree that they should continue to confer concerning potential Rule 12(b)(6) motions (including a proposed schedule for briefing of any such motions) as soon as Defendants complete their analysis of the Consolidated Complaint, and report the outcome of their further conferences to Court at or before the March 14, 2007 status conference.

**Plaintiffs' Supplemental Position:**

Plaintiffs submit that, regardless of whether Defendants file Rule 12(b)(6) motions, the Court does not need to resolve any such motions before discovery regarding class certification commences.

**Defendants' Supplemental Position:**

If Defendants conclude that they will make a Rule 12(b)(6) motion addressed to Counts 3, 6 and 8, which would be fully dispositive as to CPG and Helgeson, then they submit that the Court should resolve that motion before discovery regarding class certification commences. It would be inefficient, and potentially prejudicial, to commence certification-related discovery until the Court has determined whether CPG and Helgeson will remain as parties to this action and must participate in certification-related discovery. Additionally, except for Plaintiffs' RICO claim, all other counts of the Consolidated Complaint arise under the Court's diversity jurisdiction and thus present choice of law issues in connection with Plaintiffs' motion for class certification. *See* Joint Case Management Report filed January 19, 2007 (MDL Dkt. #7)("Joint Report"), at 13-14. Accordingly, a ruling on the legal sufficiency of the RICO claim also will clarify how choice of law issues will affect the Court's adjudication of Plaintiffs' class certification motion.

## II.    Discovery Regarding Class Certification.

**Areas of Agreement:**

The parties agree that, whenever discovery regarding class certification commences, the Court should allow a period of 120 days to complete that fact discovery, with the possibility that the

parties would seek an extension of that period if there are delays associated either with the volume and nature of the documents produced, or with disputes over discovery that require the Court's resolution.  If either party plans to use expert testimony in connection with class certification, then the parties agree that they should meet and confer following the close of certification-related fact discovery and propose a schedule for the designation, disclosure and depositions of experts, before briefing on class certification.

The parties disagree over the scope of certification-related fact discovery, as explained below.

**Plaintiffs' Position on Scope of Discovery:**

Plaintiffs submit that written and oral discovery on the topics in the chart below are relevant and necessary for the court to analyze class certification issues pertaining to Rules 23(a) and 23 (b). Plaintiffs' counsel presented this chart to defense counsel during preparation of this joint report. Defense counsel agreed that some topics are class-related, but disagreed on others.  The chart reflects areas of agreement and provides plaintiffs' relevancy analysis on the areas of disagreement. Plaintiffs also offer comments on the limited scope of defendants' proposed topics of discovery.

There is not always a bright line between discovery into certification issues and into the merits of the case.  Indeed, there is some inevitable overlap of issues relevant to both.  *See In re Initial Public Offering Securities Litigation*, 471 F.3d 24, Fed. Sec. L. Rep. P 94, 137 (2d Cir. Dec. 5, 2006).  The Manual for Complex Litigation ("Manual") suggests discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof.  *See* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.14 at 255 (2004).  Further, it states that "[w]hen the opposing party contends that proof of the claims unavoidably raised individual issues" discovery may be necessary.  *Id.*  Since the court has bi-furcated class and merits discovery, plaintiffs have made a good-faith effort to identify the issues that are

relevant to its claims, and seek only to conduct discovery necessary to support its certification motion. Not surprisingly, some of the topics overlap between certification and merits issues. The battleground lies in that overlap.

The primary disagreement between the parties rests on whether the "intent" or "purpose" behind the terms and conditions of the various rebates and the policies and procedures in processing rebate submissions pertain to class or merits issues. These issues cannot be untangled by purely interpreting the operative complaint, and some discovery is therefore needed. By limiting discovery solely to the specific terms and conditions, and the advertising and marketing, of each rebate, defendants will attempt to individualize each plaintiff's purchase process and associated reasoning.

This strategy ignores the common thread of the named plaintiffs and class members' claims; namely, that specific terms and conditions of the rebates are borne out of a common course of conduct that makes each rebate and the fulfillment process fraudulent and deceptive. If plaintiffs are unable to conduct discovery where class issues overlap with merits issues, they will be highly prejudiced by being deprived of evidence showing class-wide impact. As the Manual explains, "[d]eciding typicality requires determining whether the named plaintiff's claim arises from the same course of events and involves legal arguments similar to those of each class member." *Id.* at § 21.141.

The following chart identifies the topics into which plaintiffs need to conduct discovery in preparation for the certification hearing. The topics and anticipated evidence are relevant and directly related to the commonality and typicality of plaintiffs' claims, the numerosity of the class, and the adequacy of representation for the corresponding reasons in the right column.

| TOPIC | RELEVANCY |
|-------|-----------|
| 1. Rebate terms | The parties agree that rebate terms are relevant to certification; however, defendants are concerned about the scope of this topic. Plaintiffs assert that any information about the |

| | |
|---|---|
| | rebate terms is relevant to their class definition and the commonality of the deceptive nature of each rebate offered during the class period and the uniformly fraudulent nature in which rebate submissions were processed by all three defendants. |
| a.   Development of each rebate offered since beginning of class period | Plaintiffs allege defendants took affirmative steps to uniformly deceive consumers.  For example, they allege "InPhonic also intentionally used smaller-sized typefaces and fonts when describing certain material and binding terms and conditions to de-emphasize their importance and discourage customers from reading them." *See* Complaint at Paragraph 33.  Defendants will likely argue that whether one rebate was displayed in 8-point font and another in 10-point is an example of the individualized nature of each rebate offer in arguing against certification. Plaintiffs believe it is the intent to use small font, regardless of variations, that satisfies the commonality requirement. |
| i.   Terms, conditions and forms considered but rejected | The terms, conditions and forms that defendants considered but did not use are relevant to the decision by defendants to uniformly make each rebate offer deceptive and fraudulent. |
| ii.   Consideration of slippage and breakage | Slippage (which refers to consumers whose rebates do not fully comply with terms and conditions) and breakage (which refers to consumers who never submit rebate forms) are industry terms used when developing rebate offers.  Information about defendants' estimates of the number of customers who would incorrectly submit, or not submit, rebate forms when developing its rebate offers is uniformly relevant to the terms and conditions of the rebates offered during the class period. |
| b.  Terms, conditions and forms of each rebate offered since beginning of class period | Agreed. |
| i.  Nature of the information and documents required | Defendants' requirements for supporting documentation are relevant plaintiffs' class allegations about undisclosed material limitations on the rebate offers. |
| c.   Reasoning and methodology for changes in any rebate terms, conditions or forms throughout | Information about defendants' reasoning and methodology is relevant to plaintiffs' class allegations about uniformly "false statements of |

