UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE INPHONIC, INC., WIRELESS ) | Misc. Action No. 06-0507 (ESH) |
| PHONE REBATE LITIGATION ) | MDL Docket No. 1792 |

This Document Relates to: )
ALL CASES )

## MOTION TO DISMISS OF DEFENDANT
## HELGESON ENTERPRISES, INC.

Defendant Helgeson Enterprises, Inc. ("Helgeson"), pursuant to Rules 9(b) and 12(b)(6)

of the Federal Rules of Civil Procedure, hereby moves for dismissal of all claims against it as set

forth in Plaintiffs' Consolidated Second Amended Class Action Complaint. The grounds for this

Motion are set forth in Helgeson's Statement of Points and Authorities in Support of its Motion

to Dismiss filed contemporaneously herewith. Pursuant to LCvR 7(f), Helgeson hereby requests

an oral hearing on its Motion to Dismiss.

DATED: APRIL 24, 2008

Respectfully submitted,

LECLAIRRYAN, A Professional Corporation


  /s/ Megan S. Ben'Ary
Megan S. Ben'Ary (D.C. Bar No. 493415)
LeClairRyan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
Telephone No.: (703) 684-8007
Facsimile No.: (703) 684-8075
Megan.Benary@leclairryan.com

Thomas A. Coulter (D.C. Bar No. 436423)
LeClairRyan, A Professional Corporation
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone No.:  (804) 916-7103
Thomas.Coulter@leclairryan.com

*Counsel for Defendant Helgeson Enterprises*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION | Misc. Action No. 06-0507 (ESH) MDL Docket No. 1792 |
| This Document Relates to: ALL CASES | |

### HELGESON ENTERPRISES, INC.'S
### STATEMENT OF POINTS AND AUTHORITIES
### IN SUPPORT OF MOTION TO DISMISS

Defendant Helgeson Enterprises, Inc. ("Helgeson"), by counsel, submits this Statement of Points and Authorities in Support of its Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (the "Complaint").

### INTRODUCTION

Plaintiffs purchased cellular telephones. They claim they were promised certain rebates in connection with their purchases. The rebate promise was made by InPhonic, Inc. ("InPhonic"). They have not received the rebates from InPhonic.

Plaintiffs have taken this simple consumer dispute and attempted to turn it into a racketeering, fraud, and conspiracy case to recover treble and punitive damages. Although they originally asserted these claims against InPhonic, which is now bankrupt, they have also asserted these claims against Defendant Helgeson, which made no rebate promises to Plaintiffs. Courts throughout the country have rejected efforts to transform garden-variety commercial disputes into federal racketeering claims. These courts recognize that the racketeering statutes were enacted to address long-term criminal conduct, not ordinary commercial disputes.

Not only is this not a racketeering case, but there are no substantive allegations of wrongdoing against Helgeson to support any claim against it. Helgeson did not sell the cellular telephones to Plaintiffs, nor did it sell cellular service to Plaintiffs. Helgeson did not offer any rebates to Plaintiffs. Indeed, Helgeson had no relationship whatsoever with any of the Plaintiffs. Rather, Helgeson was engaged by InPhonic simply to provide rebate processing services. Even if InPhonic was engaged in a scheme to defraud Plaintiffs, the Complaint fails to allege facts to tie Helgeson to that scheme.

The claims against Helgeson are defective as a matter of law and should be dismissed for the following reasons.

- Plaintiffs have failed to sufficiently allege predicate acts by Helgeson under RICO;

- Plaintiffs have failed to allege a proper "enterprise" under RICO;

- Plaintiffs have failed to sufficiently allege a RICO conspiracy;

- Plaintiffs' state law claims against Helgeson should be dismissed for the same or similar reasons asserted with regard to their RICO claim.

## STATEMENT OF ALLEGED FACTS

Plaintiffs purchased cellular telephones. (Complaint, ¶¶ 7-19). They claim that they were entitled to rebates from InPhonic in connection with their purchases. (Id.). They allege that they submitted the appropriate claim forms but never received their rebates. (Id.).

