IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION | Misc. Action No. 06-0507 (ESH) |
| This Document Relates To: | MDL Docket No. 1792 |
| ALL CASES | |

## CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by the undersigned counsel and pursuant to this Court's Orders dated January 26, 2007, and January 18, 2008, as well as the Transfer Order entered by the Judicial Panel on Multidistrict Litigation on October 25, 2006, *see In re InPhonic, Inc., Wireless Phone Rebate Litigation,* 460 F. Supp. 2d 1380 (J.P.M.L. 2006), hereby file their Consolidated Second Amended Class Action Complaint (the "Amended Complaint") against Defendants, David A. Steinberg, Andrew B. Zeinfeld, Brian J. Curran, George Z. Moratis and Brian T. Westrick (collectively, the "Individual Defendants"); Continental Promotion Group, Inc. ("CPG"); and Helgeson Enterprises, Inc. ("Helgeson"). Due to its recent (November 2007) bankruptcy filing, no claims are asserted in this Amended Complaint against former Defendant, InPhonic, Inc. ("InPhonic"). Plaintiffs allege upon personal knowledge as to themselves and their own acts, and upon information and belief based on the investigation of their counsel as to all other matters, as follows:

## INTRODUCTION AND SUMMARY OF NATIONWIDE CLASS ACTION

1.      This is a nationwide class action brought by Plaintiffs on behalf of themselves and all others similarly situated (the "Classes," as defined in Paragraph 46 of this Amended


PLAINTIFF'S EXHIBIT
A

Complaint) who are the victims of a scheme to defraud designed and perpetrated by the Individual Defendants, CPG and Helgeson during the Class Period (as also defined in Paragraph 46 of this Amended Complaint).  Plaintiffs, like the members of the Classes, relied upon false, misleading and deceptive advertisements disseminated, or caused to be disseminated by the Individual Defendants nationwide, claiming to provide consumers with deep price discounts and offering various types of mail-in rebates, including a "Customer Appreciation Rebate," a "Customer Loyalty Rebate," a "RAZR V3 Rebate," a "Mail-in Rebate," a "Customer Mail-in Rebate," a "Bonus Loyalty Rebate," a "Wireless Device Rebate," an "AOL Employee Rebate," a "Voice and Data Rebate" and/or a "Mail-In Voice and Data Rebate," in varying dollar amounts ranging from $50 to $200, or even more, with the purchase of a wireless service plan and a wireless device from InPhonic.  To this end, Plaintiffs and the members of the Classes, using the U.S. mail and/or interstate wire facilities, purchased wireless devices and/or wireless service plans from InPhonic through one of its affiliated Internet websites and submitted to InPhonic, Helgeson and/or CPG, using the U.S. mails and/or interstate wire facilities, written rebate claim forms.  The Individual Defendants, Helgeson and/or CPG,  however, had no intention of timely fulfilling the promised rebates to Plaintiffs or the members of the Classes, regardless of whether they fully and completely satisfied the unreasonable and artificially complicated rebate redemption protocol adopted by the Individual Defendants, Helgeson and/or CPG.  Rather, the Individual Defendants, acting in concert with CPG and Helgeson, and in order to wrongfully increase the entities' revenue and profits, and to earn greater salaries and bonuses for themselves, delayed redeeming or unjustifiably rejected the rebate claims that were properly submitted by Plaintiffs and the members of the Classes as part of a pattern of related and continuous wrongful acts to frustrate, delay, or deny rebate claims properly submitted, via U.S.

mail and/or interstate wire facilities, by hundreds of thousands of consumers located throughout United States.

2.      Plaintiffs bring this nationwide class action pursuant to the Class Action Fairness Act of 2005 ("CAFA"); Rule 23 of the Federal Rules of Civil Procedure; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*;[1] the District of Columbia Consumer Protection Act, D.C. Code Ann. § 28-3901 *et seq.*; as well as other jurisdictions' consumer protection statutes and the common law of the District of Columbia.  In this nationwide class action, Plaintiffs seek to recover compensatory and punitive damages, equitable relief, including restitution and disgorgement of unlawful profits earned by Defendants, and injunctive relief.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the Individual Defendants, CPG and Helgeson and venue is proper in this District because this nationwide class action arises out of actions that, in substantial part, occurred in this District including, *inter alia*:

(a)      During the Class Period, the Individual Defendants caused InPhonic and/or one of the Internet websites that it owns, operates, maintains, or is otherwise affiliated with, illegally solicited hundreds of thousands of consumers to purchase and/or subscribe to wireless service plans and/or wireless devices based upon fraudulent rebate promotions designed and implemented in this District, through Internet marketing and advertising

---

[1]      In accordance with this Court's Order dated January 26, 2007, the information required by the "Civil RICO Case-Statement Order," *see* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (FOURTH), § 40.54 at 783-785 (2004), is included throughout this Amended Complaint. In Appendix A, Plaintiffs reproduce, in table format, the questions contained in the "Civil RICO Case-Statement Order" with explanatory information and cross-references to the relevant paragraphs of this Amended Complaint where the requested information may be found by this Court and Defendants' counsel.

promotions that were designed and implemented by the Individual Defendants and which originated here;

(b)    Upon information and belief, the Individual Defendants caused InPhonic and/or one of the Internet websites that it owns, operates, maintains, or is otherwise affiliated with including, but not limited to, Wirefly.com, A-1 Wireless; Liberty Wireless, Cellular Choices, and Internet, sold hundreds of thousands of wireless service plans and/or wireless devices in this District; and

(c)    Upon information and belief, the Individual Defendants caused InPhonic and/or one of the Internet websites that it owns, operates, maintains, or is otherwise affiliated with, to purposefully avail itself of the benefits of conducting business in this District.

4.    Pursuant to CAFA, this Court has subject matter to adjudicate this class action, and the claims asserted by Plaintiffs on behalf of themselves and Class members in this Amended Complaint, because the amount in controversy exceeds $5 million and the members of the Classes are from different states than the Defendants.

5.    In addition, this Court may exercise subject matter jurisdiction over this class action because the Third Cause of Action of this Amended Complaint asserts claim(s) arising under Section 1964(c) of RICO, 18 U.S.C. § 1964(c), and venue is proper in this District pursuant to Section 1965 of RICO, 18 U.S.C. § 1965.

6.    This Court may properly assert supplemental jurisdiction over the state law claims asserted by Plaintiffs on behalf of themselves and the members of the Classes in this Amended Complaint pursuant to 28 U.S.C. § 1367 because they arise out of the same common nucleus of operative fact as Plaintiffs' federal claims and would ordinarily be expected to be adjudicated in one judicial proceeding.

## PARTIES

### A.    Plaintiffs and Proposed Class Representatives

7.      Plaintiff, Edwin Davis ("Davis"), is a resident of Texas.  In or about January 2005, Plaintiff Davis purchased a Motorola cellular telephone and signed a 12-month service commitment with Verizon Wireless through the Internet website Wirefly.com, which is operated by a wholly-owned subsidiary of InPhonic.  As an incentive to purchase these products and services through Wirefly.com, Plaintiff Davis was promised by InPhonic a $150 "Customer Appreciation Rebate" and a $150 "Customer Loyalty Rebate."  In accordance with InPhonic's instructions, Plaintiff Davis properly requested the above-referenced cash rebates; however, despite the passage of three years since his purchase, Plaintiff Davis has not received *either* of the promised rebates from InPhonic.  On March 21, 2006, Plaintiff Davis filed a class action  in this District.

8.      Plaintiff, Paul Rock ("Rock"), is a resident of New Jersey.  On March 2, 2005, Plaintiff Rock purchased a telephone that was eligible for a $100 rebate from InPhonic, and he activated that telephone on or about March 12, 2005.  The rebate contained an unreasonable and unconscionable condition that required the submission of rebate claim forms only during a "window" from 180 days to 210 days after activation of the telephone, and InPhonic automatically rejected rebate claim forms submitted before 180 days or after 210 days.  Notwithstanding, Plaintiff Rock submitted a valid rebate claim form via U.S. mail on October 7, 2005; that is, within the 180 day – 210 day "window."  Even though it had been timely and properly submitted, InPhonic rejected Plaintiff Rock's rebate submission, deemed it invalid, and informed Plaintiff by return form letter, sent via U.S. mail:  "Your rebate claim was postmarked too late.  Rebate claims must be postmarked between 180 and 210 days of activation."  On April

3, 2006, Plaintiff Davis filed a class action in the Superior Court of Hudson County, New Jersey and, on May 10, 2006, Plaintiff Davis's class action was removed to the District of New Jersey.

9.     Plaintiff, Hongyi Yu ("Yu"), is a resident of California.  On September 9, 2004, Plaintiff Yu purchased a mobile phone and wireless phone services through InPhonic.  Plaintiff Yu was eligible for two rebates with a collective value of $400.00.  Mr. Yu sent all of the documentation, as required by InPhonic, within the specified time period.  Despite extensive communications (via U.S. mail and/or interstate wire facilities) with InPhonic in an attempt to claim his rebates, Mr. Yu's rebates remain unpaid by InPhonic.  On May 19, 2006, Plaintiff Davis filed a class action in this District.

10.    Plaintiff, Barbara McGivney ("McGivney"), is a resident of Illinois.  On January 13, 2005, Plaintiff McGivney purchased a mobile phone and wireless phone services through InPhonic.  As part of her purchase agreement and contract, InPhonic agreed to provide Plaintiff McGivney with two $200.00 "Bonus Loyalty Rebates," in addition to a $25 rebate provided by Nextel, so long as certain terms and conditions were met.  In compliance with the requirements established by InPhonic, on January 18, 2006, Plaintiff McGivney submitted her rebate claim, via U.S. mail, to Defendant Helgeson, addressed to its listed address:  Rebate Processing Center, Department – BAU, P.O. Box 100507, White Bear Lake, MN 55110.  Plaintiff McGivney sent all the documentation, as required by both Nextel and InPhonic, within the specified time period, and she received the $25 rebate from Nextel; however, despite extensive communications (via U.S. mail and/or interstate wire facilities) with InPhonic, Plaintiff McGivney's rebates remain unpaid.  On May 19, 2006, Plaintiff Davis filed a class action in this District.

