### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| **IN RE INPHONIC, INC., WIRELESS** | : | |
| **PHONE REBATE LITIGATION** | : | |
| ———————————————— | : | **Misc. Action No. 06-0507 (ESH)** |
| | : | **MDL Docket No. 1792** |
| **This Document Relates To:** | : | |
| **ALL CASES** | : | |
| ———————————————— | : | |

### DEFENDANT CONTINENTAL PROMOTION GROUP, INC.'S REPLY
### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### THE SECOND AMENDED COMPLAINT MUST BE DISMISSED

In its initial memorandum, Continental Promotion Group, Inc. ("CPG") pointed out several pleading deficiencies in the Second Amended Complaint. In their response, plaintiffs rely upon the Second Amended Complaint and do not seek leave to amend. Instead, their memorandum merely reiterates the same conclusory allegations contained in the Second Amended Complaint which are virtually devoid of any facts related to CPG. Plaintiffs have failed to plead CPG's involvement in the alleged predicate acts of mail or wire fraud to meet the pleading requirements of Rule 9(b). The RICO claims are further deficient in failing to allege an enterprise with an ongoing purpose and a separate identity from the alleged racketeering activity, or the involvement of CPG in the operation or management of the purported enterprise. The pleadings are similarly deficient in failing to state a RICO conspiracy or viable common law claims.

When scrutinized, plaintiffs' pleadings, as well as their memorandum in opposition, are nothing more than "labels and conclusions, and a formulaic recitation of

the elements of a cause of action" which, as stated by the Court in *Bell Atlantic*, simply "will not do." *See Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007).

### THE "FACTS" ALLEGED IN THE SECOND AMENDED COMPLAINT

The Second Amended Complaint, concededly, is not without many allegations of fact. The deficiency in the pleading, however, is the lack of operative facts alleged against CPG. Plaintiffs in their opposition memorandum make this even clearer. In their memorandum, plaintiffs expend over 10 pages discussing the "factual allegations" contained in the pleading. What becomes apparent, however, is that all of the alleged facts of any import relate to InPhonic and InPhonic only. For instance, by way of example, plaintiffs assert in their memorandum that the following alleged facts support their claims:

1. *InPhonic* advertised low after-rebate sales prices to solicit customers (plaintiffs memorandum p. 3);

2. *InPhonic* had various advertisements on its website for cellular phones and rebates (*Id.*, p. 4);

3. *InPhonic* advertised many of its wireless devices as being "better than free" (*Id.*, p. 5);

4. *InPhonic* advertised its post-rebate prices heavily on virtually all internet search engines and other websites (*Id.*);

5. *InPhonic's* growth and revenue were derived from its business practice involving rebate claims (*Id.*, p. 6);

6. *InPhonic* rebate offers uniformly fails to disclose that its rebates were subject to numerous material limitations (*Id.*);

7.    *InPhonic* hid certain material terms and conditions on internet websites (*Id.*);

8.    *InPhonic* rebate offers were illusory (*Id.* at p. 7);

9.    The rebate form (prepared by *InPhonic*) uniformly indicated that rebate checks would be received in 10 to 12 weeks (*Id.*).

Plaintiffs then argue that paragraphs 7 through 19 of the Second Amended Complaint contain the operative facts for the predicate acts to support the RICO claim. Highlighting two of the named plaintiffs, McGivney and Salzman, plaintiffs' memorandum reveals the deficiency in their own pleadings. First, the facts alleged for McGivney relate solely to InPhonic and Helgeson. As to plaintiff Salzman, plaintiffs allege that the Second Amended Complaint indicates that she sent the rebate form to Helgeson. InPhonic then instructed her to resubmit the claim to CPG (Plaintiffs' Memorandum, pp. 9-10 and Second Amended Complaint ¶ 15). Plaintiffs then allege that Salzman received an email message from *InPhonic* on January 20, 2006 that she had a valid rebate claim which was then followed by a February 5, 2006 *InPhonic* email that said the claim was denied and requesting additional information. Finally, plaintiffs allege on May 23, 2006, *InPhonic* informed Salzman that her rebate claim was invalid.[1] (*Id*).