| | | |
|---|---|---|
| | the class period | fact and undisclosed material limitations on the rebate offers." *See* Consol. Complt. at Paragraph 46. |
| | b.   Method of confirming customer acceptance of terms and conditions | Agreed. |
| | c.   Contracts and agreements with all third-party equipment and service providers that affected the terms and conditions of each rebate offered since beginning of class period | This information is relevant to determine whether defendants had a financial motive to make rebates harder to fulfill, which is a fact that would be relevant on a classwide basis. |
| | i.   Accounting and financial records regarding payments to third-party equipment and service providers throughout class period | Information about the financial payments made by defendants to third parties is relevant to whether there was a uniform and common purpose for the concealment of material information or misleading and material misrepresentations made to the class members. |
| 2. | Rebate advertising and marketing | The parties agree that advertising and marketing are relevant to certification; however, defendants are concerned about the scope of this topic. Plaintiffs assert that any information about the advertising and marketing is relevant to their class definition and the commonality of the deceptive nature of each rebate offered during the class period. |
| | a.   List of all websites on which a company under InPhonic's control advertised or marketed sale of equipment or service plans | Agreed. |
| | ii.   Includes third-party websites | Agreed. |
| | b.   List of all print, radio or television media outlets and companies used to advertise or market sale of equipment or service plans | Agreed. |
| | c.   Development of all advertising and marketing efforts | Plaintiffs allege defendants took affirmative steps to uniformly deceive consumers. These deceptions uniformly occurred through the |

| | | |
|---|---|---|
| | | advertising and marketing of defendants' equipment and service plans. Defendants may argue that the rebate terms and conditions of each piece of equipment and each service plan are individualized and not appropriate for class treatment. Plaintiffs allege in their complaint that these efforts are common in that they are based on the same course of events – the decision to uniformly deceive customers. Information on these efforts, and how these efforts were undertaken, is very relevant to plaintiffs' class. |
| | i. Decisions regarding wording, font, and placement of terms and conditions | See comments in 2.c. |
| | ii. Decisions regarding web "back-pages" and which information to place on those back pages | See comments in 2.c. |
| | iii. Ability to view and/or print rebate terms and conditions on any website under InPhonic's control | Agreed. |
| | d. All iterations, versions and drafts of web pages advertising or marketing rebates throughout the class period | Agreed. |
| 3. | Rebate processing | The parties agree that aspects of rebate processing are relevant to certification; however, defendants are concerned about the scope of this topic. Plaintiffs assert that any information about the processing is relevant to the definition of the rebate deprivation class as there are undisclosed material limitations on the rebate offers common to all members of the class. |
| | a. Development of processing policies and procedures | Defendants' reasoning behind the processing policies and procedures is relevant to the 8 undisclosed limitations alleged in the consolidated complaint in paragraphs 34 – 45. Defendants will likely argue class treatment is not appropriate because individual plaintiffs |

| | |
|---|---|
| | submitted different paperwork and were denied rebates for different reasons. Plaintiffs argue the reasoning for each undisclosed limitation is the same and common to each plaintiff. |
| i.   What information and documentation is necessary and why | See comments in 3.a. |
| ii.  Manner and method customer can correct, supplement or amend rebate submissions | See comments in 3.a. |
| b.   Implementation of processing policies procedures | See comments in 3.a. |
| i.   Where and when to send information and documentation | Agreed. |
| ii.  Manner and method of review of materials submitted | Agreed. |
| c.   Contracts/agreements with third-parties for rebate fulfillment | Agreed. |
| d.   Fulfillment/processing guidelines agreed upon and used by third-parties | Agreed. |
| e.   Funding of rebates | Information about how rebates are funded and the number of rebates defendants expected to fulfill is relevant to the common scheme to uniformly conceal material terms from customers.    Plaintiffs will rely on this information to satisfy the commonality element for certification.    Further, this information is relevant to numerosity of the class. |
| i.   Bank account from which rebate checks were fulfilled throughout class period | See comments in 3.e. |
| ii.  Funding of bank account | See comments in 3.e. |
| d.   Methods of accounting for fulfilled and unfulfilled rebates | See comments in 3.e. |

| | | |
|---|---|---|
| e. | Use of slippage and breakage data in forecasting financials to investors | See comments in 3.e. |
| f. | Corporate use of up-front funds paid by consumer prior to rebate fulfillment | See comments in 3.e. |
| g. | Documentation, correspondence and materials related to each named plaintiff's rebate submission and processing | Agreed. |
| 4. | Customer relations | Plaintiffs allege that as part of defendants' common scheme, they failed to timely provide necessary documents and provide necessary customer service.  Defendants may argue that class treatment is inappropriate because each class member's experience was different.  Plaintiff argue any individual experience is typical of the entire class because it arose from the same course of events; namely, the policies and procedures for assisting customers in the rebate process were designed in such a fashion as to uniformly affect the class. |
| a. | Development and procedures for telephone communications on rebate status | See comments in 4. |
| i. | Scripts, instructions for telephone service representatives | See comments in 4. |
| b. | Development and procedures for websites for customers to check rebate status | See comments in 4. |
| c. | Development and procedures for email communications to customers on status on rebate status | See comments in 4. |

Defendants' proposed topics, while generally acceptable, make assumptions about what discovery will show.  However, because the parties cannot assume what will be borne out in

discovery, defendants' proposed topics are too limiting.  Further, although Plaintiffs contend that class certification could be granted based upon the facts pled in the Consolidated Amended Complaint, plaintiffs anticipate that defendants' opposition will likely raise issues that require inquiry into matters related to the development of the rebate programs, especially as they relate to consumer expectations.  In this regard, relevant inquires include not only inquiries in support of an affirmative showing on the part of plaintiffs, but also includes inquiries that support plaintiffs' reply to defendants' opposition.