Helgeson is alleged to have had a contractual relationship with InPhonic whereby Helgeson handled certain of the rebate claims. (Id., ¶ 22). Only two of the Plaintiffs allegedly submitted a rebate claim form to Helgeson. (Id., ¶¶ 10, 17). This allegedly occurred in February 2005 and January 2006. (Id.). Helgeson was not processing rebates for InPhonic in January 2006. (Id., ¶ 22).

As the Complaint makes clear, the rebate offers of which Plaintiffs complain were made by InPhonic. (See, e.g., Complaint, ¶ 24 ("InPhonic . . . offer[ed] rebates that purported to reduce prices below that of its competition"); ¶ 25 ("InPhonic advertised low after-rebate sales prices . . ."); ¶ 26 ("During the Class Period, InPhonic advertised many of its wireless devices as being "Better Than Free."); ¶ 28 ("InPhonic advertised its post-rebate prices . . .")). There are no allegations that Helgeson was involved in the rebate offers.

Plaintiffs allege that the rebate offers were illusory and were part of a scheme to defraud Plaintiffs. They claim that there were "undisclosed limitations on InPhonic's rebates" that made them illusory. (Complaint, ¶ 33). Plaintiffs identify those limitations in paragraphs 34-44 of the Complaint. Importantly, none of the alleged "undisclosed limitations" has anything to do with Helgeson. Indeed, Helgeson is not even mentioned in paragraphs 34-44. Instead, Plaintiffs plainly allege that the rebate offers were made with the "express approval" of InPhonic's executives (Complaint, ¶ 33), were "under the direction of" those executives (Id., ¶ 34), were "approved by" the executives (Id., ¶¶ 36, 38), were "at the direction of" InPhonic's executives (Id., ¶¶ 40, 44), and were "with the knowledge and approval of" the executives. (Id., ¶ 41).

The only substantive allegation against Helgeson is found in paragraph 45 of the Complaint. There, Plaintiffs allege that InPhonic's rebate forms state that the rebate checks would be received by customers within 10-12 weeks of InPhonic's receipt of the rebate requests, but that Helgeson "neither complied with this deadline nor processed rebate requests promptly, if at all." On the basis of this allegation, Plaintiffs conclude that Helgeson is a racketeer.

## ARGUMENT

Plaintiffs' eight count Complaint asserts three claims against Helgeson: (1) in Count Three, violations of RICO, 18 U.S.C. §§ 1962(c) and (d); (2) in Count Six, unjust enrichment

under District of Columbia law; and (3) in Count Eight, civil conspiracy under District of

Columbia law.  None of these claims can withstand scrutiny under Rule 12(b)(6) and Rule 9(b).

## I.    STANDARD OF REVIEW

This Court recently articulated the standard to be applied in deciding a Rule 12(b)(6)

motion.

> The Federal Rules of Civil Procedure require that a complaint
> contain "'a short and plain statement of the claim showing that the
> pleader is entitled to relief,' in order to 'give the defendant fair
> notice of what the . . . claim is and the grounds upon which it
> rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. _____, 127 S. Ct.
> 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson,
> 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed 2d 80 (1957)); accord
> Erickson v. Pardus, 551 U.S. _____, 127 S. Ct. 2197, 2200, 167 L.
> Ed. 2d 1081 (2007) (per curiam).  Although "detailed factual
> allegations" are not necessary to withstand a Rule 12(b)(6) motion
> to dismiss, to provide the "grounds" of "entitle[ment] to relief," a
> plaintiff must furnish "more than labels and conclusions" or "a
> formulaic recitation of the elements of a cause of action." Id. at
> 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct.
> 2932, 92 L.Ed. 2d 209 (1986).  Instead, the complaint's "[f]actual
> allegations must be enough to raise a right to relief above the
> speculative level, on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127
> S. Ct. at 1965; see also id. at 1966 (the "threshold requirement" of
> Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough
> heft to 'sho[w]' that the pleader is entitled to relief"") (quoting Fed.
> R. Civ. P. 8(a)(2)).

Juergens v. Urban Title Services, Inc., 533 F. Supp. 2d 64, 72 (D.D.C. 2008).

While the Court must accept as true the factual allegations in the Complaint, and all

reasonable inferences drawn from those facts, it need not accept inferences that are not supported

by facts in the Complaint, and it is not bound to accept the Plaintiffs' legal conclusions.  Id.