11.     Plaintiff, Ryan Sutherland ("Sutherland"), is a resident of Illinois.  Using the above-referenced Wirefly.com website operated by InPhonic's wholly-owned subsidiary, on or about November 15, 2005, Plaintiff Sutherland ordered a Motorola RAZR V3 Camera Phone from InPhonic for $199.00.  As part of his purchase agreement and contract, InPhonic agreed to provide Plaintiff Sutherland a $200.00 "Customer Loyalty Rebate" if certain terms and conditions were met.  In compliance with the requirements established by InPhonic, on January 18, 2006, Plaintiff Sutherland submitted his claim, via U.S. mail, to Defendant CPG, addressed to its listed business address:  Department 63784, Customer Appreciation Rebate, P.O. Box 52900, Phoenix, AZ  85072.  On June 15, 2006, Plaintiff Sutherland, whose rebate claim still had not been formally accepted or rejected, filed a class action in the Northern District of Illinois.

12.     Plaintiff, Walter Cover ("Cover"), is a resident of California.  Using the above-referenced Wirefly.com website operated by InPhonic's wholly-owned subsidiary, on or about September 24, 2005 Plaintiff Cover ordered two Motorola E815 Video Phones from InPhonic for $249.00 per phone.  As part of Plaintiff Cover's purchase agreement and contract, which Plaintiff Cover relied upon, InPhonic agreed to provide two $125.00 "Customer Loyalty Rebate[s]" if certain terms and conditions were met.  Acting in compliance with each and every requirement of that agreement, Plaintiff Cover mailed his rebate form to Defendant CPG at the above-referenced address in Phoenix, Arizona.  (*See* ¶ 11, *supra*.)  On June 19, 2006, Plaintiff Cover, whose rebate claim still had not been formally accepted or rejected, filed a class action in the District of Arizona.

13.     Plaintiff, Melinda Roquemore ("Roquemore"), is a resident of Texas.  Using the above-referenced Wirefly.com website operated by InPhonic's wholly owned subsidiary, in October 2005 Plaintiff Roquemore ordered a Motorola RAZR V3c Camera Phone from

InPhonic for $179.99. As part of Plaintiff Roquemore's purchase agreement and contract, which Plaintiff Roquemore relied upon, InPhonic agreed to provide a $180.00 "Customer Loyalty Rebate" if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Roquemore mailed her rebate form to Defendant CPG at the above-referenced address in Phoenix, Arizona. (*See* ¶ 11, *supra.*) On June 29, 2006, Plaintiff Roquemore, whose rebate claim still had not been formally accepted or rejected, filed a class action in the District of Arizona.

14.    Plaintiff, Luis Morales ("Morales"), is a resident of California. Using the above-referenced Wirefly.com website operated by InPhonic's wholly-owned subsidiary, in October 2005 Plaintiff Morales purchased a Motorola RAZR phone from InPhonic for $199.99. As part of Plaintiff Morales's purchase agreement and contract, which Plaintiff Morales relied upon, InPhonic agreed to provide two $100.00 "Customer Loyalty Rebate[s]" if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Morales mailed his rebate form to Defendant CPG at the above-referenced address in Phoenix, Arizona. (*See* ¶ 11, *supra.*) On June 29, 2006, Plaintiff Morales, whose rebate claim still had not been formally accepted or rejected, filed a class action in the District of Arizona.

15.    Plaintiff, Shelly Salzman ("Salzman"), formerly known as Shelly Weiss, is a resident of Florida. Using the above-referenced Wirefly.com website operated by InPhonic's wholly owned subsidiary, on or about June 19, 2005 Plaintiff Salzman ordered two Motorola RAZR V3 Camera Phones from InPhonic for $169.99 per phone. As part of Plaintiff Salzman's purchase agreement and contract, which Plaintiff Salzman relied upon, InPhonic agreed to provide a $170.00 "Free RAZR V3 Rebate Offer" for each phone if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement,

Plaintiff Salzman initially sent her rebate form via U.S. mail to Defendant Helgeson at the above-referenced address in White Bear Lake, Minnesota. (*See* ¶ 10, *supra*.) In December 2005, InPhonic informed Plaintiff Salzman that it had "lost" her rebate claim in its "system." InPhonic then instructed Plaintiff Salzman to resubmit her rebate claim to Defendant CPG at the above-referenced address in Phoenix, Arizona. (*See* ¶ 11, *supra*.) On January 6, 2006, Plaintiff Salzman resubmitted her rebate claim form, as instructed by InPhonic. Thereafter, Plaintiff Salzman was asked to resubmit her rebate claim form three additional times. Each time, Plaintiff Salzman complied with the instructions and resubmitted her rebate claim form. On January 20, 2006, Plaintiff Salzman received an e-mail message, sent via interstate wire facilities, from InPhonic's "Consumer Contact Center" that read in relevant part:

> Our records indicate a valid rebate is currently being processed. A check will be issued and mailed to you upon completion of processing … Your rebate was entered successfully on 01/18/2006. Please allow 10-12 weeks for processing from this date.

On February 5, 2006, InPhonic sent another e-mail message, via interstate wire facilities, to Plaintiff Salzman denying her rebate claim on the erroneous grounds that "[t]he bill(s) sent does not show and invoice/bill date." In the e-mail message, InPhonic directed Plaintiff Salzman to send in "any missing/corrected information … [within] 30 days from this letter date." Plaintiff Salzman complied with InPhonic's directive and timely submitted yet another rebate claim form. Nevertheless, on May 23, 2006, InPhonic informed Plaintiff Salzman that her rebate claim was "invalid," supposedly because her "submission was not postmarked within the valid time frame." On July 17, 2006, Plaintiff Morales, whose rebate claim still had not been formally accepted or rejected, filed a class action in this District.

16.    Plaintiff, Jonathan Feldman ("Feldman"), is a resident of Illinois. Using the above-referenced Wirefly.com website operated by InPhonic's wholly-owned subsidiary, on or

about January 30, 2006 Plaintiff Feldman ordered a Motorola RAZR phone from InPhonic for $149.99. As part of Plaintiff Feldman's purchase agreement and contract, which Plaintiff Feldman relied upon, InPhonic agreed to provide a $100.00 "Customer Appreciation Rebate" if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Feldman mailed his rebate form to Defendant CPG at the above-referenced address in Phoenix, Arizona. (*See* ¶ 11, *supra*.) On July 31, 2006, Plaintiff Feldman, whose rebate claim still had not been formally accepted or rejected, filed a class action in the District of Arizona.

17.    Plaintiff, Joshua Pevnick ("Pevnick"), is a resident of California. Using the above-referenced Wirefly.com website operated by InPhonic's wholly owned subsiduary, in on or about February 5, 2005 Plaintiff Pevnick ordered a Treo 600 phone from InPhonic for $299.99. As part of Plaintiff Pevnick's purchase agreement and contract, which Plaintiff Pevnick relied upon, InPhonic agreed to provide a $100.00 "Customer Loyalty Rebate" and a $100 "Customer Appreciation Rebate" if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Pevnick mailed his rebate form to Defendant Helgeson, and then to Defendant CPG, at their above-referenced respective business addresses. On August 16, 2006, Plaintiff Pevnick, whose rebate claim still had not been formally accepted or rejected, filed a class action in the District of Arizona.

18.    Plaintiff, Stanley J. Heller ("Heller"), is an Illinois resident. Using the Internet website www.myrateplan.com, which is operated by InPhonic, on or about September 3, 2005, Plaintiff Heller purchased two PalmOne Treo 650 cellular phones from InPhonic. As part of Plaintiff Heller's purchase agreement and contract, which Plaintiff Heller relied upon, InPhonic agreed to provide a $100.00 "Customer Loyalty Rebate" and a $100 "Voice & Data" rebate for

each cellular phone (or a total of $400.00 in rebates) if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Heller mailed his rebate forms to InPhonic.

On September 11, 2006, Plaintiff Heller, whose rebate claim still had not been formally accepted or rejected, filed a class action in this District.

19.     Plaintiff, Iona Workman ("Workman"), is a resident of Michigan. Through Cingular Choices, a wholly-owned subsidiary of InPhonic, on or about August 15, 2005 Plaintiff Workman purchased a Motorola RAZR V3 telephone and Cingular Wireless two-year telephone service plan. Plaintiff Workman paid $149.99 for the telephone and $75.99 for the two-year telephone service plan. As part of Plaintiff Workman's purchase agreement and contract, which Plaintiff Workman relied upon, InPhonic agreed to provide a $75.00 "Customer Loyalty Rebate" and a $75.00 "Mail-In Rebate" if certain terms and conditions were met. Acting in compliance with each and every requirement of that agreement, Plaintiff Workman mailed her rebate claim forms for both of the above-referenced rebates. On March 10, 2006, Plaintiff Workman received an e-mail communication from InPhonic, sent via interstate wire facilities, stating that her $75.00 Mail-In Rebate application was being rejected because she supposedly had not submitted a copy of the UPC code. (InPhonic's e-mail message to Plaintiff Workman did not address her Customer Loyalty Mail-In Rebate claim.) On March 13, 2006, Plaintiff Workman, using interstate wire facilities, telephoned InPhonic and spoke with an employee named "Vonda" concerning both of her rebate claims. During that telephone conversation, "Vonda" told Plaintiff Workman to resubmit her information. On March 14, 2006, Plaintiff Workman sent via facsimile, using interstate wire facilities, all requested information concerning her rebate claims to InPhonic. On March 16, 2006, Plaintiff Workman sent via certified mail all requested

information concerning her rebate claims to InPhonic. Notwithstanding her full and complete compliance with the terms and conditions of the contract and the rebate claims process, on September 11, 2006 Plaintiff Workman received a letter from InPhonic, sent via U.S. mail, stating that her rebate claims had been denied. On September 25, 2006, Plaintiff Workman filed a class action in this District.