No matter how much gloss plaintiffs attempt to add in the opposing memorandum, when stripped of the conclusions and the lumping together of the parties, the Second Amended Complaint has the following allegations against CPG:

1.    CPG received certain rebate forms from some of the plaintiffs (*see* Second Amended Complaint, ¶¶ 7 through 19);

---

[1] Plaintiffs then in footnote 7 allege that the Second Amended Complaint contained "similar allegations" as to the other named plaintiffs. Yet an examination of each of the referenced paragraphs 7-9, 11-14 and 16-19 for the plaintiffs other than Salzman and McGivney demonstrate no facts alleged as to contacts or communications directly with CPG other than the initial mailing of the rebate forms.

2.    CPG had a contract to process rebate claims from July 2005 to July 2006 (Second Amended Complaint, ¶ 21);

(3)    CPG did not comply with *InPhonic's* promised timeframe for processing rebates (Second Amended Complaint, ¶ 45).

Beyond these three allegations, the only remaining allegation is one made on "information and belief" that CPG was compensated more when claims were frustrated or later denied. This allegation is not sufficient to satisfy the pleading requirements for plaintiffs.[2]

## THE APPLICABLE STANDARD

CPG set forth the appropriate standards for this motion in its initial memorandum at page 9. Plaintiffs' memorandum in opposition attempts to restate the standards but does so in an incomplete fashion. Plaintiffs cite this Court's prior opinion in *Bell ex rel Albert R. Bell Living Trust v. Rotwein,* 535 F.Supp.2d 137, 141 (D.D.C. 2008) without completely stating the standards announced in that decision. As previously found by this Court, legal conclusions and inferences unsupported by the facts alleged need not be accepted by the court. *Id.* This Court in *Rotwein* also recognized the further development of the standards for a 12(b)(6) motion by the Supreme Court in *Twombly*, *supra*.

In *Twombly*, the U.S. Supreme Court considered the appropriate standards for a 12(b)(b) motion in conjunction with Rule 8(a) requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly* declined to read

---

[2] *See* e.g. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1279, n. 3 (D.C. Cir. 1994); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d, 1244, 1247 (2nd Cir. 1987); *Banco de Desarrollo Agropecuaro v. Gibbs,* 640 F.Supp. 1168, 1176 (S.D. Fl. 1986).

literally its prior statements in *Conley v. Gibson*, 355 U.S. 41 (1957) that a complaint should not be dismissed unless it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.* at 45-46.  The *Twombly* Court clarified the standards under Rule 8, holding that a pleading must present facts sufficient to go beyond a mere suspicion that the cause of action may be proven, 127 S. Ct. at 1965, and requiring that the complaint "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 1966.  The mere reciting of the elements of the cause of action and labels and conclusions in a "formulaic recitation" is insufficient.  *Id.* at 1965.  *See, also, Elemary v. Phillip Holzmann, A.G.*, 533 F.Supp.2d 116, 130 (D.D.C. 2008).

### PLAINTIFFS FAIL TO ADEQUATELY PLEAD THE PREDICATE ACTS FOR A RICO CLAIM

The D.C. Circuit, like other circuits, has established precedent requiring that the predicate acts of mail and wire fraud for a RICO claim must be pled with particularity pursuant to Rule 9(b).  This requires, at a minimum, that plaintiffs state the time, place and content of the misrepresentations and the method by which the misrepresentations were communicated.   *See* CPG's Initial Memorandum, pp. 10-12. *See, also, United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 153 (finding complaint adequate in describing the time, place and content of each alleged fraudulent act and the involvement of each individual defendant).   Rule 9(b) further requires that where multiple defendants are involved, the allegations should be made as to each of the defendants rather than simply lumping them together (CPG Initial Memorandum, p. 11).

In their opposing memorandum, plaintiffs acknowledge these requirements and argue that they have met them in paragraphs 7-19 and 76 of the Second

Amended Complaint (Plaintiffs' Memorandum, p. 24). Yet, as pointed out previously, the only factual allegations in paragraphs 7-19 alleged against CPG are that certain rebate claim forms were mailed to it and were never finally paid. Contrary to plaintiffs' arguments in their memorandum, the referenced allegations in paragraphs 7-19 do not provide the "who, what, when, where and how" as to the circumstances of any participation by CPG in the alleged predicate acts of mail or wire fraud.