Of final note, plaintiffs agree that discovery into superiority is necessary at this stage of the litigation.  Plaintiffs have very limited information on the manner, method and terms of the agreement that is the subject of the Consent Order entered by the District of Columbia Superior Court.  The documents provided to the D.C. Attorney General's office are relevant to many of the topics outlined by plaintiffs, in addition to the superiority topics outlined by defendants.  Since those documents have already been organized and produced there would be no burden or prejudice to InPhonic to produce the same materials to plaintiffs.  Plaintiffs request this production be part of any discovery order entered by the Court.

**<u>Defendants' Position on Scope of Discovery:</u>**

For the reasons previously explained by Defendants in the Joint Report (MDL Dkt. #7, at 9-18), discovery regarding class certification should be limited to the topics concerning choice of law, superiority and predominance identified at pages 15-17 of that Report.  Those topics are reproduced below:

**A.      Discovery Topics Relating to Choice of Law.**

1.      The jurisdictions in which the named Plaintiffs and other putative class members (1) resided at the time that they placed their purchase order with InPhonic, received a wireless phone product from InPhonic, and received a response regarding their claim for a rebate from InPhonic, or (2) contend their contract with InPhonic was to be performed.

### B.     Discovery Topics Relating to Superiority.

2.     Whether the named Plaintiffs or other putative class members complained to any government agency, or to the Better Business Bureau, about the rebate claims that are the subject of these lawsuits.

3.     Whether the named Plaintiffs or other putative class members who have asserted claims under the consumer protection statutes of the District of Columbia and/or the 50 states, were aware of an opportunity to make complaints to the government enforcement authority of those jurisdictions concerning their claim for a rebate from InPhonic.

4.     Whether the named Plaintiffs or other putative class members were aware of an opportunity to resolve their claims and receive payment of their rebates under the terms of InPhonic's settlement of the DCAG Action.

5.     Whether the named Plaintiffs or other putative class members sought to resolve their claims informally by complaining to InPhonic.

### C.     Discovery Topics Relating to Predominance.

### 1.     Rebate Terms and Conditions.

a.     Whether during the class period, for the named Plaintiffs and other putative class members, the stated terms and conditions of InPhonic's rebate offers varied in material respects (a) over time, (b) by the wireless carrier selected by the consumer, (c) in the nature of the information and documents the consumer was required to submit to support a rebate claim, (d) in the amount of the offered rebate, or (e) by inclusion of an Equipment Purchase Discount chargeback provision ("EPD chargeback").

b.     Whether the named Plaintiffs and other putative class members are seeking (a) rebates offered by InPhonic, as opposed to rebates offered by equipment manufacturers or wireless carriers, and (b) the same type of rebate among the various types offered by InPhonic.

c.     Whether there are terms and conditions of the contracts between the wireless carriers and named Plaintiffs and other putative class members of which InPhonic is an intended beneficiary, and which materially limit the ability to maintain a class action against InPhonic.

d.     Whether the named Plaintiffs and other putative class members contend that InPhonic or its rebate processors made oral or written representations beyond the rebate terms and conditions stated at the time of purchase, on which they relied in connection with their rebate claims, including representations allegedly made through telephone communications, correspondence, or on websites that permitted consumers to check the status of their rebate claim.

## 2.    Disclosure of Rebate Terms and Conditions.

a.    Whether the named Plaintiffs and other putative class members reviewed InPhonic's rebate terms and conditions on an InPhonic website (a) when placing a purchase order with InPhonic, (b) in written materials that were included in each customer's shipment of product(s) from InPhonic, and/or (c) on the rebate claim forms that they signed and submitted to InPhonic or its rebate processing vendors.

b.    Whether the manner of disclosure of InPhonic's rebate terms and conditions differed in material ways during the class period.

## 3.    Consent to Rebate Terms and Conditions.

a.    Whether and in what ways the named Plaintiffs and other putative class members manifested their consent to InPhonic's rebate terms and conditions.

## 4.    Rebate Claim Processing.

a.    Whether each decision to reject, or to require resubmission of, a consumer's rebate claim was evidenced by various "error codes" (alone or in combination) that identified the way(s) in which an individual rebate claim form did not (in the judgment of InPhonic and/or its rebate processing vendors) comply with the terms and conditions of the applicable rebate offer(s).

b.    Whether, other than by individual examination of each putative class member's rebate claim submission file, there is any way to determine if InPhonic and its rebate processing vendors correctly applied the stated terms and conditions of the rebate offer to the rebate claims of putative class members when their rebate claim was rejected, returned for resubmission, or was not paid on a timely basis.

c.    Whether the named Plaintiffs and other class members were offered an opportunity to cure specified defects in their rebate submissions and, if so, whether they in fact resubmitted their claims.

## 5.    Payment.

a.    Whether the named Plaintiffs or other putative class members received any InPhonic rebate-related payment from Defendants, regardless of whether they chose to accept the payment.

b.    Whether the named Plaintiffs or other putative class members were charged any amount of money by InPhonic as an EPD chargeback.