In cases alleging fraud, such as this one, Rule 9(b) imposes a heightened pleading

requirement on the plaintiff – – the circumstances constituting fraud must be alleged with

particularity.  Rule 9(b) has four purposes:

> First, the rule ensures that the defendant has sufficient information
> to formulate a defense by putting it on notice of the conduct
> complained of . . . .  Second, Rule 9(b) exists to protect defendants
> from frivolous suits.  A third reason for the rule is to eliminate
> fraud actions in which all the facts are learned after discovery.
> Finally, Rule 9(b) protects defendants from harm to their goodwill
> and reputation.

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  A plaintiff

must plead with particularity as to each defendant.  See Cooke & Moses, LLC v. QSS-

Engineered Sys. Group, LLC, 2007 U.S. Dist. LEXIS 63650, at *22 (N.D.W.Va. Aug. 28, 2007).

Rule 9(b) applies to fraud allegations in civil RICO claims.  See Dooley v. United Technologies

Corp., 803 F. Supp. 428, 441 (D.D.C. 1992) (applying Rule 9(b) to RICO claim based on mail

fraud and wire fraud).

## II.    PLAINTIFFS' RICO CLAIMS AGAINST HELGESON MUST BE DISMISSED

### A.    Plaintiffs' Allegations Evidence Merely a Garden-Variety Commercial Dispute, not Racketeering.

RICO was enacted "'for the purpose of seeking the eradication of organized crime in the

United States.'"  Beck v. Prupis, 529 U.S. 494, 496 (2000) (quoting Organized Crime Control

Act of 1970, 84 Stat. 922, 923); see Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers

Local Union 639, 913 F.2d 948, 954 (D.C. Cir. 1990) (en banc) ("The purpose of RICO is to

eliminate 'the infiltration of organized crime and racketeering into legitimate organizations

operating in interstate commerce.'") (quoting S. Rep. No. 617, 91st Cong., 1st Sess. 76 (1969)).

Courts are careful to distinguish between cases that present nothing more than garden-

variety fraud or contract claims, and cases that present cognizable RICO claims.  "RICO liability

is reserved for 'ongoing unlawful activities whose scope and persistence pose a special threat to

social well-being.'"  GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 551

(4th Cir. 2001) (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)).

Accordingly, RICO claims that are nothing more than ordinary commercial disputes should be

dismissed at an early stage of the litigation.  See, e.g., Maryland-National Capital Park and

Planning Comm'n v. Boyle, 63 Fed. Appx. 98, 101 (4th Cir. 2003) (affirming district court's

dismissal of RICO claims because the claims amounted to nothing more than "ordinary or

garden-variety fraud"); Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000) (noting

distinction between "ordinary or garden-variety fraud claims better prosecuted under state law

and cases involving a more serious scope of activity"); Secureinfo Corp. v. Telos Corp., 387 F.

Supp. 2d 593, 615 (E.D. Va. 2005) (granting motion to dismiss under Rule 12(b)(6) because

plaintiff's claim was a garden-variety fraud claim); Royce Int'l Broadcasting Corp. v. Field,

2000 U.S. Dist. LEXIS 2369, at *12 (N.D. Cal. Feb. 23, 2000) ("The facts alleged in this

contractual dispute are not the types of activities that RICO was intended to eliminate.  Any

other interpretation would indefinitely expand the reach of the RICO statute by permitting all

allegations of 'broken promises' in failed business transactions to constitute 'racketeering

activity.'"); Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (courts "must

always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary

fraud case clothed in the Emperor's trendy garb'"); Katzman v. Victoria's Secret Catalogue, 167

F.R.D. 649, 655 (S.D.N.Y. 1996) ("Because the 'mere assertion of a RICO claim has an almost

inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out

frivolous RICO allegations at an early stage of the litigation.'"); see also Hilton Sea, Inc. v.

DMR Yachts, Inc., 750 F. Supp. 35, 39 (D. Me. 1990) ("A failure to perform as promised does

not, without more, constitute fraud.  If the opposite were true, every breach of contract would

present a colorable claim for fraud and, perhaps, a RICO violation.  But breaches of contract, and

even some illegal schemes perpetrated using the mails and wires are not violations of the federal wire and mail fraud statutes.").