**B.    Defendants**

20.    (a)    Prior to its November 2007 bankruptcy filing, InPhonic was a Delaware corporation with its corporate headquarters located at 1010 Washington Avenue, Suite 600, Washington, DC. During the Class Period, InPhonic sold online wireless services and devices, including cellular telephones and calling plans for such devices. InPhonic operated in three business segments: Wireless Activation and Services ("W&A Services"); Mobile Virtual Network Operator ("MVNO") Services; and Data Services. The W&A Services segment marketed, advertised, sold and distributed the wireless devices and services of companies such as T-Mobile, Cingular, Sprint and Verizon to consumers through various Internet websites that InPhonic created and managed under its own brand name. In addition, InPhonic itself purchased wireless devices from the above-mentioned companies and packaged the devices with wireless service plans for resale directly to consumers through InPhonic's own branded Internet websites including, but not limited to, www.Wirefly.com. InPhonic reported that the W&A Services segment accounted for approximately 98% of the company's total revenue in 2005. The MVNO Services segment marketed and sold its own branded wireless services to consumers based upon wireless airtime minutes. The Data Services segment provided subscribers with wireless access to work-related and personal information, including e-mail, calendar, corporate directories, personal contacts and documents, as well as wireless

entertainment and content. InPhonic claimed that it utilizes a proprietary electronic commerce platform that integrates the merchandising, advertising, marketing, sales, provisioning, procurement, billing operations and customer care operations into a single system. InPhonic claimed to be the third-largest online retailer of wireless devices and services in the U.S. In 2005, InPhonic sold more than 840,000 wireless devices and/or wireless service plans, capturing approximately 33% of the U.S. market. (During the previous year, InPhonic sold 750,000 wireless devices and/or wireless service plans, capturing approximately 27% of the U.S. market.) InPhonic claimed that its 2005 revenues totaled $320 million, with its 2006 revenue estimated at over $400 million. As noted above, InPhonic filed for bankruptcy protection in November 2007 and, as a result, this Amended Complaint does not assert any legal claims against InPhonic.

(b)     During the Class Period, Defendant David A. Steinberg ("Steinberg"), InPhonic's founder, served as Chairman of the Board of Directors and Chief Executive Officer. In addition, he served as InPhonic's President from August 2002 until March 2004.

(c)     During the Class Period, Defendant Andrew B. Zeinfeld ("Zeinfeld") served as President of E-Commerce (since April 2006) and served as InPhonic's President from June 2006 to November 2007.

(d)     During the Class Period, Defendant Brian J. Curran ("Curran") served as InPhonic's Chief Operating Officer.

(e)     During the Class Period, Defendant George J. Moratis ("Moratis"), served as Senior Vice President of Financial Reporting and Analysis (since October 2005) and Chief Accounting Officer (since May 2007).

(f)     During the Class Period, Defendant Brian T. Westrick ("Westrick"), served as President of InPhonic's Wireless Activation and Services Division (since July 2002) and held other executive level positions since joining InPhonic in June 2000.

(g)     In this Amended Complaint, the Defendants identified in Paragraphs 20(b)-(f) are collectively referred to as the "Individual Defendants." At all times relevant hereto, the Individual Defendants, by virtue of their high-ranking corporate positions, actually operated InPhonic's day-to-day business and, consequently, purposely devised, were involved in and/or knew about the scheme or artifice to defraud Plaintiffs and Class members described in Paragraphs 1 and 24-45 of this Amended Complaint. During the Class Period, the Individual Defendants were responsible for designing and/or approving InPhonic's false, misleading and deceptive advertising of wireless devices, and formulating the rebate offers that drove sales of such devices to consumers. The Individual Defendants were responsible for devising and/or approving InPhonic's rebate redemption policies and, in concert with Defendants CPG and Helgeson, the Individual Defendants concocted and/or approved a scheme to delay redeeming and/or unjustifiably rejecting rebate claims in order to increase the entities' revenue and profits and, as a result, increase the Individual Defendants' annual salaries, bonuses and other forms of compensation.

21.     Defendant CPG is an Arizona corporation, incorporated in 1994, with its principal place of business located at 1120 West Warner Road, Tempe, Arizona. Pursuant to a contractual relationship with InPhonic, from July 2005 to July 2006, Defendant CPG handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic. Upon information and belief, during that one-year period InPhonic employees were present at CPG's

processing centers to oversee the handling and processing of rebate claims submitted by Plaintiffs and the members of the Classes.

22.     Defendant Helgeson is a Minnesota corporation with its principal place of business located at 4461 White Bear Parkway, White Bear Lake, Minnesota.  Pursuant to contractual relationship(s) with InPhonic, from February 2003 to October 2005 and from July 2006 to late 2006 or early 2007, Defendant Helgeson handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic.

23.     Does 1-100 represent the individual officers, directors, employees, agents, distributors and other co-conspirators who assisted in the wrongful conduct alleged in this Amended Complaint.  When their identities have been ascertained through discovery, Plaintiffs reserve the right to name them as Defendants.

<u>**FACTUAL ALLEGATIONS**</u>

24.     This Amended Complaint asserts federal and state law claims against the Individual Defendants, who were the principal officers of InPhonic,  a sophisticated Internet retailer that became a market leader in the sale of wireless devices and wireless services by offering rebates that purported to reduce prices below that of its competition.  The online market for wireless devices and services among third-party retailers is one of the most competitive because each retailer carries nearly identical products and services.  As a result, *price* is the primary factor in consumer purchasing decisions.

25.     During the Class Period, under the direct supervision of the Individual Defendants, InPhonic advertised low after-rebate sales prices to solicit consumers through various Internet websites that it owned and/or operated, through in-store advertisements at major retailers, and through e-mail and Internet advertisements.  For example, during the Class

Period, customers visiting Inphonic's Wirefly or Cellular Choices websites were informed that a popular new phone, the RAZR V3c, will be "FREE after rebate with a new Verizon Wireless account." For many consumers, this was a far more attractive option than purchasing the identical phone directly from Verizon Wireless for $129.99 or more. Similarly, during the Class Period, most customers found Inphonic's offer for a Motorola i836 phone, advertised as "Free after rebate" on Radio Shack's website, to be superior to Nextel's offer to sell the same phone for $149.99 or more. These attractive low prices, however, assume that the customer actually received the promised rebate(s) from InPhonic. Here is an example of an Internet advertisement approved by the Individual Defendants and utilized by InPhonic during the Class Period:



| Regular Price | $399.99 |
| Your Price | $129.99 |
| $130 in mail-in rebates | -$130.00 |

**FREE** After Rebates

**Order Now**

Get **2** Phones
with a family plan
Click Here

✉ Send this site
to a friend!

26.     During the Class Period, InPhonic advertised many of its wireless devices as being "Better than Free." Potential customers were told that by purchasing certain wireless devices through InPhonic, they would be entitled to a refund of up to $100.00. InPhonic's various websites stated to consumers that by buying certain wireless devices, "You make $50.00." Another phone was advertised as being "FREE Plus $60 Cash Back." Once again, all of these tempting offers depended upon the customer actually obtaining the promised rebate(s) from InPhonic. Here is another example of an Internet advertisement approved by the Individual Defendants and utilized by InPhonic during the Class Period:

| Click to Compare | Carrier Phone | Camera Phone | Weight | Price Today | Price After Rebates | Select |
|---|---|---|---|---|---|---|
| ☐ ubmit Quer | Motorola V276 (Camera Phone) | Yes, VGA-quality (640 x 480 Pixels), Self-timer | 3.77 oz | $0.00 | You make $60.00 | Select> |

27.     Based upon these promised rebates, InPhonic's Wirefly website asked consumers to "Compare for yourself and you'll find nobody beats Wirefly's prices -- on the Internet, in local stores or anywhere else." InPhonic's after-rebate prices allowed it to beat all competitors in online price comparisons. According to InPhonic's own data, 70-80% of consumers research wireless service online.

28.     During the Class Period, under the direction of the Individual Defendants, InPhonic advertised its post-rebate prices heavily on virtually all Internet search engines and other websites. For example, a search on the Google website for RAZR finds the following two InPhonic advertisements:

Free Motorola **Razr** v3
www.cellularchoices.net    after $100 rebate with Cingular.
Verizon **Razr** also available here.

Free Motorola **Razr** V3
Choose black or silver. Bluetooth,
VGA camera. Free Shipping.
www.myrateplan.com

29.    The unlawful, unfair and deceptive practices alleged in this Amended Complaint allowed InPhonic to claim lower prices than its competition and to dominate the online wireless market. As of March 2006, InPhonic claimed that it is the "leading marketer and seller of wireless services on the internet," having achieved 1.1 million wireless service activations in 2005. InPhonic claimed to represent 33% of the U.S. online wireless activation market, versus 58% for the above-referenced wireless carriers, and only 9% for all others combined.