Plaintiffs otherwise rely upon paragraph 76 of the Second Amended Complaint. Paragraph 76 asserts six separate activities for the alleged mail or wire fraud:

(a)    the posting of advertisements and offers to sell wireless devices and service plans (alleged in the factual section solely as an activity of InPhonic);

(b)    the receipt of rebate claims forms submitted by plaintiffs;

(c)    the accessing of rebate status check pages on the Internet sites allegedly maintained by *InPhonic*;

(d)    the receipt of communications from a service provider, such as Verizon, relating to rebate claims (not an activity in any way related to CPG);

(e)    correspondence "sent by InPhonic, Helgeson and/or CPG to plaintiffs" (whereas all the factual allegations in paragraphs 7 through 19 indicate all correspondence after the submission of the rebate claim form were with InPhonic); and

(f)    correspondence relating to processing of rebate claims (again all factual allegations of paragraphs 7 through 19 relate to InPhonic).

Thus, the sole fact asserted in paragraph 76 as to CPG is the receipt of rebate claim forms. The fact that rebate claim forms were submitted to CPG and not finally paid does not create even an inference that CPG participated in any alleged mail

or wire fraud. Plaintiffs admit their obligations under Rule 9(b). The referenced paragraphs do not satisfy these obligations. Therefore, the RICO claims should be dismissed.

Plaintiffs then alternatively suggest that if their pleadings are deficient, they should be permitted to conduct discovery, citing *New England Data Services, Inc. v. Becher,* 829 F.2d 286 (1st Cir. 1987).[3] Up until the time of filing their memorandum, plaintiffs have not proposed any specific discovery which they feel is necessary to meet their pleading requirements.[4] Plaintiffs' belated suggestion in their memorandum opposing the motion to dismiss should be read in light of the Supreme Court's recent statements in *Bell Atlantic.* In *Bell Atlantic,* the Supreme Court clarified the pleading requirements under Rule 8(a). Its statements are, however, equally germane to the heightened pleading requirements under Rule 9(b). In reversing the Second Circuit, the Supreme Court held that an antitrust conspiracy claim asserted under Section 1 of the Sherman Act required more than statements of "parallel conduct" to create a plausible claim for conspiracy.

In finding the claim insufficient, the Court also addressed the argument that a Rule 12(b)(6) motion should be more narrowly construed, as unsupported claims

---

[3] Plaintiffs suggest that *New England Data* was cited with approval in *Bates v. Northwestern Human Services, Inc.,* 466 F.Supp.2d 69, 93 (D.D.C. 2006). *Bates* cited *New England* with approval on the granting of leave to amend a pleading before dismissing, not for allowing discovery to be conducted, as is suggested by plaintiffs' memorandum.

Curiously, plaintiffs also cite *United States el rel Williams v. Martin-Baker Aircraft Co., Ltd.,* 389 F.3d 1255, 1256 (D.C. Cir. 2004), a case which upheld the dismissal of a claim under the False Claim Act for failure to meet the pleading requirements of Rule 9(b), and *Elemary v. Philipp Holzmann A.G.,* 533 F.Supp.2d 116 (D.D.C. 2008) a decision which dismissed the RICO claims against some of the defendants based on pleading deficiencies while denying a motion to dismiss RICO claims against another defendant.

[4] Plaintiffs were also provided with CPG's initial disclosure documents related to potential class certification issues, which included CPG's contract with InPhonic.

could be weeded out early in the discovery process. *Id.* at p. 942. The Court reasoned that something more should be required before allowing a defendant to be subjected to the costly and protracted discovery phase of an antitrust case which, in itself, had an in terrorem effect because of the potentially enormous expense. The Court recognized the burden of discovery could force a settlement for reasons other than the merits. *Id.* at p. 942. The cost of potential discovery in the current action is no less of a burden where plaintiffs are asserting a consolidated national class action. Without stating a plausible claim, plaintiffs should not be able to subject CPG to those expenses.

### THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE AN ASSOCIATION-IN-FACT ENTERPRISE

Plaintiffs base their RICO claim upon an "association-in-fact" enterprise. As established by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583 (1981), such an enterprise requires (1) a common purpose among the participants, (2) organization, and (3) continuity. "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583. Without requiring the enterprise to be separate from the predicate activity, any conspiracy to commit a fraud would automatically trigger the statute. *Vandenbroeck v. CommonPoint Mortgage*, 210 F.3d 696, 699 (6th Cir. 2000).

In *United States v. Perholtz*, 842 F.2d 343 (D.C. Cir. 1988), the D.C. Circuit recognized these three elements were required to establish an enterprise apart from the racketeering activity, *id*. at 363, even though the *evidence* of the predicate acts may coalesce with the evidence of the requisite separate enterprise. The *Perholtz* court further recognized that the repeated commissions of predicate acts do not necessarily create an enterprise, but there must be some organization apart from the predicate acts.

*Id.*[5]  *Perholtz*, however, does not stand for the proposition that plaintiffs do not need to separately allege this enterprise apart from the underlying predicate activity.

Plaintiffs attempt to discard the separate requirements of *Turkette* by arguing that all that is necessary at the pleading stage is to identify the members of the alleged association-in-fact enterprise, citing *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3rd Cir. 1984), *cert. denied* 469 U.S. 1211 (1985), and *Emcore Corp. v. Price Waterhouse Coopers LLP*, 102 F.Supp.2d 237 (D. N.J. 2000).  This is not the Third Circuit, however, but the D.C. Circuit, as plaintiffs have pointed out to the Court in previous positions in their memorandum.  *Seville* and *Emcore* simply are not applicable.  Neither are they persuasive in their reasoning as they would essentially remove any requirement to adequately plead an enterprise apart from the predicate activity.

In order for the enterprise element to have meaning separate and distinct from the underlying alleged pattern of racketeering activity, something must be alleged beyond defendant providing contract services.  *Bates v. Northwestern Human Services, Inc.*, 469 F.Supp.2d at 86.  *See, also,* CPG's Initial Memorandum, pp. 13-14, *and cases cited therein*.  Plaintiffs challenge this authority by putting up a "straw man" argument that RICO may be applied to parties involved in commercial contracts.  *See* Plaintiffs' Memorandum in Opposition, p. 17, fn. 13.  This obviously is not the point.  CPG agrees that in the proper circumstances under different facts, parties that are in a contractual

---

[5] *See, also, United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999) (referring to the three separate elements adopted from *Turkette* and confirmed in *Perholtz* and to the separate proof of organization and continuity apart from the predicate acts); *Bates v. Northwestern Human Services, Inc.*, 466 F.Supp.2d at 78-9 (requiring an ongoing structure organized in a manner for hierarchal or consensual decision-making).

relationship could also be involved in a separate RICO enterprise apart from the contractual relationship. The question presented, however, is whether plaintiffs' complaint here adequately states the elements for a separate enterprise composed of the contracting parties. It does not and, therefore, the RICO claims must be dismissed in this action, regardless of what may exist under other facts pled in other jurisdictions on other claims.

Nor do the cases cited support plaintiffs' broad reaching argument. For instance, plaintiffs cite *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992) for the proposition that every business contract can be called an association-in-fact enterprise. *River City* states that every business contract can be called an "association-in-fact" as the parties are in a contractual relationship. *Id*. at 1462. It does not state, however, that this association-in-fact through a contractual relationship necessarily also constituted an association-in-fact RICO enterprise. Plaintiffs also cite *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F.Supp.2d 172 (D. Mass. 2003). Yet, the court in *In Re Pharmaceutical* actually dismissed the RICO claims finding no allegation of enterprise between the various defendants.[6] 263 F.Supp.2d at 184.