*        *        *

Independent of the Court's ruling on any Rule 12(b)(6) motion to dismiss certain counts, all of the above-listed discovery topics would remain relevant even to the proposed certification of a plaintiff class pursuing claims only as against InPhonic, for the following reasons:

- **Choice of Law:** Plaintiffs seek to pursue claims on behalf of a nationwide class both (i) under District of Columbia statutory and common law, regardless of the jurisdictions in which Plaintiffs and putative class members resided when they did business with InPhonic (Consol. Complt., ¶¶ 55, 79, 83, 88 & 95) and (ii) under the consumer protection statutes of the 50 states (*id.*, ¶¶ 65, 70). Accordingly, in addressing the choice of law issue for purposes of class certification (Joint Report, at 13-14), discovery is appropriate to determine the jurisdictions in which the Plaintiffs and putative class members resided and whose laws may be implicated by their claims. *Id.*, at 15.

- **Superiority:** Plaintiffs acknowledge that notice of their 50-state consumer protection claim must be given to the Attorneys General of at least 10 states. *See* Consol. Complt., ¶ 72. Accordingly, in addressing the superiority issue for purposes of class certification (Joint Report, at 3-5, 11-13), discovery is appropriate to determine whether Plaintiffs and the putative class members are aware of their opportunities to resolve their claims not only through settlement of the DCAG Action (which now has been approved by the D.C. Superior Court) but also through complaints to the Attorneys General and other enforcement agencies of the 50 states. *Id.*, at 15.

- **Predominance:** Plaintiffs all allege that they knew that InPhonic rebates were available only "so long as certain terms and conditions were met" and that they acted "[i]n compliance with the requirements established by InPhonic," or that they sought rebates "[i]n accordance with InPhonic's instructions," or that they "timely and properly submitted" rebate claims that included "all of the documentation, as required by InPhonic, within the specified time period." Consol. Complt., ¶¶ 7-19. Accordingly, in addressing whether factual issues common to the putative class predominate over individualized issues for purposes of class certification (Joint Report, at 14-15), discovery is appropriate on all of the topics Defendants previously identified, concerning whether individualized proof would be necessary for the Court to ascertain, for each Plaintiff and putative class member: (i) the specific rebate terms and conditions disclosed to, and accepted by, them; (ii) whether their rebate claims were properly denied based on such disclosed and accepted terms and conditions; and, (iii) what amounts, if any, were paid to them. *Id.*, at 16-17.

The discovery topics proposed by the Plaintiffs (*supra* at 5-9) overlap to some extent with the certification-related topics proposed by Defendants, but otherwise relate to the merits of Plaintiffs' claims, not to the elements of Fed. R. Civ. P. Rule 23 (a-b) concerning class certification. The Court stated at the initial scheduling conference that it would "bifurcate merits and class" discovery and that, for certification purposes, the Court generally would assume the truth of Plaintiffs' merits allegations. Tr. of 1/26/07 Initial Scheduling Conf., at 31, 37-38, 43; Order of January 26, 2007 (MDL Dkt. #12); *see also McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 431 (D.D.C.

2002)("allegations in the complaint are presumed true for purposes of a motion for class certification…")(Huvelle, J.).

The chart below summarizes Defendants' position on whether Plaintiffs' proposed discovery topics are merits-related (and therefore should not be authorized) or, instead, are certification-related (and therefore should be allowed to the extent noted in the chart.).

| Plaintiffs' Discovery Topic | Defendants' Position |
|---|---|
| **1.a.   Rebate Terms.**   Development of each rebate offered since beginning of class period: (i) Terms, conditions and forms considered but rejected; (ii) Consideration of slippage and breakage. | **Merits discovery.** "Development" of rebates, and programs "considered but rejected" and other "consideration[s]" relate, *e.g.*, to Defendants' intent, business justification for the rebate programs.  Certification-related discovery should focus on the actual rebate terms and conditions, and whether they varied by consumer, and over time.  *See* Defendants' discovery topic C.1.a. |
| **1.b.**   Terms, conditions and forms of each rebate offered since beginning of class period; (i) Nature of the information and documents required. | Certification-related discovery that would be provided by Defendants' discovery topic C.1.a. |
| **1.c.**   Reasoning and methodology for changes in any rebate terms, conditions or forms throughout the class period. | **Merits discovery.**   Relates, *e.g.*, to Defendants' intent, business justification for the rebate programs. |
| **1.d.**   Method of confirming customer acceptance of terms and conditions. | **Merits discovery** to the extent that it seeks to establish the ultimate issues of consumer knowledge of, and consent to, the rebate terms and conditions.  The certification-related aspects of this topic (*e.g.*, whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith) would be provided by Defendants' discovery topics C.3.a. and C.4.a.-c. |
| **1.e.**   Contracts and agreements with all third-party equipment and service providers that affected the terms and conditions of each rebate offered since beginning of class period; (i) Accounting and financial records regarding payments to third-party equipment and service providers throughout class period. | Sub-part (i) is **merits discovery** (*e.g.*, "payments" to third parties do not evidence, and are not part of, the terms and conditions of rebate programs).  The remainder is certification-related discovery (because the contracts potentially establish terms of which InPhonic is an intended beneficiary, which might materially limit the ability to maintain a class action), and would be provided |