The allegations against Helgeson do not rise to the level necessary to support a RICO claim. The only substantive allegation against Helgeson is found in paragraph 45, where Plaintiffs allege that Helgeson failed to process rebate requests in a timely manner. This does not amount to fraud by Helgeson, as any representations regarding when the rebates would be processed and paid are alleged to have been made by InPhonic, not Helgeson. Indeed, these allegations do not even support a breach of contract claim against Helgeson, as it had no contractual relationship with the Plaintiffs. Certainly, Helgeson's mere alleged failure to promptly process rebate requests falls far short of being an "unlawful activit[y] whose scope and persistence pose a special threat to social well-being."

        B.      Plaintiffs' Claim Under 18 U.S.C. § 1962(c) Fails to Sufficiently Plead the Requisite Elements.

In order to state a RICO claim under § 1962(c), Plaintiffs must allege and prove the following: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Western Assocs. Ltd. Pshp. v. Market Square Assocs., 235 F.3d 629, 633 (D.C. Cir. 2001). The elements of a § 1962(c) claim must be established as to each individual defendant. DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001). In this case, Plaintiffs have failed to allege the requisite elements as to Helgeson.

        1.      Plaintiffs Have Failed to Sufficiently Allege Predicate Acts by Helgeson.

Plaintiffs must plead at least two predicate acts of racketeering that form a pattern of racketeering activity. American Chiropractic v. Trigon Healthcare, 367 F.3d 212, 233 (4th Cir. 2004). The acts must be related and "amount to or pose a threat of continued criminal activity."

H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). In this case, Plaintiffs

claim that the predicate acts are mail fraud and wire fraud, which require "(1) a plan or scheme

to defraud; (2) intent to defraud; (3) reasonable foreseeability that the mail or wires will be used;

and (4) actual use of the mail or wires to further the scheme." Wisdom v. First Midwest Bank,

167 F.3d 402, 406 (8th Cir. 1999).

In order to satisfy Rule 9(b)'s particularity requirements with regard to the claims of

fraud, the Complaint must "state the time, place and content of the false misrepresentations, the

fact misrepresented[,] and what was retained or given up as a consequence of the fraud." Bates

v. Northwestern Human Servs, 466 F. Supp. 2d 69, 89 (D.D.C. 2006). "It is not enough for a

plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate

acts to the time of trial." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991). In

addition, when the predicate acts are mail fraud and wire fraud, Plaintiffs must provide "'specific

allegations as to which defendant caused what to be mailed . . . and when and how each mailing

. . . furthered the fraudulent scheme.'" Bates, 466 F. Supp. 2d at 89. This is because "courts are

cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be

the unusual fraud that does not enlist the mails and wire in its services at least twice." Al-Abood,

217 F.3d at 238. The Court must look to the specific predicate acts allegedly committed by

Helgeson in determining whether a pattern of racketeering has been sufficiently alleged against

it. See United States v. Crysopt Corp., 781 F. Supp. 375, 384 (D. Md. 1991).

Plaintiffs have wholly failed to allege facts showing that Helgeson engaged in any act of

mail fraud or wire fraud. Plaintiffs themselves claim that the alleged fraudulent rebate offer

advertisements were made by InPhonic, not Helgeson. Helgeson simply is alleged to have not

processed the rebates in a timely manner.  Even if true, such failure, at best, is a breach of a

contractual obligation by Helgeson.  It clearly fails to rise to the level of mail fraud or wire fraud.