30.    During the Class Period, InPhonic's Wirefly website claimed that it was the number one seller of wireless devices and services on the Internet and one of the top five electronic websites. InPhonic's unlawful, unfair and deceptive practices led to exponential revenue growth, including a 107% jump in revenue between 2004 and 2005. During that time period, wireless device activations increased by 48%. InPhonic's expansion was partly carried out through major online retailers, such as Circuit City, Staples and RadioShack. InPhonic's marketing partners included Google, Yahoo, MSN, Buy.com, AOL, Sam's Club and RadioShack, and InPhonic claimed that it retailed wireless devices and services through its owned brands and over 6,000 private label partners.

31.    InPhonic's growth and revenue derived in significant part from its development of business practices that limited the ability of customers, including Plaintiffs and Class members, to actually obtain the promised rebates. Given the large size of the promised rebates – up to $500 for many families – InPhonic's rebate offer(s) played a primary role in consumers' purchasing decisions. Meanwhile, InPhonic and its principal officers, the Individual

Defendants, were rewarded handsomely with salaries, bonuses and other perquisites when rebates went unfulfilled or rejected.

32.    During the Class Period, customers (including Plaintiffs and the members of the Classes) made purchasing decisions based upon the information presented in InPhonic's websites and online advertisements, and the consumer made the actual purchase online, using interstate wire facilities.  For example, InPhonic's websites allowed customers to provide credit card information and enter into final, binding contracts.  At the time the contract was entered into, consumers were given every reason to believe that they would ultimately receive the promised rebate from InPhonic.

33.    During the Class Period, InPhonic's rebate offers uniformly failed to disclose that its rebates were subject to numerous material limitations.  With the express approval of the Individual Defendants, InPhonic also intentionally hid certain material and binding terms and conditions from customers on "back-pages" of its Internet websites that could only be seen if the customer "clicked-thru."  At various times during the Class Period, many of these pages were only viewable in a "minimized" screen format and could not be printed for the customer's file for later review.  With the express approval of the Individual Defendants, InPhonic also intentionally used smaller-sized typefaces and fonts when describing certain material and binding terms and conditions to de-emphasize their importance and discourage customers from reading them.  Thus, when customers (including Plaintiffs and the members of the Classes) purchased wireless devices and service plans from InPhonic, customers had no way of knowing that, in fact, the rebate offer that played a central role in their purchasing decision was subject to significant limitations and, therefore, were illusory.  These undisclosed limitations made the rebate offers unlawful, unfair and deceptive and are part of a sophisticated scheme to defraud Plaintiffs and the members of the Classes, carried out by the Individual Defendants, CPG and Helgeson, to avoid paying rebates.  From 1999 to February 2003, and since late 2006 or early

2007, the Individual Defendants caused InPhonic to carry out the scheme to defraud on its own. From February 2003 to October 2005 and from July 2006 to late 2006 or early 2007, the Individual Defendants and Helgeson acted in concert to carry out the same scheme to defraud. From July 2005 to July 2006, the Individual Defendants and CPG acted in concert to carry out the same scheme to defraud. Prior to and during the Class Period, the Individual Defendants caused InPhonic to conduct ongoing tests of its rebate offers in an effort to develop those that are most effective; that is, the most attractive for potential customers and the most difficult for consumers to redeem. The undisclosed limitations on InPhonic's rebates are disclosed below.

34.     **Undisclosed limitation 1: Customers requesting a rebate will be required to agree to false statements of facts.** Plaintiffs allege that under the direction of the Individual Defendants, InPhonic made ongoing changes to its rebate offers during the Class Period, but all of the rebate offers entered into by Plaintiffs and Class members suffered from one or more of these material undisclosed limitations. For some or all of the Class Period, customers seeking to redeem a rebate were required to sign a statement agreeing to false statements of fact. For example, one widely used rebate form required the customer to sign a statement that read materially as follows:

> In addition to this rebate, an equipment purchase discount of $250 has been provided to you in exchange for activating and maintaining a new, non-substitute wireless service mobile number on any commercially published wireless service rate plan for a minimum of 181 consecutive days."

35.     This mandatory statement was, in fact, false and misleading because customers did not receive an equipment purchase discount of any amount. At the time of purchase, customers were told the "Price Today"( or "Your Price") and the "Price After Rebates." The difference between these two numbers is the amount of the rebates. Having informed customers of the "Price Today" and "Your Price," InPhonic could not later state that a higher price applied and was only reduced by a previously undisclosed "discount." Requiring

customers to agree to this false factual statement as a condition of receiving a promised rebate

rendered the offer unfair and deceptive, and illusory for that segment of the customer base that

is unwilling to agree to a false and misleading statement of fact as a condition of receiving a

promised rebate.

36.    **Undisclosed limitation 2: Customers requesting a rebate will be required
to agree to new and unfair contract terms.**  Rebate forms also required customers to agree to

new, unfair contract terms as a condition of obtaining the rebate.  One widely used form  that

was approved by the Individual Defendants stated:

> Should the number disconnect (permanently or temporarily, except based on the
> fault of the Wireless Service carrier) from the chosen Wireless carrier, or if the
> customer's wireless service rate plan is changed to one of a lower service rate
> plan, with the same period (181 consecutive days), both this discount and the
> rebate will be null and void and the customer must reimburse this Authorized
> Carrier Representative $250.  The customer herein provides authorization for the
> $250 to be charged to the customer's credit card without need for further
> approval; the $250 will only be charged if the monthly service rate is changed to
> one of a lower monthly service rate or if the wireless phone bill is not paid for
> 181 consecutive days.
>
> I authorize that this $250 can be charged to my credit card and in the event that
> any legal action is necessary to collect the amount due I agree to pay any legal
> fees, collection fees, and court costs."

37.    Customers requesting a rebate were required to authorize the automatic refund of

a non-existent equipment purchase discount and agree to pay legal costs incurred by InPhonic in

obtaining the refund.  These previously undisclosed requirements rendered the original rebate

offer unfair and deceptive, and illusory for that segment of the customer base that was unwilling

to agree to a new and unfair contract term as a condition of receiving a promised rebate.

38.    **Undisclosed limitation 3: Rebate is null and void if InPhonic does not
receive payment within 30 days.**  Rebate forms approved by the Individual Defendants also

stated for the first time that "[t]his rebate will be null and void if all balances owed to Inphonic Inc. are not paid in full within 30 days of purchase date."

39.     All InPhonic customers were harmed by InPhonic's rebate requirements, including the requirement that customers agreed to false and misleading factual statements and new and unfair contract terms as a condition of claiming the rebate. In addition, a significant portion of customers were prevented from obtaining promised rebates because of these practices.

40.     **Undisclosed limitation 4: InPhonic failed to timely distribute forms and information required for customer rebate requests.** On a consistent basis and at the direction of the Individual Defendants, InPhonic failed to provide a significant portion of its customers with the information needed to redeem promised rebates, including the proper rebate forms. Customers who did not receive the proper rebate forms found it virtually impossible to obtain the promised rebates, in part because of the poor customer service described below. During some or all of the Class Period, customers visiting the InPhonic website found that they could not access correct, up-to-date rebate forms. A significant portion of customers were (and are) unable to receive promised rebates because of InPhonic's failure to timely provide needed information and proper rebate forms.

41.     **Undisclosed limitation 5: InPhonic's customer service was so poor that it materially limits customers' ability to request rebates.** During the Class Period, with the knowledge and approval of the Individual Defendants, InPhonic failed to provide customer service telephone numbers, failed to timely respond to customers' e-mail messages, and failed to timely respond to customer service inquiries and complaints. InPhonic's customer service fell far below industry standards and was contractually inadequate, given InPhonic's extremely short

and inflexible timelines for perfecting rebate applications. A significant number of customers were prevented from obtaining rebates because of InPhonic's poor customer service.

42.     During a portion of the Class Period, InPhonic's websites provided no customer service telephone number or other method for making timely contact with the company. During some or all of the Class Period, customers were given no avenue for customer service other than by sending an e-mail message to the company detailing their complaint. The e-mail form provided several complaints to choose from, including that the rebate forms were not sent. However, InPhonic failed to promptly respond to these e-mail inquiries and failed to promptly provide rebate forms.

43.     **Undisclosed limitation 6: Customers are not allowed to correct a minor error in the rebate request.** When a customer submitted a rebate application with a minor error or omission, InPhonic failed to provide the customer any opportunity to correct the error. For example, during the Class Period InPhonic consistently informed customers of minor errors and omissions in the rebate requests only *after* the narrow rebate "window" had closed. This business practice deprived a significant portion of customers of their contractually promised rebates.

44.     **Undisclosed limitation 7: A portion of customers will not receive necessary paperwork from the wireless companies in time to request a rebate.** At the direction of the Individual Defendants, InPhonic failed to disclose that the customer may find it impossible to comply with the inflexible deadlines for the rebate. For example, during the Class Period some of InPhonic's rebate forms required submission of the first, second and third bills for wireless services showing all balances paid in full, and required that the third bill be dated within 120 days of the purchase date. The rebate form then must be postmarked within 120

days of the customer's activation date. InPhonic ddid not disclose to customers that a significant portion of customers would not receive their third bill from the wireless company in time to meet this deadline, or that the third bill will not show the balance paid in full due to billing practices of the wireless carriers. These requirements and similar requirements imposed during the Class Period prevented a significant portion of customers from obtaining the promised rebates.

45.     **Undisclosed limitation 8:  InPhonic, Helgeson and CPG did not promptly process rebate requests, if at all.**  The rebate forms state that rebate checks would be received by customers within 10 to12 weeks of InPhonic's receipt of the customer's rebate requests; however, during the Class Period, InPhonic (acting under the direction of the Individual Defendants), Helegeson and CPG neither complied with this deadline nor processed rebate requests promptly, if at all.  This policy of delay or rejection caused  significant harm to Plaintiffs and the members of the Classes and allowed the entities and the Individual Defendantsto enjoy undeserved revenue, profits, salaries and bonuses in the form of interest and un-cashed rebate checks.  Upon information and belief, the compensation that Helgeson and CPG received from InPhonic, pursuant to the contractual agreements executed by these Defendants, was calculated so that Helgeson and CPG received more money if they frustrated, delayed, or denied more claims.