Plaintiffs' memorandum again attempts to blur the separate pleading requirements for a RICO claim because they have alleged an association-in-fact enterprise. Plaintiffs assert because CPG is a separate corporation, the enterprise thus has

---

[6] Plaintiffs also cite *Dumas v. Major League Baseball Properties, Inc.*, 52 F.Supp.2d 1170 (S.D. Cal. 1999), an opinion that was vacated and withdrawn by subsequent decision on June 21, 2000. *See* 104 F.Supp.2d 1220. *Dumas*, a decision that was pulled back by the court issuing the opinion, certainly cannot constitute persuasive authority for plaintiffs' position.

an existence apart from the alleged predicate acts. This reasoning is flawed in two respects.

First, the *enterprise* must have a separate identity apart from the predicate activity. The fact that CPG as an alleged member of the enterprise has a separate identity from the association-in-fact enterprise is not the issue. The question is whether there is any separate identity of the enterprise apart from its alleged predicate acts. Plaintiffs assert that CPG and InPhonic never intended to process any rebate claims and, therefore, that all of the activities of the alleged CPG/InPhonic enterprise, "evidenced" by the CPG/InPhonic contract, would be the same as the alleged predicate acts. Thus, there is no separate identity of an enterprise to support a RICO claim.

Second, plaintiffs here fail to recognize the nature of the enterprise alleged as an association-in-fact rather than a separate legal entity. Plaintiffs cite *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996), *cert. denied* 519 U.S. 865 (1996), for the proposition that the existence of a separate corporate identity is sufficient to give the enterprise a separate identity from the predicate activity. That may well be the case when the enterprise itself is a separate legal entity. However, plaintiffs must meet the separate identity requirement for the alleged association-in-fact enterprise here. There is no separate corporate identity of the enterprise in the association-in-fact context, which is why *Turkette* and its progeny have developed the requirement of a separate showing of a common purpose, organization and continuity as a substitution for the separate legal identity of the claimed enterprise.

The issue is whether the pleadings in the current case allege a separate enterprise apart from CPG providing contractual services to InPhonic. It does not.

Plaintiffs rely upon paragraph 75 of the Second Amended Complaint and quote it in its entirety in their brief. Yet, paragraph 75 contains no factual allegations supporting a separate enterprise apart from CPG providing contractual services to InPhonic. Paragraph 75 alleges the following related to CPG:

1.  That InPhonic had a contractual relationship with CPG;

2.  That there was an "association-in-fact enterprise" between InPhonic and CPG from July, 2005 to July, 2006 (a conclusion and pleading of the legal elements unsupported by any factual allegations);

3.  That there was a common purpose to increase respective revenue and profits (without any factual allegation as to how CPG would be profited by this activity);

4.  That the structure of the enterprise was evidenced by the contractual agreement, which constituted a consensual decision-making structure; and

5.  That because CPG and InPhonic were separate corporations, they had a separate existence apart from the "racketeering activity."

These allegations wholly fail to establish a separate enterprise apart from providing contractual services. There are simply no facts alleged other than CPG had a contract to process rebate claims. There is *no allegation that the CPG/InPhonic enterprise had a separate identity* apart from the underlying alleged racketeering activity. When boiled down to substance rather than the conclusory pleading of the necessary elements, plaintiffs' claim against CPG is that providing contract services in processing rebates now makes it a member of a racketeering enterprise. Legitimate businesses should not be burdened with the enormous costs and damage to their business reputations without more heft to the claim.

**THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE
CPG'S PARTICIPATION IN THE CONDUCT OF THE
AFFAIRS OF THE ENTERPRISE**

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163 (1993), established

that in order to be liable under § 1962(c), a defendant must have participated, directly or

indirectly, in the conduct of the affairs of the enterprise.  In *Reves*, the Supreme Court

adopted an "operation or management" test, holding that to meet this standard, a

defendant must have some part in directing the affairs of the enterprise.  *Id*. at 179.  The

Supreme Court further made it clear that, under this standard, RICO would not reach to

complete "outsiders."  *Id*. at 185.

Plaintiffs argue that alleged activity of CPG in "delaying, frustrating,

and/or denying rebate claims" satisfies *Reves'* requirements.  This would eliminate any

separate requirement in *Reves* by reducing participation in the conduct of the affairs of

the enterprise to merely participating in the alleged predicate acts.  This is the same

argument made by the plaintiffs before the court in *Reves* which was rejected.