| | by Defendants' discovery topic C.1.c. |
|---|---|
| **2.a.  Rebate advertising and marketing.** List of all websites on which a company under InPhonic's control advertised or marketed sale of equipment or service plans; (i) includes third-party websites. | Certification-related discovery that would be provided by Defendants' discovery topic C.1.a and C.2.a. (relating to whether rebate terms and conditions varied over time, and by consumer). |
| **2.b.** List of all print, radio or television media outlets and companies used to advertise or market sale of equipment or service plans. | Certification-related discovery that would be provided by Defendants' discovery topic C.1.a. and C.2.b. (relating to whether rebate terms and conditions varied over time, and by consumer). |
| **2.c.**    Development of all advertising and marketing efforts.    (i)  Decisions regarding wording, font, and placement of terms and conditions; (ii) Decisions regarding web "back-pages" and which information to place on those back pages; (iii) Ability to view and/or print rebate terms and conditions on any website under InPhonic's control. | Sub-parts (i) and (ii) are **merits discovery**. "Development" of, and "[d]ecisions" regarding advertising and marketing relate, *e.g.*, to Defendants' intent, business justification for the rebate programs.    Sub-part (iii) would be certification-related to the extent it concerns whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. *See* Defendants' discovery topic C.2.b. |
| **2.d.** All iterations, versions and drafts of web pages advertising or marketing rebates throughout the class period. | **Merits discovery** to the extent the request seeks "drafts" and other versions of web pages that were never viewable by the consumer.  Such drafts would relate only, *e.g.*, to Defendants' intent or business justification for the rebate programs.  Certification-related discovery of the web pages actually viewable by consumers (*i.e.*, whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith) would be provided by Defendants' discovery topic C.1.a. and C.2.a. |
| **3.a.    Rebate Processing.**    Development of processing policies and procedures.  (i) What information and documents is necessary and why; (ii) Manner and method customer can correct,    supplement    or    amend    rebate submissions. | **Merits discovery.**    The "[d]evelopment of processing policies and procedures" and the rationale    ("why")    "information    and documentation" is required to support a rebate claim relates to Defendants' intent and business justification for the rebate programs.    The certification-related aspects of this topic (*e.g.*, whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge    of    and    consent    thereto,    and    the |

| | |
|---|---|
| | consumer's compliance therewith) would be provided by Defendants' discovery topics C.1.a. and C.4.c. |
| **3.b.** Implementation of processing policies procedures. (i) Where and when to send information and documentation. (ii) Manner and method of review of materials submitted. | **Merits discovery.** The broad topic of "implementation" of rebate "processing policies" concerns the ultimate merits question of whether Plaintiffs' rebate claims were properly rejected. Sub-parts (i) and (ii) are certification-related to the extent that they relate to whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith, and would be provided under Defendants' discovery topics C.4.a.-b. |
| **3.c.** Contracts/agreements with third-parties for rebate fulfillment. | To the extent that the contracts specify rebate processing criteria, they relate to the certification question of whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. *See* Defendants' discovery topic C.4.a.-b. |
| **3.d.** Fulfillment/processing guidelines agreed upon and used by third parties. | Rebate processing criteria relate to the certification question of whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. *See* Defendants' discovery topic C.4.a. |
| **3.e.** Funding of rebates. (i) Bank account from which rebate checks were fulfilled throughout class period. (ii) Funding of bank account. | **Merits discovery.** Funding apparently relates, *e.g.,* to Defendants' intent, business justification for the rebate programs, and Plaintiffs' "unjust enrichment" and damages claims. It does not relate to the certification question of whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. |
| **3.f.** Methods of accounting for fulfilled and unfulfilled rebates. | **Merits discovery.** Rebate accounting apparently relates, *e.g.,* to Defendants' intent, business justification for the rebate programs, and Plaintiffs' "unjust enrichment" and damages claims. It does not relate to the certification question of whether the Court must make an individualized examination of the rebate terms |

| | and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. |
|---|---|
| **3.g.**   Use of slippage and breakage data in forecasting financials to investors. | **Merits   discovery.**      Financial   forecasting apparently relates, *e.g.*, to Defendants' intent, business justification for the rebate programs, and Plaintiffs' "unjust enrichment" and damages claims.   It does not relate to the certification question of whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. |
| **3.h.**   Corporate use of up-front funds paid by consumer prior to rebate fulfillment. | **Merits discovery.**   Defendants' use of funds apparently relates, *e.g.*, to Defendants' intent, business justification for the rebate programs, and Plaintiffs' "unjust enrichment" and damages claims.   It does not relate to the certification question of whether the Court must make an individualized examination of the rebate terms and conditions applicable to each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith. |
| **3.i.**      Documentation, correspondence and materials related to each named plaintiff's rebate submission and processing. | The named Plaintiffs' rebate submissions and related   documentation   would   address   the certification question of whether the Court must make an individualized examination of the rebate terms   and   conditions   applicable   to   each consumer, the consumer's knowledge of and consent thereto, and the consumer's compliance therewith.   *See* Defendants' discovery topics C.4.a.-c. & C.5.a.-b. |
| **4.a.-c.  Customer relations.**<br>(a) Development and procedures for telephone communications on rebate status; (i) scripts, instructions   for   telephone   service representatives.<br>(b) Development and procedures for websites for customers to check rebate status.<br>(c) Development and procedures for email communications to customers on status on rebate status. | **Merits discovery.**   "Development" of customer relations communications materials relates to Defendants' intent, business justification behind how they chose to respond to rebate-related inquiries.      Certification-related   discovery   on "customer relations" would focus instead on whether the Court must make an individualized inquiry into whether Plaintiffs and putative class members used telephone, website and e-mail communications to determine their rebate status, and whether Plaintiffs uniformly contend that they   detrimentally   relied   on   such communications. *See* Defendants' discovery topic C.1.d. |

III.    **Proposed Protective Order.**

Defendants previously explained in the Joint Report (MDL Dkt. #7, at 25-26) that they believe a protective order is necessary to the extent that certification-related discovery requires production of confidential information. The parties have agreed upon, and request that the Court approve, a Stipulated Protective Order, in the form attached hereto as Exhibit A.

IV.    **Electronic Discovery Order.**

The parties have discussed, but have not yet reached agreement upon, a stipulated order governing production of electronically stored information. The parties will continue to confer over the terms of such an order, but do not believe that they can reach agreement on all terms of the order until after they resolve certain remaining technical issues, and the Court provides guidance on the scope of certification-related discovery.