Plaintiffs purport to identify the alleged acts of mail fraud and wire fraud in paragraph 76

of the Complaint.  These allegations are woefully deficient under Rule 9(b), and many of them

fail to implicate Helgeson.  For example, the alleged acts of mail fraud and wire fraud identified

in paragraphs 76(a), (b), (c) and (d) do not even mention Helgeson.[1]

The only allegations of mail fraud and wire fraud that specifically identify Helgeson are

in paragraphs 76(e) and (f).  There, Plaintiffs allege that the following acts constitute mail fraud

and wire fraud:

> (e)    Correspondence (including letters and e-mail messages)
> sent by InPhonic (at the instigation of the Individual
> Defendants), Helgeson and/or CPG to Plaintiffs and the
> members of the Class concerning the processing, delay
> and/or denial of rebate claim forms, each of which involved
> the use of the U.S. mails and/or interstate wire facilities; and
>
> (f)    Correspondence, interstate telephone conversations or
> facsimile transmissions, and e-mail communications
> between Plaintiffs and the members of the Classes and
> InPhonic, Helgeson and/or CPG concerning the processing,
> delay and/or denial of rebate claim forms, each of which
> involved the use of the U.S. mails and/or interstate wire
> facilities.

These allegations do not pass muster under Rule 9(b) for several reasons.  First, they fail to

identify the content of the alleged communications.  Second, they fail to identify any facts that

were misrepresented.  Third, they fail to allege who made the alleged communication.  In this

regard, Plaintiffs allege that the communications were from InPhonic, Helgeson, and/or CPG.

Thus, Plaintiffs have not unequivocally alleged that Helgeson was even involved in the

---

[1] To the extent the allegations in paragraphs 76(b) and 76(d) pertain to Helgeson, they fail to allege any fraudulent conduct or any misrepresentations by Helgeson.

communications. Indeed, the only communications specifically identified in the Complaint are attributed to InPhonic. (See Complaint, ¶¶ 8, 15, 19). These vague and conclusory allegations fail to meet the standards described above, including those articulated by this Court in Bates.

There simply is no fraudulent conduct on the part of Helgeson alleged in the Complaint. Therefore, the RICO claims should be dismissed.

        2.      Plaintiffs Fail to Allege a Proper RICO Enterprise.

            a.      The Enterprise Lacks Organization and Structure.

The alleged RICO enterprise in this case is an association between InPhonic and Helgeson. (Complaint, ¶ 75). An "enterprise" is a "group of persons associated together for a common purpose of engaging a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). The enterprise must be an ongoing organization with an identifiable structure that functions as a continuing unit. United States v. White, 116 F.3d 903, 924 (D.C. Cir. 1997), cert. denied, 522 U.S. 960 (1997); United States v. Fiel, 35 F.3d 997, 1003-04 (4th Cir. 1994) (finding that motorcycle club was an enterprise where it had officers, bylaws, various levels of membership, dues, fines, and new members who replaced retiring members). Merely alleging a business or contractual relationship between entities is insufficient to establish an enterprise under RICO. VanDenBroeck v. CommonPoint Mortgage Co., 210 F.3d 696, 700 (6th Cir. 2000). Likewise, an assertion that an entity "performed services" for another is not enough to establish an enterprise. Ulico Casualty Co. v. Professional Indemnity Agency, Inc., 1999 U.S. Dist. LEXIS 8591, at *22 (D.D.C. May 5, 1999).

Here, Plaintiffs have alleged nothing more than a contractual, business relationship between Helgeson and InPhonic. See, e.g., Complaint, ¶ 75 (InPhonic and Helgeson formed an association-in-fact enterprise pursuant to their contractual relationship whereby Helgeson

processed rebate claims for InPhonic). There are no non-conclusory allegations sufficient to show that the alleged enterprise had any structure or continuity. Indeed, the allegations are to the contrary. The association-in-fact enterprise between InPhonic and Helgeson allegedly existed from February 2003 to October 2005, then ceased to exist, then existed again from July 2006 to late 2006 or early 2007. These are the same times during which the contract between InPhonic and Helgeson was in force. These allegations evidence a contractual relationship between InPhonic and Helgeson, not a racketeering enterprise. Moreover, the association-in-fact enterprise allegedly changed from October 2005 to July 2006, when defendant CPG was providing rebate processing services for InPhonic. During that period, the association-in-fact between InPhonic and CPG was the alleged enterprise. These allegations show that there was no continuity to the alleged InPhonic/Helgeson association-in-fact enterprise, and that it was nothing more than a business relationship whereby Helgeson provided rebate processing services for InPhonic.