## CLASS ACTION ALLEGATIONS

### In Support of Certification of Classes Under Rule 23(b)(1), 23(b)(2) and 23(b)(3)

46.     Plaintiffs bring this class action individually and on behalf of the following similarly situated classes of customers located nationwide (collectively the "Classes") who entered into contracts with InPhonic for the purchase of wireless device(s) and/or wireless

service(s) between the date when the scheme to defraud commenced and the date when judgment is entered in this class action (the "Class Period"):

**Rebate Term Class:** Customers who entered into contract(s) with InPhonic for the purchase of wireless device(s) and/or wireless service(s) whose contract(s) included rebate offer(s) later found to be conditioned upon the customer's agreement to false statements of fact and/or additional contract terms.

**Rebate Deprivation Class:** Customers who entered into contract(s) with InPhonic for the purchase of wireless device(s) and/or wireless service(s) whose contract(s) included rebate offer(s) and who were unable to receive rebate(s) due to one or more undisclosed material limitations on the rebate offer(s), including those described herein.

47.     The number of persons who are members of the Classes described in Paragraph 46 of this Amended Complaint are so numerous that the joinder of all members in one action is impracticable.

48.     Questions of law and fact that are common to the Classes predominate over individual questions because the actions of the Individual Defendants, Helgeson and CPG complained of in this Amended Complaint were generally applicable to the members of the Classes.

49.     All questions as to the representations and publicly disseminated advertisements and statements attributable to the Individual Defendants, and the actions of Helgeson and CPG, as alleged in this Complaint, are common as to Plaintiffs and the members of the Classes. Any determination of the Individual Defendants' knowledge regarding the misleading and deceptive nature of InPhonic's rebate offers, the concealment of material limitations of its rebate offers, and the business practices depriving customers of rebates are likewise common. Any determination of liability as to the deceptive and misleading statements and representations and practices relating to the Individual Defendants' and InPhonic's marketing and promotion of its products and services, and rebate offers, their concealment of material information relating to

the rebate offers, and breaches of contract will also be applicable to Plaintiffs and the members of the Classes. Further, whether the Individual Defendants, Helgeson and/or CPG violated any applicable state or federal laws and pursued the course of conduct complained of herein, whether Defendants acted intentionally or recklessly in engaging in the conduct described herein and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to Plaintiffs and the members of the Classes.

50.    Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs purchased wireless devices and/or wireless services from or through InPhonic during the Class Period, and Plaintiffs are members of both the Rebate Term Class and Rebate Deprivation Class. Plaintiffs purchased devices and/or wireless services from InPhonic in reliance on the rebate offers and were unaware of the conditions imposed on the rebate forms and the material limitations on such offers. These undisclosed material limitations ultimately deprived Plaintiffs and the members of the Classes of the promised rebates.

51.    Plaintiffs will fully and adequately represent and protect the interests of the Classes because of the common injuries and interests of the members of the Classes and the singular conduct of InPhonic that is or was applicable to all Class members. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the members of the Classes they seek to represent.

52.    A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action

53.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for InPhonic under the laws alleged herein.

54.     The claims of the Rebate Term Class (as defined in Paragraph 46 of this Amended Complaint) should be certified under Rule 23(b)(1) and/or 23(b)(2) because that Class's claim focuses on the enforceability and legality of the terms imposed upon the Class by the rebate offers and proper remedies.   The Rebate Term Class primarily seeks declaratory and injunctive relief and separate actions would risk setting incompatible standards of conduct or could in a practical matter impair the interests of non-parties.

54.     The claims of the Rebate Deprivation Class (as defined in Paragraph 46 of this Amended Complaint) may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).   The members of this Class also seek declaratory and injunctive relief but also seek sizeable monetary recovery equal to the rebates of which the members of this Class were deprived.

## FIRST CAUSE OF ACTION

### (Violations of District of Columbia Consumer Protection & Procedures Act)

55.     Plaintiffs incorporate by reference Paragraphs 1-54 of this Amended Complaint as if fully alleged herein.   This cause of action arises under the District of Columbia Consumer Protection and Procedures Act (the "CPPA"), D.C. Code Ann. § 28-3901 *et seq.*, and is asserted against the Individual Defendants.

56.     In this Amended Complaint, Plaintiffs assert the existence of  Classes (as defined in Paragraph 46), and allege the Individual Defendants' violations of the CPPA on behalf of themselves, the members of the Classes, and the general public.

57.     The express purpose of the CPPA is to assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices, to promote fair business practices throughout the community, and to seek proper redress of grievances. D.C. Code Ann. § 3901(b).  The CPPA is construed and applied liberally to promote these purposes. *Id.*

58.     During the Class Period, InPhonic constituted a "merchant," as that term is defined in Section 28-3901(a)(3) of the CPPA; the wireless devices and wireless services sold by InPhonic constituted "goods and services," as that term is defined in Section 28-3901(a)(7) of the CPPA; and the Individual Defendants caused InPhonic to engage in "trade practice[s]," as that term is defined in Section 28-3901(a)(6) of the CPPA.

59.     Section 28-3904 of the CPPA, which proscribes "[u]nlawful trade practices," states in pertinent part:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(e)     misrepresent a material fact which has a tendency to mislead;

(f)     fail to state a material fact if such failure tends to mislead;…

(h)     advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; …

(j)     make false or misleading representations of fact concerning the reasons for, existence of, or price reductions, or the price in comparison to price of competitor's or one's own price at a past or future time; …

(r)     make or enforce unconscionable terms or provisions of sales or leases.

D.C. Code Ann. § 28-3904.

60.     Pursuant to Section 28-3905 of the CPPA, a "person," whether acting for the interest of itself, its members, or the general public, may bring an action for relief from unlawful trade practice and may seek the following remedies:

(A)     treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B)     reasonable attorneys fees;

(C)     punitive damages;

(D)     an injunction against the use of the unlawful trade practices;

(E)     in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practices; or

(F)     any other relief which the court deems proper.

D.C. Code Ann. § 28-3905(k)(1).  At all relevant times, Plaintiffs and the members of the Classes have been "person[s]" and "consumer[s]," as those terms are defined in Section 28-3901(a)(1) & (2) of the CPPA.

61.     The conduct of the Individual Defendants, as alleged in this Amended Complaint, constitutes deceptive and unfair methods of competition and/or trade practices, all impacting the public interest, in violation of Section 28-3904 of the CPPA.  For example, but not by way of limitation, the Individual Defendants caused InPhonic to engage in rebate practices (as described in Paragraphs 24-45 of this Amended Complaint) containing both misrepresentations and omissions of material facts that tended to mislead and constituted a misleading representation of price reductions and comparison of prices in comparison to competition.  The Individual Defendants caused InPhonic to advertise after-rebate pricing and rebate programs that were contrary to the intent to obstruct consumers' attempts to obtain promised rebates.  The above-referenced representations that customers have received equipment discounts are false or misleading representations of fact about its own price at a past or future time.  In addition, the terms of its rebate offers are unconscionable, especially in the context of InPhonic's reliance upon after-rebate pricing in its marketing.

62.     As a direct and proximate result of such wrongful activity, Plaintiffs and the members of the Classes have suffered and will continue to suffer substantial damages and the Individual Defendants have been unjustly enriched by their wrongful conduct.

63.    The harm to Plaintiffs and to each member of the Classes, regardless of his or her residence in the United States, emanated from the District of Columbia, where InPhonic maintains its corporate headquarters during the Class Period. Each of the consumer transactions alleged herein emanated from and have a nexus with the District of Columbia, and the law of the District of Columbia has the most significant relationship to the transactions between the Individual Defendants, InPhonic and Plaintiffs and the members of the Classes. Thus, the CPPA applies to every the claims of every Class member, regardless of their residence or location.

64.    Under Section 28-3905(k)(1) of the CPPA (as quoted in Paragraph 60 of this Amended Complaint), Plaintiffs and the members of the Classes are entitled to recover the greater of treble damages or $1,500 per violation, punitive damages, disgorgement of profits, recovery of reasonable attorneys' fees, and injunctive relief.

## SECOND CAUSE OF ACTION

### (Violations of State Consumer Protection Statutes)

65.    Plaintiffs incorporate by reference Paragraphs 1-64 of this Amended Complaint as if fully alleged herein. This cause of action arises under the consumer protection statutes of jurisdictions other than the District of Columbia and is asserted against the Individual Defendants.

66.    The Individual Defendants' conduct, as alleged in this Amended Complaint, constituted acts, uses, or employment of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentation and/or a knowing concealment, suppression, or omission of material facts with the intent that Plaintiffs and the members of the Classes would rely upon such concealment, suppression, or omission in connection with the sale of wireless devices and/or wireless services. The Individual Defendants' conduct constituted

unfair practices that had the capacity to, and did, deceive consumers, including Plaintiffs and the members of the Classes.

67.    All of the conduct alleged herein occurred in the course of the Individual Defendants' business, and their conduct was part of a pattern or generalized course of conduct repeated on thousands of occasions.

68.    As a proximate result of the Individual Defendants' misrepresentations and omissions of material facts, Plaintiffs and the members of the Classes have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

69.    In addition to the District of Columbia, all 50 states have enacted statutes to protect consumers against unfair, deceptive, or fraudulent business practices, unfair competition and/or false advertising.  At all relevant times, such statutes were in effect in each state or territory where InPhonic does business.