"Petitioners urge us to read 'conduct' as 'carry on,' Brief for Petitioners 23, so that almost

any involvement in the affairs of an enterprise would satisfy the 'conduct or participate'

requirement."  507 U.S. at 177-178.  If *Reves* is to have any continued meaning, it cannot

be subsumed in pleading defendant participated in the predicate acts.

Plaintiffs also rely upon cases referring to a "vertical chain of command,"

applying *Reves* to those who carry out the orders in the hierarchy of the enterprise.  *See*

*United States v. Oreto*, 37 F.3d 739 (1st Cir. 1994), *cert. denied* 513 U.S. 1177 (1995);

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 978 (7th Cir.

1995).  As pointed out by the court in *Oreto*, however, while those in the vertical chain of

command may be held as participating in the conduct of the affairs, *Reves* protects those in a "horizontal relationship" outside the chain of command unless they exercise some control over the enterprise.  37 F.3d at 750.

Plaintiffs' further attempt to essentially eliminate any restrictions on RICO claims under *Reves* by claiming that since they have alleged an association-in-fact enterprise, and that CPG was a member of this enterprise, this automatically meets the *Reves* standards.  The acceptance of plaintiffs' arguments would exclude *Reves*' application to association-in-fact enterprises and permit plaintiffs to merely allege in a conclusory fashion that a defendant was a member of such an association-in-fact enterprise and, therefore, *ipso facto*, must have participated in the enterprise's affairs.

Several courts since *Reves* have held that a party who contracts with a RICO person and may even have participated in the alleged predicate acts is not thereby conducting the affairs of the enterprise.  *See Vandenbroeck v. CommonPoint Mortgage Co.*, 210 F.3d at 700; *Goren v. New Vision Int'l., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998); *800537 Ontario, Inc. v. Auto Enterprises, Inc.*, 113 F.Supp.2d 1116, 1123 (E.D. Mich. 2000); *In Re Mastercard*, 132 F.Supp.2d 468, 486-87 (E.D. La. 2001), *aff'd* 313 F.3d 257 (5th Cir. 2002).

The D.C. District Courts have also followed this same reasoning in *Ulico Casualty Co. v. Professional Indemnity Agency, Inc.*, 1999 U.S. Dist. LEXIS 8591 (D.D.C. 1999); and in *Bates v. Northwestern Human Services, Inc.*, 468 F.Supp.2d 69, 86 (D.D.C. 2006).  *Ulico* properly dismissed a RICO claim finding that claims asserted against a party providing contract services for collecting and maintaining business records did not participate in the affairs of the enterprise.  *Id*. at ** 22-23.  Plaintiffs

attempt to distinguish this direct authority from the D.C. District in a footnote relying upon the distinction that while Ulico, like CPG, was an outside contract provider, the claims there did not involve an "association-in-fact enterprise." Plaintiffs contend that because they assert such an association-in-fact enterprise, any alleged member automatically must be viewed as having participated in the enterprise's affairs. This, again, is nothing more than arguing that *Reves* has no application to association-in-fact enterprise claims, an argument that this Court cannot adopt under the established RICO jurisprudence.

The question for this Court, then, is what are the lines of demarcation for *Reves* in its application to an independent contracting party, such as CPG? Will the Court permit unfounded RICO claims to proceed merely by alleging that a defendant contracted with an alleged racketeer and find this sufficient to constitute participation in the affairs of an association-in-fact enterprise? To read *Reves*' requirements as loosely and broadly as plaintiffs have asserted removes *Reves*' protection for those in a horizontal relationship providing contract services.

### THE RICO CONSPIRACY CLAIM MUST BE DISMISSED

The conspiracy claim under § 1962(d) must be dismissed because of the deficiencies in the 1962(c) claim in failing to plead CPG's involvement in the alleged predicate acts and an appropriate enterprise. If the § 1962(c) claim fails, then the conspiracy claim fails as well. *See First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2nd Cir. 2004). In addition, a conspiracy claim must meet its own pleading requirements regarding the defendant's agreement to knowingly facilitate the activities of the operators and managers of the alleged enterprise. *See Brouwer v.*

*Raffensperger*, 199 F.3d 961, 967 (7th Cir. 2000), *cert. den.* 530 U.S. 1243 (2000).  "Such conspiracy liability requires a showing that:  (1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the violation."  *United States v. Philip Morris*, 327 F.Supp.2d 13, 19 (D.D.C. 2004).