DATED:  March 2, 2007

By_____/s/_____
JOHN R. CLIMACO

CLIMACO, LEFKOWITZ, PECA,
WILCOX & GAROFOLI CO., LPA

888 16th Street, NW, Suite 800
Washington, DC 20006
(216) 621-8484
Co-Lead Counsel for Plaintiffs


By_____/s/_____
STEVEN A. HART

SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.
330 North Wabash Avenue, Suite 200
Chicago, IL 60611
(312) 645-7800
Co-Lead Counsel for Plaintiffs


By_____/s/_____
KEVIN P. RODDY

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive Suite 900, Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
Co-Lead Counsel for Plaintiffs

DATED:  March 2, 2007

By_____/s/_____
MITCHELL R. BERGER (D.C. Bar No. 385467)

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
(202) 457-6000
Counsel for Defendant InPhonic, Inc.


By_____/s/_____
C. PHILIP CAMPBELL, JR.

SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, FL 33602
(813) 229-7600
Counsel for Defendant Continental Promotion
Group, Inc.


By_____/s/_____
RICHARD G. MARK

BRIGGS AND MORGAN, P.A.
2200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8400
Counsel for Defendant Helgeson Enterprises

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2007, a copy of the foregoing Supplemental Joint Case Management Report and accompanying exhibit was filed with the court's electronic filing system, which provides service on all counsel of record for Defendants, and on Interim Co-Lead Counsel and Liaison Counsel for Plaintiffs for transmission by them to other Plaintiffs' counsel not registered on the court's electronic filing system.


By_____/s/_____
Mitchell R. Berger

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    :
IN RE INPHONIC, INC., WIRELESS         :
PHONE REBATE LITIGATION                :
_____:    **Misc. Action No. 06-0507 (ESH)**
                                                    :    **MDL Docket No. 1792**
**This Document Relates To:**                :
**ALL CASES**                                   :
_____:

**STIPULATED PROTECTIVE ORDER**

Upon the stipulations of the parties, through their respective counsel, along with a showing of good cause,

IT IS HEREBY ORDERED that the following provisions shall govern the production and handling of information exchanged by the parties throughout this litigation. None of the provisions of this Protective Order shall be read to expand or otherwise modify the scope or content of discovery that this Court orders the parties to undertake in this litigation.

1.    INFORMATION SUBJECT TO PROTECTION.

1.1    This Protective Order shall govern the production of all documents, interrogatory answers, answers to requests for admissions, deposition and hearing testimony, other discovery material, or portions thereof, produced or provided by any party during discovery or otherwise ("Discovery Material").

1.2    As used herein, "document" shall mean any written, printed, typed, recorded or graphic material or means to access such material (*e.g.*, through word processing), however produced or reproduced, of any kind or description, including all materials that fall within the scope of Rule 34 of the Federal Rules of Civil Procedure.

1.3    As used herein, "Confidential Information" shall mean any Discovery Material that constitutes or contains:  (i) trade secrets; (ii) financial information or data of any party; (iii) know how; (iv) proprietary data; (v) confidential research, development or commercial information, including without limitation technical, sales, marketing, employee, business, financial, privacy and other proprietary information, as well as other information protected by law from dissemination; or (vi) material that is otherwise confidential because its disclosure could be harmful to a party, its subsidiaries, affiliates, representatives or those in a business relationship with the party.  In particular, documents that contain the following types of information may be designated as Confidential Information:   trade secrets; proprietary information technology or customer information; non-public regulatory information and actions; non-public and current financial performance and projections, budgets, sales information, marketing and promotional plans, and/or business strategies; personal financial information including individual tax returns, credit card numbers, bank account numbers,  and social security numbers.  Confidential Information shall not include any information that, prior to disclosure thereof, was public knowledge, or which, after disclosure thereof, becomes public knowledge as a result of publication by one having the unrestricted right to do so.   Information is not Confidential Information if it is not maintained by the Producing Party in a manner to guard and protect its confidentiality, or if it is distributed to consumers or others with whom the Producing Party does not have an agreement that ensures the confidentiality of the information.

1.4    If any party believes that information or things not described in section 1.1 should be considered "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" (as described below), it may make application to the court.  Such application shall only be granted for reasons shown and for extraordinary grounds.

2

2      DESIGNATION OF CONFIDENTIAL INFORMATION.

2.1      General Requirements.    All designations of Confidential Information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" (as described below) shall be made in good faith by the party producing the information (the "Producing Party") and shall be made at the time of disclosure, production, or tender to the requesting party (the "Receiving Party") or at such other time as permitted by the Protective Order.   Designations of information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall constitute a representation that (i) such information has been reviewed by an attorney for the Producing Party; (ii) there is a valid and good faith basis for asserting that it contains Confidential Information; and (iii) disclosure of such information to persons other than those permitted access to such information hereunder would cause injury to the Producing Party, would be detrimental to the conduct of the Producing Party's business, or would otherwise subject the Producing Party to potential liability for disclosure of the information.

2.2      Documents and Discovery Responses.    To designate a discovery response or document as "CONFIDENTIAL" at the time the discovery response or document is produced, the Producing Party shall mark the first page of such discovery response or document with the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."   With regard to electronic data produced, all such data shall be deemed to be marked "CONFIDENTIAL" and should only be treated otherwise if the Producing Party has in writing indicated that the information (i) is "HIGHLY CONFIDENTIAL;" or (ii) is not (or does not contain) Confidential Information. All documents, information, and things made available for inspection by a Party shall be treated as "CONFIDENTIAL."

2.3     <u>Depositions and Hearings</u>.  To designate portions of a deposition or hearing transcript as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," a party shall either make a statement to that effect on the record at the deposition or hearing or by notifying Plaintiffs' Co-Lead and Liaison Counsel and all counsel of record for other parties, in writing, of those portions of the transcript to be designated within thirty (30) calendar days after the Producing Party's receipt of such transcript.  Transcripts will be treated as "CONFIDENTIAL" for the 30-day period.