The conclusory allegations that the enterprise functioned like a joint venture, and that the structure of the enterprise is evidenced by the contract between Helgeson and InPhonic and by their course of dealing, are nothing more than a chant of the statutory mantra, and are insufficient as a matter of law to show the existence of an ongoing organization with an identifiable structure. Therefore, the RICO claim must be dismissed. See Richmond v. Nationwide Cassel LP, 52 F.3d 640, 645-646 (7th Cir. 1995) (An enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity,' and more than a group of associated businesses that 'are operated in concert' under the control of one family"); VanDenBroeck, 210 F.3d at 699 ("[S]imply conspiring to commit a fraud is not enough to

trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes.").

        b.      Plaintiffs Fail to Sufficiently Allege that the
                  RICO Enterprise is Distinct from the Pattern of
                  Racketeering Activity.

The RICO enterprise cannot simply be a pattern of racketeering activity.  Turkette, 452 U.S. at 583.  The enterprise "is an entity separate and apart from the pattern of activity in which it engages."  Id.  Although the plaintiff is not required to prove the enterprise and pattern of activity by separate evidence, the pattern of activity remains at all times a distinct element that must be shown by the plaintiff.  United States v. Morrow, 2005 U.S. Dist. LEXIS 11753 (D.D.C. June 13, 2005).

Recognizing this requirement, Plaintiffs allege in paragraph 75 of the Complaint that the enterprise existed separate and apart from the pattern of racketeering activity.  Plaintiffs allege first that the association-in-fact of InPhonic and Helgeson constituted an "enterprise."  Next, Plaintiffs allege that the "common purpose" of the InPhonic/Helgeson "enterprise" was to "increase their respective revenues and profits by frustrating, delaying and ultimately, denying rebate claims submitted by Plaintiffs and members of the Classes."  In the very same paragraph, Plaintiffs then state that the pattern of activity in which the InPhonic/Helgeson "enterprise" engaged was "multiple acts of mail and wire fraud."  Thus, the enterprise – an association-in-fact dedicated to frustrating rebate claims – is identical to the pattern of racketeering.  Plaintiffs try to skirt this deficiency by the bald statement that "each of the corporate entities – InPhonic, Helgeson and CPG – had an existence separate and apart from the 'racketeering activity.'"  However, the enterprise that Plaintiffs claim existed is not the corporate entity of Helgeson, but rather the association-in-fact of InPhonic and Helgeson.  It is immaterial that Helgeson existed

separate and apart from a pattern of racketeering activity; instead, Plaintiffs must allege facts

sufficient to demonstrate that the ***association-in-fact*** of InPhonic/Helgeson existed separate and

apart from the pattern of racketeering. This they have failed to do. The RICO claim should be

dismissed.

c.     Helgeson is not Alleged to have Participated
in the Operation or Management of the RICO
Enterprise.

Plaintiffs must allege facts showing that Helgeson had "some part in directing the

enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). This means that

Helgeson must have participated "in the operation or management of the enterprise itself." Id. at

185; Ulico Casualty Co., 1999 U.S. Dist. LEXIS 8591, at *21-22 (RICO defendant must "exert

control" or "direction" over the RICO enterprise itself). "Simply performing services for an

enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an

individual to RICO liability under § 1962(c)." Javitch v. Capwell, 284 F. Supp. 2d 848, 854

(N.D. Ohio 2003).

Here, Plaintiffs offer nothing more than conclusory allegations of Helgeson's

participation in the operation or management of the alleged enterprise. See, e.g., Complaint ¶ 76

(Helgeson "jointly controlled and participated in the operation of [the] enterprise"). Conclusory

allegations such as this are entirely insufficient to state a claim under § 1962(c). See Bast v.

Cohen, 59 F.3d 492, 495 (4th Cir. 1995) (affirming dismissal for failure to allege that defendants

"participated in the conduct" of the enterprise's affairs). Therefore, the RICO claims should be

dismissed.

This result is especially appropriate here. The Complaint clearly alleges that InPhonic's

executives controlled the operation of the alleged enterprise. (See Complaint ¶¶ 33, 34, 36, 38,

13

40, 41, 44) (rebate offers made with "express approval" of InPhonic's executives; were "under the direction of" the executives; were "approved by" the executives; and were "with the knowledge" of the executives). The allegations regarding Helgeson show that it simply processed the rebates for InPhonic pursuant to its contracts with InPhonic. There are no allegations showing that Helgeson did more. Accordingly, dismissal is warranted.