70.    The Individual Defendants' actions, as complained of herein, constituted unfair competition or unfair, unconscionable, deceptive, or fraudulent acts of practices in violation of various state consumer protection statutes listed below:

    a.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1 *et seq.*;

    b.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Alas. Stat. Code § 45.50.471 *et seq.*;

    c.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522 *et seq.*;

    d.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101 *et seq.*;

e.   Defendants engaged in unfair competition or unfair or deceptive acts or practice in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*;

f.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105 *et seq.*;

g.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b *et seq.*;

h.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Stat. Code § 2511 *et seq.*;

i.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201 *et seq.*;

j.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. § 10-1-392 *et seq.*;

k.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480 *et seq.*;

l.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601 *et seq.*;

m.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1 *et seq.*;

n.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5-1 *et seq.*;

o.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b *et seq.*;

p.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623 *et seq.*;

q.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110 *et seq.*;

r.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401 *et seq.*;

s.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207 *et seq.*;

t.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code, Com. Law § 13-101 *et seq.*;

u.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ann. 93A *et seq.*;

v.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901 *et seq.*;

w.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67 *et seq.*;

x.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1 *et seq.*;

y.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010 *et seq.*;

z.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101 *et seq.*;

aa.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601 *et seq.*;

bb.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat.§ 598.0903 *et seq.*;

cc.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1 *et seq.*;

dd.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1 *et seq.*;

ee.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1 *et seq.*;

ff.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 *et seq.*;

gg.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 *et seq.*;

hh.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01 *et seq.*;

ii.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code § 1345.01 *et seq.*;

jj.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751 *et seq.*;

kk.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605 *et seq.*;

ll.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1 *et seq.*;

mm.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1 *et seq.*;

nn.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10 *et seq.*;

oo.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1 *et seq.*;

pp.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101 *et seq.*;

qq.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41 *et seq.*;

rr.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-1-1 *et seq.*;

ss.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9 § 2451 *et seq.*;

tt.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196 *et seq.*;

uu.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010 *et seq.*;

vv.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101 *et seq.*;

ww.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20 *et seq.*; and

xx.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-101 *et seq.*

71.   Under these statutes, Plaintiffs and the members of the Classes are entitled to damages, treble damages, restitution, disgorgement and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair practices and to the relief.

## NOTICE TO ATTORNEYS GENERAL OF NATIONWIDE CLASS ACTION

72.   A copy of this Amended Complaint shall be mailed to the Attorneys General, Administrator, Commissioner, or other officer, as required by the above-referenced laws of the States of Connecticut, Georgia, Hawaii, Illinois, Kansas, Louisiana, Nevada, New Jersey, Oregon and Texas, pursuant to Conn. Gen. Stat. § 42-110g(c), Ga. Stat. § 10-1-399(b), Haw. Rev. Stat. § 48013.3, 815 ILCS § 505/6, Kan. Stat. § 50-634(g), La. Rev. Stat. § 51:1409(B), Nev. Rev. Stat.§ 598A.210(3), N.J.S.A. § 56:8-20, Or. Rev. Stat. § 646.638(2), and Tex. Bus. & Com. Code § 17.501(a)(1).

## THIRD CAUSE OF ACTION

### (Violations of RICO)

73.   Plaintiffs incorporate by reference Paragraphs 1-72 of this Amended Complaint as if fully alleged herein. This cause of action arises under Section 1964(c) of RICO, 18 U.S.C. § 1964(c); alleges violations of Section 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) & (d); and is

asserted against the Individual Defendants, CPG and Helgeson. Under Sections 1962 and 1964 of RICO, the Individual Defendants, CPG and Helgeson may be held jointly and severally liable for injuries to their business or property sustained by Plaintiffs and the members of the Classes.

74.    At all times relevant to this class action, Plaintiffs, the members of the Classes, and the Individual Defendants, CPG and Helgeson are "person[s]," as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

75.    At all times during the Class Period, InPhonic constituted an "enterprise," as that term is defined in Section 1961(4) of RICO. In addition, during one portion of the Class Period (as defined in Paragraph 46 of this Amended Complaint), the association-in-fact of InPhonic and CPG constituted an "enterprise" because they were "corporation[s] … associated in fact although not a legal entity." 18 U.S.C. § 1961(4). During a different portion of the Class Period, the association-in-fact of InPhonic and Helgeson constituted an "enterprise" because they were and are "corporation[s] … associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Each of these separate association-in-fact enterprises existed during the respective time period(s) when InPhonic maintained a contractual relationship with CPG and when InPhonic maintained a contractual relationship with Helgeson. Specifically, InPhonic and Helgeson formed an association-in-fact enterprise that existed from February 2003 to October 2005, and from July 2006 to late 2006 or early 2007 when, pursuant to their contractual relationship, Helgeson processed rebate claims for InPhonic. InPhonic and CPG formed a separate association-in-fact enterprise that existed from July 2005 to July 2006 when, pursuant to their contractual relationship, CPG processed rebate claims for InPhonic. During these respective periods of time, the core members of the association-in-fact enterprise (namely, InPhonic and Helgeson *or* InPhonic and CPG) remained the same and the basic decision-making structure of the respective enterprise(s) remained the same. During these respective contractual relationships, InPhonic and Helgeson and InPhonic and CPG functioned in a manner equivalent to a joint

venture, and each of them had a common purpose, namely, to increase their respective revenue and profits by frustrating, delaying and, ultimately, denying rebate claims submitted by Plaintiffs and members of the Classes. The structure of each such association-in-fact enterprises will be evidenced by the respective contractual agreements between InPhonic and Helgeson and InPhonic and CPG, as well as their course(s) of dealing during the periods of time that each such association-in-fact enterprise existed. Their decision-making structure, whether hierarchical or consensual, will also be evidenced by their respective contractual agreements and course(s) of dealing during those time periods; however, upon information and belief, Plaintiffs allege that InPhonic and Helgeson and InPhonic and CPG engaged in a consensual decision-making structure. Each member of the respective associations-in-fact (InPhonic and Helgeson and InPhonic and CPG) jointly controlled and participated in the operation of that enterprise and its principal commercial activity; namely, the processing of rebate claim forms submitted by Plaintiffs and the members of the Classes. Each member's role was critical to effectuating the scheme to defraud that is alleged in this Amended Complaint. Because they are separate corporate entities that were bound together, during the respective time periods, by contractual agreements, each of these corporate entities – InPhonic, Helgeson and CPG – had an existence separate and apart from the "racketeering activity" (namely, multiple acts of mail fraud and wire fraud) described in Paragraph 76 of this Amended Complaint, and beyond that necessary merely to commit each of the acts charged as predicate racketeering offenses. The primary function of these contractual relationships (namely, to process rebate claims received from Plaintiffs and the members of the Classes) existed quite separate and apart from the predicate acts of mail fraud and wire fraud that are described below.

76.    In violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), during the Class Period the Individual Defendants conducted or participated in the conduct of the affairs of an enterprise, namely, InPhonic, through a "pattern of racketeering activity," as that term is defined

in Section 1961(1) and (5) of RICO, 18 U.S.C. § 1961(1) & (5).  Between February 2003 and

October 2005, and between July 2006 and late 2006 or early 2007, Helgeson conducted or

participated in the conduct of the affairs of the Helgeson-InPhonic association-in-fact enterprise

through a "pattern of racketeering activity."   In violation of Section 1962(c) of RICO, 18 U.S.C.

§ 1962(c), between July 2005 and July 2006, CPG conducted or participated in the conduct of

the affairs of the CPG-InPhonic association-in-fact enterprise through a "pattern of racketeering

activity."  The "racketeering activity" consisted of acts of mail fraud, in violation of 18 U.S.C. §

1341, and wire fraud, in violation of 18 U.S.C. § 1343.  The alleged acts of mail fraud and wire

fraud committed and/or caused to be committed by the Individual Defendants, Helgeson and

CPG during the above-referenced time periods include the following communications with

Plaintiffs and the members of the Classes, which were transmitted, delivered and/or carried out

by U.S. mail and/or interstate wire facilities:

(a)     The posting of advertisements and offers to sell wireless devices and service

plans, as well as rebate claim forms on the above-referenced Internet websites

maintained by InPhonic, each of which involved the use of interstate wire

facilities;

(b)     The receipt of rebate claim forms submitted by Plaintiffs and the members of the

Classes, each of which involved the use of the U.S. mails and/or interstate wire

facilities;

(c)     The accessing of rebate status check pages by Plaintiffs and the members of the

Classes from the following Internet website maintained by InPhonic:

www.rebate-zone.com/inphonic, which involved the use of interstate wire

facilities;

(d)    The receipt of communications from a service provider, such as Verizon, relating to rebate claims submitted by Plaintiffs and the members of the Classes, each of which involved the use of the U.S. mails and/or interstate wire facilities;

(e)    Correspondence (including letters and e-mail messages) sent by InPhonic (at the instigation of the Individual Defendants), Helgeson and/or CPG to Plaintiffs and the members of the Class concerning the processing, delay and/or denial of rebate claim forms, each of which involved the use of the U.S. mails and/or interstate wire facilities; and

(f)    Correspondence, interstate telephone conversations or facsimile transmissions, and e-mail communications between Plaintiffs and the members of the Classes and InPhonic, Helgeson and/or CPG concerning the processing, delay and/or denial of rebate claim forms, each of which involved the use of the U.S. mails and/or interstate wire facilities.