In their opposition memorandum, plaintiffs fail to even separately address the conspiracy claim, except to assert in footnote 15 that *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997), does not require that the pleadings meet the "operation or management" standard of *Reves*.  Yet, this does not remove the obligation to sufficiently plead the underlying predicate acts, as well as requiring plaintiffs allege that CPG agreed to conduct activities for those operating the enterprise in an illegal manner.  The RICO conspiracy claim must be dismissed where the allegations are insufficient to establish a primary RICO violation under 1962(c).

## PLAINTIFFS' UNJUST ENRICHMENT CLAIMS
## MUST BE DISMISSED

The sole factual allegation contained in the unjust enrichment claim is that defendants (collectively) were unjustly enriched by "unlawfully retaining rebate claim payments owed to Plaintiffs and the members of the Classes."  Second Amended Complaint, ¶ 89.  Yet, there is no factual allegation that any of the rebate claim payments owed to the plaintiffs or, for that matter, any of the initial purchase price paid by the plaintiffs, directly benefited CPG.  In their memorandum, plaintiffs tacitly admit that a claim for unjust enrichment generally requires that plaintiffs conferred a benefit upon the defendant, and argue for an exception to this requirement where the benefit has been

conferred on the defendant by a third party.  Neither the cited cases nor the alleged facts support this exception.

Plaintiffs cite *Standard Ins. Co. v. Burch*, 540 F.Supp.2d 98 (D.D.C. 2008), where the insurance company had mistakenly paid death benefits to the wrong party and sought to have them refunded, and *Cauderlier & Associates, Inc. v. Zambrana*, 527 F.Supp.2d 142 (D.D.C. 2007), where the plaintiff allegedly had paid for an interest in property which he did not receive and sought reimbursement of the funds.  Both these cases are straightforward applications of the doctrine of unjust enrichment and do not support plaintiffs' claims.

Plaintiffs then cite *In Re Lorazepam & Clorazepate Antitrust Lit.*, 295 F.Supp.2d 30, 51 (D.D.C. 2003).  The issue in *Lorazepam* was not whether the defendant had received a benefit, but whether plaintiffs had incurred the damage.  The plaintiffs were seeking recovery of alleged excess payments made to the defendants based upon asserted monopolization of the markets for certain prescription drugs.  The plaintiffs alleged that they had ultimately incurred the cost of the increased prices because they had absorbed the increase when reimbursing health care plans based upon existing contracts.  The court in *Lorazepam* found that under the unique facts and circumstances before it, this excess cost was ultimately paid by the plaintiffs and therefore they had stated a valid claim for unjust enrichment.  295 F.Supp.2d at 51.

Finally, plaintiffs cite *State Farm General Ins. Co. v. Defrancesco*, 288 Ill. App.3d 678; 681 N.E.2d 625 (1997), applying Illinois law.  *State Farm General* considered subrogation claims by an insurer who had paid a fire loss and sought to collect on the insured's contract with a third party for the purchase price of the building.  The

court recognized under Illinois law three circumstances creating an exception to the requirement that the plaintiff directly confer a benefit on the defendant: (1) where the benefit should have been given to plaintiff, but mistakenly was given to a third party; (2) where a defendant procured the benefit from a third party through wrongful conduct; and (3) where plaintiff has a superior claim to the benefit received by defendant. Ultimately, the Illinois Court of Appeals held that the exceptions to the direct benefit rule for unjust enrichment did not apply.  288 Ill. App.3d at 691; 681 N.E.2d at 634.