2.4     <u>Confidentiality of Derivative Materials</u>.  No copies, extracts, abstracts or summaries of any discovery responses, electronic data, documents or transcripts designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be made except by or on behalf of persons authorized access to Discovery Material pursuant to sections 4.2 and 4.3, respectively. Any copies, extracts, abstracts or summaries shall also be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the discovery responses, documents or transcripts from which they were derived.

2.5     <u>Inadvertent Failures to Designate</u>. The inadvertent, unintentional, or *in camera* disclosure of Confidential Information shall not be deemed a waiver, in whole or in part, of any party's claims of confidentiality.  Upon notice, the parties must treat the information as Confidential Information in accordance with the provisions of this Protective Order.

3.     <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>.

3.1     <u>Meet and Confer</u>.  If a Receiving Party objects to the designation of any Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the Receiving Party shall first make a good-faith effort to resolve such a dispute by conferring directly with the Producing Party's counsel (in voice-to-voice dialogue; other forms of communication are not

4

sufficient).  In conferring, the Receiving Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Producing Party an opportunity to review the designated information or things, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A challenging Party may challenge the designation under section 3.2 only after (i) it has met its obligations under this section; or (ii) despite its good-faith effort to meet its obligations under this section, the Producing Party has failed to explain the basis for the chosen designation within two (2) weeks after being provided the opportunity to do so.

3.2     <u>Judicial Intervention</u>. A Party that elects to challenge a confidentiality designation after considering the justification offered by the Producing Party may file and serve, under LCvR 7, a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements imposed in the preceding paragraph.  The burden of proof in any such challenge proceeding shall be on the Producing Party.  Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection designated by the Producing Party.

4.     <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>.

4.1     <u>Prohibitions on Disclosure</u>. Discovery Material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall not be disclosed to anyone except as provided in this Protective Order, and in no event may such Discovery Material be used for any business, commercial, or competitive purposes or for any purposes other than this litigation.   All Confidential Information shall be used solely for the purposes of preparation for litigation of the actions consolidated for pretrial purposes under the caption *In re InPhonic, Inc., Wireless Phone*

*Rebate Litigation*, Misc. Action No. 06-0507 (ESH), MDL Docket No. 1792 (D.C. District Court), including specifically, but not exclusively, pre-trial discovery pursuant to the Federal Rules of Civil Procedure or other applicable rules, litigation of this action and preparation for, participation in, and prosecution and defense of any appeal, rehearing, review or other judicial proceeding that relates to the subject matter of the trial and preparation for the trial in this action. Absent further order of this Court, Confidential Information shall not be disclosed in any matter, controversy, mediation, arbitration or litigation now pending or later filed other than this action.

   4.2 <u>Disclosure of "CONFIDENTIAL" Discovery Material</u>.  Unless otherwise ordered by the court or permitted in writing by the Producing Party, a Receiving Party may disclose any information or item designated CONFIDENTIAL only to:

     (a) outside counsel of record for the parties, as well as members or employees of said counsel's law firms to the extent necessary for the conduct of this action;

     (b) in-house counsel engaged by the parties to the extent necessary for the conduct of this action;

     (c) duplicating services and litigation support services of a nature routinely engaged by counsel;

     (d) the parties and their present and former officers, directors, employees, representatives, and insurers to the extent necessary for the conduct of this action;

     (e) experts, consultants and other third parties who are consulted, employed, or retained by any of the parties or their counsel to assist counsel in this litigation;

     (f) actual or potential witnesses (whether third-party witnesses or employees of a party) who counsel reasonably believes have already seen or know the Confidential

Information, or who are reasonably believed to have knowledge relevant to the Confidential Information, for purposes of taking or preparing for a deposition or trial testimony;

(g)    the Court, court personnel and court reporters in the conduct of their official duties;

(h)    any third party mediator(s) appointed by the Court or jointly selected by the parties to assist in a possible resolution of this action; and

(i)    any other person upon written agreement of the Parties.

Prior to disclosure of "CONFIDENTIAL" Discovery Material to any independent person described under sub-paragraphs d, e, f, and i of the foregoing paragraph, counsel for the Receiving Party shall obtain an executed declaration of confidentiality in the form attached hereto as Exhibit A that the person(s) to whom the disclosure will be made has read this Protective Order and agrees to be bound by its terms.  A copy of all executed declarations of confidentiality shall be retained by counsel for the Receiving Party, who shall upon order of the Court or otherwise for good cause shown be required to produce any such declaration.

4.3    Disclosure of "HIGHLY CONFIDENTIAL" Discovery Material.  Unless otherwise ordered by the court or permitted in writing by the Producing Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL" only to:

(a)    outside counsel of record for the parties, as well as members or employees of said counsel's law firms to the extent necessary for the conduct of this action;

(b)    duplicating services and litigation support services of a nature routinely engaged by counsel;

(c)    authors and recipients (including those copied) of the information or item;

(d)    the Court, court personnel and court reporters in the conduct of their official duties; and

(e)    any third party mediator(s) appointed by the Court or jointly selected by the parties to assist in a possible resolution of this action; and

(f)    any other person upon written agreement of the Parties.

Prior to disclosure of "HIGHLY CONFIDENTIAL" Discovery Material to any independent person described under sub-paragraphs c and f of the foregoing paragraph, counsel for the Receiving Party shall obtain an executed declaration of confidentiality in the form attached hereto as Exhibit A that the person(s) to whom the disclosure will be made has read this Protective Order and agrees to be bound by its terms. A copy of all executed declarations of confidentiality shall be retained by counsel for the Receiving Party, who shall upon order of the Court or otherwise for good cause shown be required to produce any such declaration.