      C.     Plaintiffs Have Failed to Sufficiently Allege a RICO
              Conspiracy.

      To establish a RICO conspiracy in violation of 18 U.S.C. § 1962(d), the following elements must be established: (1) the existence of an enterprise; (2) that the enterprise was engaged in, or its activities affected, interstate commerce; and (3) that each defendant knowingly agreed to the commission of a violation of 18 U.S.C. § 1962(c). United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 901 (D.D.C. 2006).

      As already established, Plaintiffs have failed to sufficiently allege the existence of a RICO enterprise. See pp. 10-13, supra. Therefore, the RICO conspiracy claim fails as a matter of law. Similarly, where the substantive RICO claim is deficient, the conspiracy claim fails. See First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

      Moreover, Plaintiffs completely fail to allege with particularity an agreement between the defendants to violate RICO. "'Conclusory allegations of a conspiracy are insufficient' to plead a Section 1962(d) claim." Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs, Inc., 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006). Here Plaintiffs allege in conclusory fashion that the defendants "conspired" (Complaint, ¶ 77), but provide no facts showing how the conspiracy was reached. This failure mandates that the RICO conspiracy claim be dismissed. Id. ("While NGC repeatedly states that defendants "conspired" or "agreed" with one another, the complaint fails to set forth sufficient facts to suggest how each of the defendants, through words or actions,

reached an agreement. For these reasons, we dismiss NGC's RICO conspiracy claim against defendants.").

### III.    PLAINTIFFS' STATE LAW CLAIMS AGAINST HELGESON MUST BE DISMISSED

Counts Six and Eight of the Complaint assert claims against Helgeson for unjust enrichment and conspiracy under District of Columbia law. For the following reasons, Plaintiffs' claims fail as a matter of law.[2]

#### A.    Plaintiffs Fail to State an Unjust Enrichment Claim.

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Vila v. Inter-American Inv., Corp., 2008 U.S. Dist. LEXIS 12868 (D.D.C. February 2, 2008). A claim for unjust enrichment "simply does not lie when the plaintiff has not bestowed some sort of benefit upon the defendant." Rapaport v. United States Dep't of the Treasury, Office of Thrift Supervision, 59 F.3d 212, 217 (D.C. Cir. 1995).

Plaintiffs' unjust enrichment claim fails as a matter of law. No benefit was conferred on Helgeson by Plaintiffs. Instead, Helgeson was paid by InPhonic for services rendered pursuant

---

[2] Helgeson believes that Minnesota law should govern the unjust enrichment and conspiracy claims against it. Helgeson was named as a defendant in only one case (brought by Pevnick in Arizona). That case was transferred to this Court. Accordingly, the Court must apply Arizona choice of law rules. In re Air Disaster, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction where the transferred actions were originally filed must be applied."). Arizona courts apply the Restatement (Second) of Conflicts of Law to determine the controlling law for multistate torts. Bates v. Superior Court, 749 P.2d 1367, 1369 (Ariz. 1988). Under Section 145 of the Restatement, "courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question. Id. at 1370. In making this determination, the following factors are relevant: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. Id. Under this test, Minnesota clearly has the most significant relationship to the occurrence and the parties. Minnesota is where the alleged conduct of Helgeson that caused injury occurred. Helgeson is incorporated and has its principal place of business in Minnesota. Pevnick sent the rebate form to Helgeson in Minnesota, and therefore the parties' relationship is centered in Minnesota. Accordingly, Minnesota law should govern.

to contract. There is nothing unjust in Helgeson retaining the money paid it by InPhonic. Plaintiffs, on the other hand, paid money to InPhonic, and InPhonic agreed to provide the rebates. Helgeson was not unjustly enriched by this. Thus, Plaintiffs' unjust enrichment claim against Helgeson should be dismissed.[3]

B.    The Conspiracy Claim Fails as a Matter of Law.

Plaintiffs' civil conspiracy claim against Helgeson likewise must be dismissed. The two "essential" elements of civil conspiracy are (1) "an agreement to take part in an unlawful action or a lawful action in an unlawful manner"; and (2) "an overt tortious act in furtherance of the agreement that causes injury." Hall v. Clinton, 285 F.3d 74, 83 (D.C. Cir. 2002) (citing Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)). "[O]ne cannot be liable for a conspiracy that does not have as its object an actionable wrong." Riddell v. Riddell Wash. Corp., 866 F.2d 1480, 1494 (D.C. Cir. 1989).