During the Class Period, InPhonic (acting at the instigation and under the direction of the Individual Defendants), Helgeson and/or CPG processed, frustrated, delayed and denied hundreds of thousands of rebate claim forms submitted by Plaintiffs and the Classes. Each of these wrongful denials of rebate claims by Defendants involved multiple uses of the U.S. mails and/or interstate wire facilities, each of which constitutes a separate act of "racketeering activity," namely mail or wire fraud. Although the specific dates of each such use of the U.S. mails and/or interstate wire facilities may be determined through discovery, when Plaintiffs obtain access to Defendants' books, records and computer systems, at least some of the known and documented instances when the U.S. mails and/or interstate wire facilities were used by Plaintiffs and/or Defendants are alleged in Paragraph 7-19 of this Amended Complaint. (Whether or not the Individual Defendants, or any of them, personally caused the use of the U.S. mails and/or interstate wire facilities to carry out the scheme to defraud, it was foreseeable

to each of them that such interstate facilities would be used to carry out the scheme.)  Each such act of mail or wire fraud was in furtherance of the above-referenced scheme to defraud carried out by the Individual Defendants, Helgeson and CPG because each one was incidental to an essential part of the scheme, namely, the frustration, delay and/or denial of a rebate claim form submitted by Plaintiffs and the members of the Classes.

77.    In violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d), during the Class Period the Individual Defendants conspired to conduct or to participate in the conduct of the affairs of an enterprise, namely, InPhonic, through a pattern of racketeering activity.  Between February 2003 and October 2005, and between July 2006 and late 2006 or early 2007,  Helgeson and the Individual Defendants conspired to conduct or to participate in the conduct of the affairs of the Helgeson-InPhonic association-in-fact enterprise through a "pattern of racketeering activity."  In violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d), between July 2005 and July 2006, CPG and the Individual Defendants conspired to conduct or to participate in the conduct of the affairs of the CPG-InPhonic association-in-fact enterprise through a "pattern of racketeering activity."  As alleged in Paragraph 76, during the Class Period, the Individual Defendants, Helgeson and/or CPG processed, frustrated, delayed and denied hundreds of thousands of rebate claim forms submitted by Plaintiffs and the Classes, and each of these wrongful denials of rebate claims by Defendants involved multiple uses of the U.S. mails and/or interstate wire facilities, each of which constitutes a separate act of "racketeering activity," namely mail or wire fraud.  Defendants' conduct of the scheme to defraud over at least a four-year period, combined with their use of the U.S. mails and/or interstate wire facilities, on hundreds of thousands of occasion satisfies the applicable legal tests for determining whether a "pattern of racketeering activity" may be found in this nationwide class action.

78.    By reason of Defendants' violations of Section 1962(c) and (d) of RICO, Plaintiffs and the members of the Classes have each been injured in their property because they

have suffered monetary loss(es), measured by the amount of their rebate claim(s) that were frustrated, delayed and denied. Under the provisions of Section 1964(c) of RICO, Plaintiffs and the members of the Classes are entitled to recover treble damages and the costs of bringing this class action, including attorneys' fees and costs, as well as such other relief that may be awarded by this Court.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

79.    Plaintiffs incorporate by reference Paragraphs 1-78 of this Amended Complaint as if fully alleged herein. This cause of action for breach of contract arises under the law of the District of Columbia and is asserted against the Individual Defendants.

80.    During the Class Period, Plaintiffs and the members of the Classes entered into contract(s) with InPhonic that included rebate offer(s).

81.    The Individual Defendants caused InPhonic to breach its contracts with Plaintiffs and the members of the Classes by (a) using its rebate forms to acquire agreement to false factual statements and new contract terms; (b) failing to disclose all material limitations on its rebate offers; (c) developing and implementing business practices that were designed to and that did deprive customers of their rebates; and (d) failing to act in good faith in its business practices with customers.

82.    As a proximate result of the aforementioned wrongful conduct and breaches, Plaintiffs and the members of the Classes have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiffs and the members of the Classes are entitled to damages and injunctive and declaratory relief as claimed below.

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

83.    Plaintiffs incorporate by reference Paragraphs 1-82 of this Amended Complaint as if fully alleged herein.  This cause of action arises under the law of the District of Columbia and is asserted against the Individual Defendants.

84.    During the Class Period, the Individual Defendants caused InPhonic to negligently and/or recklessly misrepresent its rebate offers, their limitations, and its business practices designed to avoid payment of rebates, thereby making false, deceptive and illusory the benefit of the bargain to be received by Plaintiffs and the members of the Classes.

85.    These representations were negligently or recklessly made to potential customers and the general public through uniform representations on the Internet and by other means. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the members of the Classes have been damaged.

86.    Plaintiffs and the members of the Classes reasonably and actually relied upon the representations of InPhonic that were made under the direction of the Individual Defendants. Based on such reliance, Plaintiffs and the members of the Classes purchased wireless phones and/or wireless services and as a result of InPhonic's improper conduct have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

87.    The Individual Defendants' acts and misconduct, as alleged herein, constitute oppression, fraud, or malice, thereby entitling Plaintiffs and the members of the Classes to recover an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of InPhonic.

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment and Disgorgement of Profits)

88.    Plaintiffs incorporate by reference Paragraphs 1-87 of this Amended Complaint as if fully alleged herein.  This cause of action arises under the law of the District of Columbia and is asserted against the Individual Defendants, CPG and Helgeson.

89.    Defendants have been unjustly enriched by unlawfully retaining rebate claim payments owed to Plaintiffs and the members of the Classes.

90.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits of this unjust enrichment.

91.    Plaintiffs and the members of the Classes seek disgorgement of all profits resulting from such overpayment and the establishment of a constructive trust from which Plaintiffs and the members of the Classes may seek restitution.

## SEVENTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief)

92.    Plaintiffs incorporate by reference Paragraphs 1-91 of this Amended Complaint as if fully alleged herein.  By this cause of action, Plaintiffs and the members of the Classes seek declaratory and injunctive relief against the Individual Defendants.

93.    Plaintiffs and the members of the Classes are entitled to declaratory relief establishing that InPhonic is engaging in unfair and deceptive practices, that its conduct constitutes negligent and intentional misrepresentation and/or concealment and breaches contracts with consumers and violates applicable tariffs.

94.    Plaintiffs and the members of the Classes are entitled to a declaration that the false factual statements and additional contract terms included on the rebate forms are unenforceable.  InPhonic should be enjoined from enforcing the additional contract terms or relying upon false statements of facts agreed to in the rebate forms.

## EIGHTH CAUSE OF ACTION

### (Civil Conspiracy)

95.     Plaintiffs incorporate by reference Paragraphs 1-94 of this Amended Complaint as if fully alleged herein.  This cause of action arises under the law of the District of Columbia and is asserted against the Individual Defendants, CPG and Helgeson.

96.     During the period from July 2005 to July 2006, the Individual Defendants  and CPG agreed to take part in an unlawful action; namely, in order to wrongfully increase their revenue, they delayed redeeming rebate claims submitted by Plaintiffs and the members of the Classes, or wrongfully denied such claims entirely, as alleged more specifically herein.

97.     During the above-referenced time period, the Individual Defendants and CPG committed overtly tortious acts in furtherance of their agreement, namely the violations of Section 1962(c) and (d) of RICO committed by each of them.

98.     The tortious acts enumerated in Paragraph 97 of this Amended Complaint were material and have caused injury to Plaintiffs and the members of the Classes.

99.     During the period from February 2003 to October 2005 and from July 2006 to late 2006 or early 2007, the Individual Defendants and Helgeson agreed to take part in an unlawful action; namely, in order to wrongfully increase their revenue, they delayed redeeming rebate claims submitted by Plaintiffs and the members of the Classes, or wrongfully denied such claims entirely, as alleged more specifically herein.

100.    The Individual Defendants and Helgeson committed overtly tortious acts in furtherance of their agreement, namely, the violations of Section 1962(c) and (d) of RICO committed by each of them.

101.    The tortious acts enumerated in Paragraph 100 of this Amended Complaint were material and have caused injury to Plaintiffs and the members of the Classes.

102.    Plaintiffs and the members of the Classes seek damages in an amount to be proven at trial. Defendants' actions constitute oppression, fraud, or malice, thereby entitling Plaintiffs and the members of the Classes to recover an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against the Individual Defendants, CPG and Helgeson as follows:

1.    For compensatory damages and/or restitution on behalf of Plaintiffs and the members of the Classes;

2.    For treble damages or $1,500 per violation, whichever is greater, under D.C. Code Ann. § 28-3901 and/or Section 1964(c) of RICO;

3.    For punitive damages and/or disgorgement of unlawful profits;

4.    For injunctive and declaratory relief;

5.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this class action; and

6.    For such other and further relief as this Court deems just and appropriate.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  March 3, 2008

Respectfully Submitted,

CLIMACO, LEFKOWITZ, PECA, WILCOX &
GAROFOLI CO., L.P.A.


By /s/ John R. Climaco
    JOHN R. CLIMACO

888 16th Street, N.W., Suite 800
Washington, DC  20006
Telephone:  (202) 349-9864

E-mail:  JRCLIM@climacolaw.com

SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.


By /s/ Stephen A. Hart
    STEVEN A. HART

One IBM Plaza, Suite 200
300 North Wabash Avenue
Chicago, IL  60611
Telephone:  (312) 645-7920

E-mail:  shart@smsm.com

WILENTZ, GOLDMAN & SPITZER, P.A.