If this court chose to follow Illinois law, the exceptions still do not apply. There is no factual allegation that any of the plaintiffs' rebates were mistakenly paid to CPG.  There is no factual allegation that CPG obtained plaintiffs' funds through wrongful conduct against InPhonic.  There is no factual allegation that any of the funds paid by plaintiffs to InPhonic were directly transferred to CPG in any manner.  CPG was paid from the general funds of InPhonic based upon a contract for processing rebate claims. Even if the court considers the improper allegation[7] that CPG was paid more for denying claims, this still does not provide the necessary link for an unjust enrichment claim, but alleges nothing more than a payment to CPG by InPhonic for contract services.  There is no link that any of the funds initially paid by any plaintiffs were directed to CPG.  The unjust enrichment claim must fail as a matter of law.

### THE CIVIL CONSPIRACY CLAIM MUST BE DISMISSED

CPG argued that the civil conspiracy claim is deficient as a matter of law in that it fails to plead the requisite elements of an agreement to participate in unlawful acts.  Plaintiffs essentially do not dispute the necessary elements of this claim, but assert

---

[7] CPG pointed out in its initial memorandum that this allegation made on "information and belief" should not be given any merit.  *See* Initial Memorandum, p. 12 *and cited cases*.

that they have met the pleading requirements, citing to *Ellipso, Inc. v. Mann*, 2008 WL 852500 (D.D.C., Apr. 1, 2008).  Plaintiffs are correct that *Ellipso* held that a claim for civil conspiracy before that court survived a motion for summary judgment, but incorrect on the impact of that decision upon the current case.

In *Ellipso*, the evidence before the court supported the conclusion that the defendant, who had been retained to procure financing for the plaintiff, failed to disclose that he would individually profit from the loan and manipulated the loan and loan terms contrary to his fiduciary duties.  Defendant and a co-defendant formed a corporation as part of the loan scheme.  The court properly held that because the fraud claim was substantiated, the derivative civil conspiracy claim based upon the formation of a corporation to carry out the fraud was also sufficient to withstand a summary judgment motion.

Plaintiffs argue that the conspiracy claim here is supported by the alleged RICO claims.  First, the RICO claims are deficient as demonstrated *supra*.  Second, the necessary element for a civil conspiracy claim is a factual allegation of an agreement between the defendants to conduct an unlawful act.  It requires the additional factual assertion that CPG actually agreed with the Individual Defendants to carry out this alleged RICO violation.  Such factual allegations are wholly lacking from the civil conspiracy claim, making it deficient as a matter of law.  In fact, plaintiffs' other cited authority, *Second Amendment Foundation v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001), supports this conclusion.  In *Second Amendment Foundation*, the D.C. Circuit affirmed the district court's dismissal of a civil conspiracy

claim for lack of personal jurisdiction where the Complaint contained only conclusory allegations that the defendants "conspired together." *Id*. at 524.

The civil conspiracy claim, like the other claims asserted against CPG, is deficient as a matter of law and must be dismissed.

## CONCLUSION

The Second Amended Complaint is deficient in stating any viable claim for relief against CPG. While the Second Amended Complaint may or may not be sufficient to state claims against InPhonic, InPhonic's bankruptcy has barred plaintiffs' recovery against that party in this proceeding. The unfortunate circumstance for plaintiffs that InPhonic has filed for protection under the bankruptcy laws, however, does not give the plaintiffs a license to attempt to transfer that liability to CPG as a contract provider to InPhonic. This Court should dismiss the Second Amended Complaint in its entirety as it relates to the claims against CPG.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP

  /s/ C. Philip Campbell, Jr.
C. Philip Campbell, Jr.
Florida Bar No. 160973
101 East Kennedy Blvd., Suite 2800 (33602)
P. O. Box 172609
Tampa, Florida 33672-0609
(813) 229-7600 / (813) 229-1660 (Fax)
pcampbell@slk-law.com
Attorneys for Continental Promotion
Group, Inc.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of June, 2008, the foregoing Defendant Continental Promotion Group, Inc.'s Reply Memorandum in Support of Motion to Dismiss was filed with the Court's electronic filing system, which provides service on all counsel of record for Defendant, and on Interim Co-Lead Counsel and Liaison Counsel for Plaintiffs for transmission by them to other Plaintiffs' counsel not registered on the Court's electronic filing system.

                             /s/ C. Philip Campbell, Jr.
                             C. Philip Campbell, Jr.