4.4    <u>Use of "HIGHLY CONFIDENTIAL" Confidential Information at Depositions</u>. If counsel for a party uses or conducts examination eliciting "HIGHLY CONFIDENTIAL" Confidential Information during a deposition, counsel shall first ensure that all persons present at the deposition may have access to such information pursuant to section 4.3 above. During examination using or eliciting "HIGHLY CONFIDENTIAL" Confidential Information, the Producing Party may exclude from the deposition any persons who are not permitted access to such information pursuant to section 4.3 above.

5.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>.

If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the Receiving Party must so notify the

Producing Party's counsel of record in writing (by fax or e-mail, if possible) immediately after receiving the subpoena or order so as to afford the Producing Party a reasonable opportunity to seek a protective order or other suitable protection. Such notification must include a copy of the subpoena or court order.  The Producing Party shall bear the burden and the expense of seeking a protective order or other suitable protection of its Confidential Information.

The Receiving Party also must immediately inform in writing the party that caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Protective Order.   In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue.

Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful subpoena or other compulsory process.  In the event that any information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" is produced pursuant to a lawful subpoena or compulsory process, such information shall continue to be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by all persons subject to this Protective Order unless and until the Court orders otherwise.

6.    UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL INFORMATION.

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Confidential Information to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Producing Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Confidential Information, (c) inform the person or persons to whom unauthorized disclosures

were made of all of the terms of this Protective Order, and (d) request such person or persons to execute a declaration of confidentiality in the form attached hereto as Exhibit A.

7.    <u>FILING CONFIDENTIAL INFORMATION.</u>

Information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" may be referred to or incorporated in briefs, affidavits, or other documents filed with this Court, but only to the extent reasonably necessary for the litigation of this action and provided that the filing party complies with LCvR 5.1(j), including by filing such information under seal accompanied by a motion to seal.

8.    <u>FINAL DISPOSITION</u>.

Upon final termination of this litigation, including all appeals, all material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," including all copies, extracts, abstracts or summaries of such material, shall at the option of the Receiving Party be either destroyed or returned to the Producing Party not later than sixty (60) calendar days after the ultimate disposition of this case.  The Receiving Party shall then provide an affidavit affirming that (i) at all times the party has abided by the terms of this Protective Order; and (ii) all Confidential Information in the Receiving Party's custody or control has been retrieved and destroyed or returned to the Producing Party.  Notwithstanding this provision, counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Confidential Information. Any such archival copies that contain or constitute Confidential Information remain subject to this Protective Order.

9.      MISCELLANEOUS.

9.1      No Waiver.  Disclosure of any information pursuant to the terms of this Protective Order shall not be deemed a waiver of any claim of confidentiality that the Producing Party would otherwise be entitled to invoke against a person or entity not a party to this action. Further, neither failure to designate a document as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," nor failure to object to any designation under this Protective Order shall be deemed a waiver of, or evidence regarding, whether a document is or is not confidential.

9.2      Right to Further Relief.  Nothing in this Protective Order abridges the right of any person to seek its modification by the Court in the future.  Nothing contained in this Protective Order shall preclude the Producing Party from seeking and obtaining, upon an appropriate showing, additional protection with respect to the confidentiality of Discovery Material.

9.3      Party's Use of Its Own Information.  Nothing in this Protective Order shall limit the Producing Party's use of its own information.

9.4      Right to Assert Other Objections.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.   No Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

9.5      This Protective Order shall bind, and shall inure to the benefit of, any parent, subsidiary, successor, or other corporate affiliate of a party to this action or a third party.

9.6      Prior to its entry by the Court, this Stipulated Protective Order shall have full force and effect as an agreement between the Parties, with each Party entitled to apply to the Court for relief (including prospective and injunctive relief) for its actual or threatened violation.

This Protective Order shall survive the final conclusion of the litigation and shall continue in full force and effect, with the Court retaining jurisdiction to enforce its terms.

      9.7    <u>Third Parties</u>.  A third party producing Confidential Information in this action may produce such information as a Producing Party pursuant to the terms of this Protective Order.

      **SO ORDERED**.

_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: _____

Respectfully submitted on March 2, 2007, by:


_____/s/_____
JOHN R. CLIMACO

CLIMACO, LEFKOWITZ, PECA, WILCOX &
GAROFOLI CO., LPA
888 16th Street, NW, Suite 800
Washington, DC 20006
(216) 621-8484
Interim Co-Lead Counsel for Plaintiffs


_____/s/_____
STEVEN A. HART

SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.
330 North Wabash Avenue, Suite 200
Chicago, IL 60611
(312) 645-7800
Interim Co-Lead Counsel for Plaintiffs


_____/s/_____
KEVIN P. RODDY

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive Suite 900, Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
Interim Co-Lead Counsel for Plaintiffs


_____/s/_____
MITCHELL R. BERGER (D.C. Bar No. 385467)

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
(202) 457-6000
Counsel for Defendant InPhonic, Inc.

        /s/
_____
C. PHILIP CAMPBELL, JR.

SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, FL 33602
(813) 229-7600
Counsel for Defendant Continental Promotion
Group, Inc.


        /s/
_____
RICHARD G. MARK

BRIGGS AND MORGAN, P.A.
2200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8400
Counsel for Defendant Helgeson Enterprises

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____, declare as follows:

1.      I have received a copy of and have read the stipulated protective order ("Protective Order") dated _____, 2007 in the above-captioned case, and the attorney who intends to provide me with access to material designated as CONFIDENTIAL INFORMATION under the Protective Order has explained to me the obligations imposed by and the effect of the Protective Order.

2.      I understand that CONFIDENTIAL INFORMATION that is provided to me is subject to the terms of the Protective Order and I agree to be bound by the terms of that Protective Order.

3.      I understand that all CONFIDENTIAL INFORMATION, including but not limited to any copies, notes, summaries, excerpts, or other transcriptions made from such materials, must be returned by me to the counsel providing me with such information no later than thirty (30) days after termination of this lawsuit.

4.      I further understand and agree that I shall not disclose the information or show any documents or their contents to anyone else except as provided in the Protective Order.

5.      I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____     By: _____