For the reasons explained above, Plaintiffs have failed to allege a cognizable tortious act by Helgeson. The only such act alleged, the violation of RICO, does not give rise to a valid cause of action and must be dismissed. That, in turn, renders the conspiracy claim defective as a matter of law. Moreover, there are no factual allegations to support the claim that Helgeson agreed to take part in any unlawful action, or to take part in any lawful action in an unlawful

---

[3] The same result would be reached under Minnesota law. See Dahl v. R. J. Reynolds Tobacco Co., 742 N.W.2d 186, 195 (Minn. Ct. App. 2007) (elements of unjust enrichment are (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it); First Nat.'l Bank v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981) ("unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully").

manner. Instead, Plaintiffs merely allege such an agreement in conclusory fashion. These failures compel the dismissal of the conspiracy claim.[4]

## IV.    LEAVE TO AMEND SHOULD BE DENIED

Whether to grant leave to amend is a matter within the discretion of the Court. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). While courts often allow the filing of an amended complaint, that should not be the result here. Plaintiffs not only have filed a lengthy complaint that presumably included all of the facts supporting their theories of relief, but they have filed the information required by the "Civil RICO Case Statement Order." Plaintiffs therefore have had ample opportunity to plead the facts supporting their claims. Having had "two bites at the apple" and having failed to provide facts to support their claims against Helgeson, Plaintiffs are not entitled to a third try. The Complaint should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, Helgeson requests that the Court enter an Order granting its Motion to Dismiss, dismissing this case with prejudice, and awarding it such other relief as may be proper.

Respectfully submitted,

LECLAIRRYAN, A Professional Corporation

_/s/ Megan S. Ben'Ary_
Megan S. Ben'Ary (D.C. Bar No. 493415)
LeClairRyan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, VA  22314
Telephone No.:  (703) 684-8007
Facsimile No.:  (703) 684-8075
Megan.Benary@leclairryan.com

---

[4] The same result would be reached under Minnesota law. <u>See</u> <u>Harding v. Ohio Casualty Ins. Co.</u>, 41 N.W.2d 818, 825 (Minn. 1950) (in a conspiracy claim, liability is based on the tort committed by the conspirators, not on the conspiracy).

Thomas A. Coulter (D.C. Bar No. 436423)
LeClairRyan, A Professional Corporation
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone No.:  (804) 916-7103
Thomas.Coulter@leclairryan.com

***Counsel for Defendant Helgeson Enterprises***

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2008, the foregoing pleading was filed with the Court's electronic filing system, which provides service on all counsel of record for Defendants, and on Interim Co-Lead Counsel and Liaison Counsel for Plaintiffs for transmission by them to other Plaintiffs' counsel not registered on the Court's electronic filing system.

/s/ Megan S. Ben'Ary
Megan S. Ben'Ary

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| IN RE INPHONIC, INC., WIRELESS ) | Misc. Action No. 06-0507 (ESH) |
|   PHONE REBATE LITIGATION ) | MDL Docket No. 1792 |
| _____ ) | |
| ) | |
| This Document Relates to: ) | |
| ALL CASES ) | |
| _____ ) | |

**ORDER ON DEFENDANT**
**HELGESON ENTERPRISES, INC.'S MOTION TO DISMISS**

      Upon consideration of the Motion to Dismiss filed by Defendant Helgeson Enterprises,

Inc., pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and any

opposition thereto, it is hereby

      ORDERED that, for good cause shown, the Motion to Dismiss is GRANTED, and

Plaintiffs' Consolidated Second Amended Class Action Complaint is dismissed with prejudice.

      ENTERED this _____ day of _____, 2008.


_____
     Judge, United States District Court