By /s/ Kevin P. Roddy
    KEVIN P. RODDY

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095-0958
Telephone:  (732) 636-8000
Facsimile:  (732) 726-6686

**Co-Lead Counsel for Plaintiffs**

## APPENDIX A

Plaintiffs, by counsel and in accordance with this Court's Order dated January 26, 2007,

hereby supply the information responsive to Question Nos. 1-18 of the "Civil RICO Case-

Statement Order" published in Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION

(FOURTH), § 40.54 at 783-785 (2004):[2]

| Question No. | References to Paragraphs in Complaint |
|---|---|
| 1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d). | Plaintiffs' Third Cause of Action alleges that Defendants violated Section 1962(c) and (d) of RICO. ¶¶ 73-78. |
| 2. List each defendant, and state the alleged misconduct and basis of alleged liability of each defendant. | Plaintiffs' Third Cause of Action asserts civil RICO claims against Defendants Steinberg, Zeinfeld, Curran, Moratis and Westrick (collectively the "Individual Defendants"), Helgeson and CPG (collectively the "Defendants"). ¶¶ 73-78. Defendants' alleged misconduct and the bases of their alleged liability to Plaintiffs and the members of the Classes is alleged throughout the AmendedComplaint. *See, e.g.,* ¶¶ 1, 7-19, 20-23, 24-45, 73-78. |
| 3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer. | Not applicable. |
| 4. List the alleged victims, and state how each victim allegedly was injured. | The Amended Complaint identifies Plaintiffs and the members of the Classes, and explains how each of them lost money (property) by reason of Defendants' scheme(s) to frustrate, delay, or deny their rebate claims during the period from 2003 to present. ¶¶ 1, 7-19, 24-46, 73-78. |
| 5. Describe in detail the pattern of racketeering activity or collection for each RICO claim. | Plaintiffs' Third Cause of Action alleges that Defendants' "racketeering activity" consisted of numerous acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. ¶¶ 75-77. The predicate acts consisted of Internet website postings (including advertisements and offers to sell wireless devices |

---

[2]    Plaintiffs reserve the right to supplement the information provided in this Appendix in any Opposition they might file to any motion filed by any Defendant challenging the sufficiency of Plaintiffs' civil RICO claims.

| | |
|---|---|
| | and service plans), rebate offers, rebate claim forms, correspondence and e-mail messages sent and/or received by Plaintiffs, the members of the Classes, and the Individual Defendants, Helgeson and/or CPG concerning rebate claims submitted by Plaintiffs and the members of the Classes. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. In accordance with Rule 9(b), the "circumstances constituting fraud" are "stated with particularity" in the Complaint. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. Defendants' predicate acts of mail and/or wire fraud were part of a "common plan"; namely, a scheme to defraud Plaintiffs and the members of the Classes by frustrating, delaying and/or denying their rebate claims. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. Defendants' predicate acts of mail and/or wire fraud amount to or pose a threat of continuing activity because Defendants' scheme to defraud Plaintiffs and the members of the Classes has been carried out since at least February 2003 and continues to date. As set forth above, Plaintiffs allege that Defendants engaged in thousands of acts constituting mail fraud and/or wire fraud. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 6. Describe in detail the alleged enterprise for each RICO claim. | Plaintiffs' Third Cause of Action identifies three separate RICO enterprises: (a) InPhonic; (b) an association-in-fact between InPhonic and Helgeson; and (c) an association-in-fact between InPhonic and CPG. InPhonic, CPG and Helgeson are each a corporation, and each one was a member of their respective association-in-fact enterprises. ¶¶ 20-22, 74-76. These respective association-in-fact enterprises existed during the time period(s) when InPhonic maintained a contractual relationship with CPG and/or Helgeson to process rebate claims submitted by Plaintiffs and members of the Classes. During these respective contractual relationships, InPhonic and Helgeson and InPhonic and CPG functioned in a manner equivalent to a joint venture, and each of them had a common purpose, namely, to increase their respective profits by frustrating, delaying and, ultimately, denying rebate claims submitted by Plaintiffs and members of the Classes. The structure of each such association-in-fact enterprises will be evidenced by |

| | |
|---|---|
| | the respective contractual agreements between InPhonic and Helgeson and InPhonic and CPG, as well as their course(s) of dealing during the periods of time that each such association-in-fact enterprise existed; however, Plaintiffs allege that each such enterprise had a consensual decision-making structure. Each member of the respective associations-in-fact (InPhonic and Helgeson and InPhonic and CPG) jointly controlled and participated in the operation of that enterprise and its principal activity; namely, the processing of rebate claim forms submitted by Plaintiffs and the members of the Classes. Each of these separate corporate entities – InPhonic, Helgeson and CPG – had an existence separate and apart from the racketeering activities. ¶¶ 1, 7-19, 20-22, 74-76. |
| 7.  State whether you allege, and describe in detail, how the pattern of racketeering activity and the enterprise are separate or have merged into one entity. | Plaintiffs' Third Cause of Action alleges that Defendants' "pattern of racketeering activity," consisting of mail and/or wire fraud, is separate from the association-in-fact enterprises consisting of associations-in-fact between (a) InPhonic and Helgeson and (b) InPhonic and CPG. Each of these is a separate corporate entity that have (or had) an existence separate and apart from the "enterprise[s]" and the "pattern of racketeering activity." The "pattern of racketeering activity" will be shown by proof of the above-referenced uses of the U.S. mails and/or interstate wire facilities to carry out the scheme to defraud Plaintiffs and the members of the Classes by delaying, frustrating and/or denying their rebate claims. The association-in-fact enterprises will be shown by proof of the contractual relationships and courses of dealing between InPhonic and Helgeson and between InPhonic and CPG. ¶¶ 1, 7-19, 20-22, 74-76. |
| 8.   Describe the alleged relationship between the activities and the pattern of racketeering activity.   Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all. | InPhonic, Helgeson and CPG are (or were) each corporations.     Pursuant to a contractual relationship, from July 2005 to July 2006, Defendant CPG handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic.  Upon information and belief, during that one-year period InPhonic employees were present at CPG's processing centers to oversee the handling and processing of rebate claims submitted |

| | by Plaintiffs and members of the Classes. Pursuant to contractual relationship(s), from February 2003 to October 2005 and from July 2006 to late 2006 or early 2007, Defendant Helgeson handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic. The racketeering activity of mail and/or wire fraud consisted of Internet website postings, claim forms, correspondence and e-mail messages sent and/or received by Plaintiffs, the members of the Classes, and InPhonic, Helgeson and/or CPG concerning rebate claims submitted by Plaintiffs and the members of the Classes. To the extent that Defendants' uses of the U.S. mails and/or interstate wire facilities were intended to further their scheme to defraud Plaintiffs and the members of the Classes by frustrating, delaying, or denying their rebate claims, the "racketeering activity" differed from the usual, daily and lawful activities of the contractual relationships between InPhonic and Helgeson and between InPhonic and CPG. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
|---|---|
| 9.    Describe what benefits, if any, the alleged enterprise and each defendant received from the alleged pattern of racketeering activity. | The Amended Complaint alleges that each of the Defendants received economic benefits (namely, increased revenue, profits, salaries and bonuses) from the scheme to defraud Plaintiffs and the members of the Classes by frustrating, delaying, or denying their rebate claims. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 10.  Describe the effect of the activities of the enterprise on interstate or foreign commerce. | The Amended Complaint alleges that the Defendants conducted their respective business activities in interstate commerce. The rebate claims submitted by Plaintiffs and the members of the Classes were submitted via U.S. mail and/or interstate wire facilities. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 11.  If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information [omitted]. | Not applicable. |
| 12.  If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information [omitted]. | Not applicable. |
| 13.  If the complaint alleges a violation of If the complaint alleges a violation of 18 | The Third Cause of Action alleges that (a) the Individual Defendants were associated with the |

| | |
|---|---|
| U.S.C. § 1962(c), provide the following information: (a) state who is employed by or associated with the enterprise; and (b) state whether the same entity is both the liable "person" and the "enterprise" under section 1962(c). | enterprise InPhonic; (b) Helgeson was associated with the association-in-fact enterprise consisting of InPhonic and Helgeson; and (c) CPG was associated with the association-in-fact enterprise consisting of InPhonic and CPG. In each instance, the same entity is *not* alleged to be both the liable "person" and the "enterprise." ¶¶ 20-22, 74-76. |
| 14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy. | InPhonic, Helgeson and CPG are (or were) each corporations. The Individual Defendants were the principal officers of InPhonic. Pursuant to a contractual relationship, from July 2005 to July 2006, Defendant CPG handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic. Upon information and belief, during that one-year period InPhonic employees were present at CPG's processing centers to oversee the handling and processing of rebate claims submitted by Plaintiffs and members of the Classes. Pursuant to contractual relationship(s), from February 2003 to October 2005 and from July 2006 to late 2006 or early 2007, Defendant Helgeson handled rebate claims submitted by Plaintiffs and members of the Classes to InPhonic. During these respective time periods, the Individual Defendants conspired with Helgeson, and the Individual Defendants conspired with CPG to carry out a scheme to defraud to frustrate, delay, or deny claim forms submitted by Plaintiffs and the members of the Classes. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 15. Describe the alleged injury to business or property. | Plaintiffs and the members of the Classes lost money (property) by reason of Defendants' scheme to defraud by frustrating, delaying, or denying their rebate claims. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 16. Describe the relationship between the alleged injury and violation of the RICO statute. | Plaintiffs and the members of the Classes lost money (property) by reason of Defendants' scheme to defraud by frustrating, delaying, or denying their rebate claims. Defendants used Internet websites, correspondence, and e-mail communications to carry out their scheme to defraud. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 17. List the damages sustained by reason of the violation of section 1962, indicating the amount for which each defendant allegedly is liable. | Under Section 1964(c) of RICO, Defendants are jointly and severally liable for damages sustained by Plaintiffs and the members of the Classes caused by Defendants' RICO violations. Upon information and belief, during the Class Period, and pursuant to |

| | |
|---|---|
| | their scheme to defraud, Defendants frustrated, delayed, or denied hundreds of thousands of claim forms submitted by Plaintiffs and the members of the Classes. Assuming that the average rebate claim was worth $150, Defendants are jointly and severally liable for damages exceeding $35 million – before trebling. ¶¶ 1, 7-19, 20-22, 24-45, 75-77. |
| 18.  Provide any additional information that you feel would be helpful to the court in processing your RICO claim. | Not applicable. |