UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION  This Document Relates to: ALL CASES | Misc. Action No. 06-0507 (ESH) MDL Docket No. 1792 |

### HELGESON ENTERPRISES, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Helgeson Enterprises, Inc. ("Helgeson"), by counsel, submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (the "Complaint").

### INTRODUCTION

Plaintiffs' Opposition brief reinforces the fatal flaws in the Complaint described by Helgeson in its opening memorandum. Most importantly, Plaintiffs' Opposition spotlights the complete absence of any facts showing that Helgeson engaged in any acts of racketeering.

The alleged fraudulent scheme involves advertisements of rebates that allegedly were false, misleading, and illusory. As Plaintiffs themselves admit, the allegedly misleading and deceptive rebate advertisements were disseminated by **InPhonic and the Individual Defendants**, not by Helgeson. (Opp. at pp. 2-3, 4, 5, 6). The rebates were advertised on **InPhonic's** website, not on Helgeson's website. (Opp. at pp. 4, 5, 6). The rebates were to be paid by **InPhonic**, not Helgeson. (Opp. at p. 6). And the alleged fraud was committed by **InPhonic**, not Helgeson. (Opp. at p. 6) (**InPhonic** failed to disclose that its rebates were subject to material limitations; **InPhonic** hid material terms and conditions from customers; **InPhonic**

intentionally used smaller-sized typefaces and fonts to deemphasize the importance of material terms and conditions).

Plaintiffs' characterization of the fraudulent "scheme" on pages 8 - 10 of their Opposition further illustrates Helgeson's lack of involvement in that scheme. Plaintiff McGivney alleges that she purchased a wireless phone and service through **InPhonic**. She says that **InPhonic** agreed to provide her with rebates, and that **InPhonic** established requirements to obtain the rebates. She allegedly satisfied those requirements, and submitted her rebate claim to Helgeson. Despite extensive communications with **InPhonic**, she has not received the rebates. Similarly, Plaintiff Salzman purchased two camera phones from **InPhonic**. She says that **InPhonic** agreed to provide a rebate for each phone, and that **InPhonic** established terms and conditions for the rebate. She sent her rebate form to Helgeson, and received a response from **InPhonic** stating that **InPhonic** had lost her claim in **InPhonic's** system. **InPhonic** told her to resubmit her claim to CPG, which she allegedly did. Thereafter, **InPhonic** repeatedly asked her to resubmit the rebate claim, **InPhonic** told her the claim was being processed, and **InPhonic** ultimately denied the claim because certain information was missing. **InPhonic** directed her to provide the missing information, which she did. **InPhonic** then declared her claim to be invalid.

Only one other Plaintiff (Pevnick) makes any allegations against Helgeson. Those allegations are "entirely consistent with the allegations made by Plaintiffs McGivney and Salzman." (Opp. at p. 10, n. 7). Taken in the light most favorable to the Plaintiffs, the allegations show nothing more than that Helgeson received rebate claim forms from three Plaintiffs, and that InPhonic failed to pay the rebates. As a matter of law, these allegations are insufficient to state a RICO claim against Helgeson.

# ARGUMENT

The principal flaw in Plaintiffs' Complaint is the complete absence of factual allegations to support the causes of action asserted therein against Helgeson. Plaintiffs first try to excuse this by arguing that the Complaint need only contain a "short and plain statement of the claim." (Opp. at p. 1). Like Plaintiffs' other arguments, their recitation of the standard of review is incomplete and inaccurate.

In Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (2007), the Supreme Court explained that the "plain statement" of the claim must possess enough "heft" to show that the pleader is entitled to relief. Id. at 1966. This showing cannot be made by alleging "conclusions" or by a "formulaic recitation of the elements of a cause of action." Id. at 1964-65. Instead, the factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 1965.[1]

Plaintiffs' Complaint fails to satisfy the requirements articulated in Twombly. The Complaint is nothing more than a "formulaic recitation" of the elements of a RICO claim mixed with conclusions. There are no **facts** establishing the requisite elements of the asserted claims against Helgeson. Accordingly, for the reasons that follow, the Complaint must be dismissed.

    A.    **PLAINTIFFS FAIL TO ALLEGE FACTS TO STATE A RICO CLAIM AGAINST HELGESON UNDER 18 U.S.C. § 1962(c)**

        1.    The Complaint Fails to Sufficiently Allege Predicate Acts of Racketeering by Helgeson.

To determine whether Plaintiffs have sufficiently alleged predicate acts of racketeering, the Court must distinguish the allegations made against Helgeson from those made against

---

[1] Plaintiffs note that their Complaint is 53 pages long. While this is a "hefty" complaint, the length of a complaint is not what the Supreme Court was contemplating in Twombly. "Heft" as used in Twombly refers to factual allegations, as opposed to legal conclusions or mere recitation of the elements of a claim. In this regard, the Complaint is woefully deficient as to Helgeson.

others, in particular InPhonic and the Individual Defendants.  See <u>Bates v. Northwestern Human Servs, Inc.</u>, 466 F. Supp. 2d 69, 92 (D.D.C. 2006) (when alleging a fraudulent scheme under RICO, plaintiff must distinguish between the defendants); <u>see</u> also <u>Intex Recreation Corp. v. Team Worldwide Corp.</u>, 390 F. Supp. 2d 21, 24 (D.D.C. 2005) ("The particularity requirement of Rule 9(b) demands that the pleader specify what [fraudulent] statements were made and in what context, when they were made, <u>who made them</u>, and the manner in which the statements were misleading.") (emphasis added).

Plaintiffs argue that the predicate acts of racketeering committed by Helgeson are alleged with particularity in paragraphs 7 – 19, and 76, of the Complaint.  (Opp. at p. 23).  This simply is not so.  Helgeson is not even mentioned in paragraphs 7 – 9, 11 – 14, 16, and 18 – 19; therefore, those paragraphs fail to support any claims against Helgeson.  In paragraph 10, plaintiff McGivney alleges that she submitted her rebate form to Helgeson.  In paragraph 15, plaintiff Salzman alleges that she sent her rebate form to Helgeson.  And in paragraph 17, plaintiff Pevnick alleges that he mailed his rebate form to Helgeson.  **There are no other allegations in these paragraphs against Helgeson.**

These allegations do not show that Helgeson engaged in an act of racketeering.  Instead, they show that Helgeson engaged in "ordinary commercial activities" which this Court has held are beyond the reach of RICO.

> Although RICO is an important law which has done much good to combat organized crime, **too many private litigants have distorted the law in an effort to reach activities RICO was never intended to address.**  It is a blatant misapplication of RICO's treble damages remedy to seek to reach ordinary commercial activities such as that alleged by [the plaintiff].

<u>Edmondson & Gallagher v. Alban Towers Tenants Ass'n</u>, 829 F. Supp. 420, 424 (D.D.C. 1993), <u>aff'd in relevant part, remanded in part</u>, 48 F.3d 1260 (D.C. Cir. 1995) (emphasis added).

Regency Communications, Inc. v. Cleartel Communications, Inc., 160 F. Supp. 2d 36 (D.D.C. 2001), relied on by the Plaintiffs, actually supports Helgeson's motion to dismiss. There, this Court denied a motion for summary judgment, finding evidence that the defendant did not merely breach a contract, but engaged in fraudulent conduct within the scope of RICO. Id. at 44. In this case, there are no facts alleged showing fraudulent conduct by Helgeson. Absent fraud, there is no viable RICO claim in this case. Id. ("It is also well-accepted that a simple breach of contract claim, uncolored by any acts of deception, does not constitute a mail fraud.").

Paragraph 76 is more of the same. Paragraph 76(a) references the posting of advertisements and rebate claim forms on Internet websites maintained by **InPhonic**. As clearly alleged throughout the Complaint, **InPhonic** advertised the rebates, not Helgeson. Paragraph 76(b) references the receipt of rebate claim forms. Helgeson allegedly received three such forms, but as explained above this is an "ordinary commercial activity" and not an act of racketeering. Paragraph 76(c) identifies the accessing by Plaintiffs of an Internet website maintained by **InPhonic**. Paragraph 76(d) identifies the receipt of communications from service providers relating to rebate claims. Helgeson is not even mentioned.

Paragraph 76(e) alleges that the predicate acts consist of correspondence sent by InPhonic, Helgeson and/or CPG to Plaintiffs and members of the Class. The Complaint does not, however, identify any correspondence sent by Helgeson to Plaintiffs or members of the Class. Paragraph 76(f) alleges that the predicate acts consist of correspondence, telephone conversations, facsimile transmissions, and e-mail communications between Plaintiffs and members of the Class, and InPhonic, Helgeson and/or CPG. The only alleged correspondence or

communications between Plaintiffs and Helgeson are the rebate forms submitted by Plaintiffs McGivney, Salzman and Pevnick to Helgeson.[2]

The totality of the **facts** (as opposed to the legal conclusions) alleged by Plaintiffs against Helgeson in paragraphs 7 – 19, and 76, merely shows that Helgeson received rebate claim forms. While there may be additional allegations against InPhonic, the Court must evaluate the sufficiency of the allegations against Helgeson by looking only at the allegations pertaining to Helgeson. See United States v. Crysopt Corp., 781 F. Supp. 375, 384 (D.Md. 1991) ("While the overall fraudulent scheme alleged in the instant case is grand in scale, the Court must look to the predicate acts with which [the defendant] itself is charged in determining whether a pattern of racketeering activity may be established against it.")  In the absence of facts (as opposed to conclusions) directed to Helgeson, the RICO claims must be dismissed. See Western Assocs. Ltd. Partnership v. Market Sq. Assocs., 235 F.3d 629, 634 (D.C. Cir. 2001) (affirming dismissal of RICO complaint containing only "legal conclusions cast in the form of factual allegations" and "inferences . . . unsupported by the facts set out in the complaint").[3]

---

[2] Plaintiffs allege, upon information and belief, that Helgeson would receive additional compensation from InPhonic if the rebate claims were frustrated, delayed, or denied. (Complaint, ¶ 45). Pleadings on information and belief "require an allegation that the necessary information lies within the defendant's control" and must "be accompanied by a statement of the facts upon which the allegations are based." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994).  Plaintiffs have failed to comply with these requirements with regard to the allegations in paragraph 45.  Therefore, those allegations cannot be considered.  Moreover, Plaintiffs have copies of Helgeson's contracts with InPhonic, but have not attached the contracts to the Complaint.  They failed to do so because the contracts do not state that Helgeson would receive additional compensation for frustrating, delaying or denying rebate claims.

[3] Plaintiffs argue that the Complaint should not be dismissed, but that they should be allowed to conduct discovery. (Opp. at p. 25).  This simply is not an option.  See Kowal, 16 F.3d at 1279 n. 3 (purpose of Rule 9(b) is to "prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs"); see also Twombly, 127 S. Ct. at 1966-67 (discussing the substantial cost of discovery and explaining that a complaint must contain sufficient allegations before the plaintiff is permitted to proceed with discovery).

      2.    <u>Plaintiffs Fail to Allege a Proper RICO Enterprise</u>.

          a.    <u>Plaintiffs Must Do More Than "Identify" the Members of the Enterprise</u>.

Plaintiffs mistakenly argue that their only pleading obligation is to "identify" the members of the alleged RICO enterprise. (Opp. at p. 15). Controlling case law makes clear that a cognizable RICO enterprise is one which (1) is distinct from the alleged pattern of racketeering activity, <u>United States v. Morrow</u>, 2005 U.S. Dist. LEXIS 11753 (D.D.C. June 13, 2005); and (2) is an ongoing organization with an identifiable structure that functions as a continuing unit, <u>Bates</u>, 466 F. Supp. 2d at 79. Additionally, a plaintiff must allege that the defendant exerts control or direction over the RICO enterprise. <u>Ulico Casualty Co. v. Professional Indemnity Agency, Inc.</u>, 1999 U.S. Dist LEXIS 8591 (D.D.C. May 5, 1999) (granting motion to dismiss for failure to sufficiently allege control). The absence of any of these requirements is fatal to Plaintiffs' RICO claim. Here, none are satisfied.

          b.    <u>The Enterprise is not Alleged to be Distinct from the Pattern of Racketeering Activity</u>.

"The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). In its opening memorandum, Helgeson explained that Plaintiffs had failed to allege facts showing that the association-in-fact enterprise of Helgeson and InPhonic existed separate and apart from the pattern of racketeering activity. (Mem. at pp. 12 - 13). Plaintiffs' response to this argument, relegated to a footnote on page 19 of its Opposition, shows a fundamental misunderstanding of this issue. There, Plaintiffs say that "[b]ecause InPhonic, CPG and Helgeson are each corporations, the alleged association-in-fact enterprises necessarily have an existence separate and apart from the pattern of racketeering activity in which they allegedly

- 7 -

engaged." The fact that **InPhonic** and **Helgeson** are corporations does not, however, support the legal conclusion that the **InPhonic/Helgeson association-in-fact** enterprise is separate from the racketeering activity in which it allegedly engaged. This is because neither Helgeson nor InPhonic is the alleged enterprise – – instead, the enterprise is the **association-in-fact** of Helgeson and InPhonic. It is, therefore, irrelevant that Helgeson and InPhonic may exist separate and apart from the pattern of racketeering activity. The real question is whether the association-in-fact is separate from the pattern of racketeering activity.

To answer this question, the Court need only look to the allegations in paragraphs 75 and 76 of the Complaint. There, Plaintiffs allege that:

- the "common purpose" of the InPhonic/Helgeson "enterprise" was "to increase their respective revenue and profits by frustrating, delaying, and, ultimately, denying rebate claims submitted by Plaintiffs and members of the Classes." (Complaint, ¶ 75).

- Helgeson committed acts of mail fraud and wire fraud in furtherance of a scheme to defraud, "namely, the frustration, delay and/or denial of a rebate claim form submitted by Plaintiffs and the members of the Classes." (Complaint, ¶ 76).

Thus, the alleged enterprise existed to frustrate, delay and deny rebate claims, and the pattern of racketeering activity was the fraudulent scheme of frustrating, delaying and denying rebate claims. These allegations conclusively establish that the alleged enterprise is not distinct from the alleged pattern of racketeering activity. Accordingly, Plaintiffs fail to allege a proper RICO enterprise, and the Complaint fails to state a RICO claim under 18 U.S.C. § 1962(c).

      c.    <u>There are no Allegations Showing Continuity and Structure of the Alleged Enterprise</u>.

Plaintiffs concede that an enterprise must have continuity and structure. (Opp. at p. 15). They cite to <u>United States v. Philip Morris</u> to support their position that they have sufficiently alleged these elements, but any attempt to analogize the allegations in this case to the facts in

Philip Morris must fail. In Philip Morris, the United States brought a RICO action against eleven tobacco companies who orchestrated a scheme lasting **50 years** to misrepresent and conceal the health effects of smoking. The enterprise was a group of business entities and individuals associated-in-fact, including the tobacco companies. United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 867 (D.D.C. 2006). They coordinated their activities and carried out their scheme by, among other things, forming and jointly funding entities and committees, publishing articles and studies, issuing press releases, and funding research for the common purpose of bolstering their knowingly false position that tobacco use was not harmful. Id. at 870-71. Obviously, an enterprise that functions for 50 years and engages in such conduct has continuity and structure.

Plaintiffs rely exclusively on the allegations in paragraph 75 of the Complaint to show that the alleged "association-in-fact" enterprise of Helgeson and InPhonic has continuity and structure. Paragraph 75, however, reveals that the alleged enterprise existed only for two discrete time periods – – February 2003 to October 2005, and July 2006 to late 2006 or early 2007. These are the exact time periods of Helgeson's contract with InPhonic. No identifiable structure is alleged. Thus, rather than allege a cognizable enterprise, Plaintiffs have merely alleged a contractual relationship between Helgeson and InPhonic. Indeed, Plaintiffs admit this in their Complaint, when they allege that the structure of the enterprise is evidenced by the contract between Helgeson and InPhonic. (Complaint, ¶ 75). Merely alleging a business relationship, without more, does not constitute an enterprise. Ulico Casualty, 1999 U.S. Dist. LEXIS 8591, at *21-22.

        d.    <u>Plaintiffs Fail to Sufficiently Allege that Helgeson Exerted Control or Direction Over the RICO Enterprise.</u>

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." In order to violate this statute, the defendant must have some part in directing the enterprise's affairs. <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993); <u>see also</u> <u>Ulico Casualty</u>, 1999 U.S. Dist. LEXIS 8591, at *21-22 (RICO defendant must exert control or direction over the RICO enterprise).

Quoting various cases, Plaintiffs argue that the "direction or control" requirement is satisfied because Helgeson was a "lower-rung member" of the enterprise which "knowingly implemented management's decisions." (Opp. at pp. 21-22). The problem for Plaintiffs is that there are no factual allegations (as opposed to legal conclusions) to support this argument.

The only allegation in the Complaint that speaks to the issue of control or direction is in paragraph 75.

> Each member of the respective associations-in-fact (InPhonic and Helgeson and InPhonic and CPG) jointly controlled and participated in the operation of that enterprise and its principal commercial activity; namely the processing of rebate claim forms submitted by Plaintiffs and members of the Classes.

This allegation is nothing more than a "formulaic recitation" of the element of control, with absolutely no facts to support it. Indeed, the facts that are alleged simply show that Helgeson received rebate forms from Plaintiffs, not that Helgeson exerted control or direction over the enterprise's affairs.

<u>Reves</u> makes clear that Plaintiffs' allegations are inadequate. There, the Supreme Court rejected the argument that simply being involved in the affairs of the enterprise could constitute a violation of § 1962(c). <u>Reves</u>, 507 U.S. at 177-78; <u>see also</u> <u>Ulico Casualty</u>, 1999 U.S. Dist.

LEXIS 8591, at *22 - 22 (allegation of a mere "business relationship" or that the defendant "performed services" for the enterprise is not enough to establish an enterprise). At best, Plaintiffs have alleged that Helgeson and InPhonic had a business relationship, and Helgeson performed services (receiving rebate forms) for the alleged enterprise. Without more, these allegations are insufficient to allege an enterprise. The RICO claim under § 1962(c) should be dismissed.

      **B.    PLAINTIFFS FAIL TO ALLEGE ANY FACTS TO SUPPORT THE RICO CONSIPIRACY CLAIM**

As Helgeson pointed out in its opening memorandum, a prerequisite for liability under the RICO conspiracy statute (18 U.S.C. § 1962(d)) is that Helgeson **knowingly agreed** to the commission of a violation of 18 U.S.C. § 1962(c). United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 901 (D.D.C. 2006). Plaintiffs must allege facts, not legal conclusions, showing that Helgeson knowingly agreed with the other defendants to violate RICO. Wright v. Towns, 1991 U.S. Dist. LEXIS 12527, at *9 (D.D.C. 1991) ("[A] civil RICO conspiracy complaint must contain, at least, specific allegations of an agreement to commit at least two predicate acts.").

Plaintiffs did not, because they could not, address this issue in their Opposition. To be sure, the Complaint contains a "formulaic recitation" of the elements of a conspiracy, and states the legal conclusion that Helgeson "conspired" to violate RICO. (Complaint, ¶ 77). But there are no **facts** suggesting "how each of the defendants, through words or actions, reached an agreement." Nat'l Group for Communications and Computers Ltd. v. Lucent Techs, Inc., 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006). Absent such facts, the RICO conspiracy claim must be dismissed.

In addition, Plaintiffs' failure to state claims under § 1962(c) requires dismissal of the conspiracy claim under § 1962(d). Plaintiffs' argument that the Supreme Court held to the

contrary in Salinas v. United States, 522 U.S. 52 (1997) is incorrect. The Court made clear in Beck v. Prupis, 529 U.S. 494, 506 n.10 (2000), that it has not resolved this question. However, the consensus of the Courts of Appeal is that a conspiracy claim under § 1962(d) must be based on a properly alleged claim under § 1962(c). See, e.g., Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000); First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004); GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 551 n.2 (4th Cir. 2001); Craigshead v. E.F. Hutton & Co., 899 F.2d 485, 495 (6th Cir. 1989); Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000), cert. denied, 531 U.S. 828 (2000); Tal v. Hogan, 453 F.3d 1244, 1270 (10th Cir. 2006). As the Ninth Circuit explained in Howard, "[e]ven if Plaintiffs properly claimed that the defendants agreed to be part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO." 208 F.3d at 751. Therefore, the claim for conspiracy to violate RICO must be dismissed.[4]

**C.  PLAINTIFFS' UNJUST ENRICHMNET AND CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW**

1.  <u>The Unjust Enrichment Claim Fails Because Plaintiffs do not Allege Facts that Helgeson Retained Rebate Claim Payments Owed to Plaintiffs.</u>

As with their RICO claim, Plaintiffs in their unjust enrichment claim make no substantive factual allegations against Helgeson. Instead, they lump together the Defendants, alleging the legal conclusion that "Defendants have been unjustly enriched by unlawfully retaining rebate claim payments owed to Plaintiffs and the members of the Classes." (Complaint, ¶ 89). Not only is this conclusion unsupported by any facts as to Helgeson, it is contradicted by the facts

---

[4] Plaintiffs also must allege the existence of a RICO enterprise in order to state a claim for a RICO conspiracy. Philip Morris, 449 F. Supp. 2d at 901. For the reasons already provided, Plaintiffs have failed to sufficiently allege a RICO enterprise, thereby dooming their RICO conspiracy claim.

alleged against InPhonic. Those allegations are that Plaintiffs purchased wireless phones from **InPhonic** based on **InPhonic's** promise to pay rebates to Plaintiffs. Accordingly, if "retaining rebate claim payments" constitutes unjust enrichment, the only entity which has been unjustly enriched is **InPhonic**.

Recognizing their pleading deficiency, Plaintiffs argue that unjust enrichment exists where a benefit is transferred to a defendant by a third party. (Opp. at p. 27). There are at least two problems with this argument. First, it is not based on District of Columbia law. The Complaint specifically states that the unjust enrichment claim is brought under District of Columbia law, but the claims in In re Lorazepam & Clorazepate Antitrust Litigation, 295 F. Supp. 2d 30 (D.D.C. 2003), cited by Plaintiffs, were not decided under District of Columbia law. Id. at 33. Second, there are no **facts** alleged in the Complaint that the rebate claims allegedly owed by InPhonic to Plaintiffs were paid to Helgeson. Absent such allegations, Plaintiffs' argument fails, and the unjust enrichment claim must be dismissed.

>    2.   The Conspiracy Claim Fails because there are no Facts Alleged Showing that Helgeson Agreed to Participate in an Unlawful Activity.

Plaintiffs concede that a conspiracy requires an agreement between two or more persons to participate in an unlawful act. (Opp. at p. 28). The Complaint, however, fails to allege **facts** showing that Helgeson entered into such an agreement. All that is alleged is the legal conclusion that Helgeson "conspired" with the Individual Defendants. No facts are offered to show when, where and how this conspiracy occurred, and which of the Individual Defendants was involved. Simply asserting the conclusion of a conspiracy, without supporting facts, is insufficient to state a claim for conspiracy. See Cadet v. Draper & Goldberg, PLLC, 2007 U.S. Dist. LEXIS 72504, at *47-48 (D.D.C. Sept. 28, 2007) (granting motion to dismiss conspiracy claim because

plaintiffs "failed to plead any facts to establish the existence of such a specific agreement between defendants").   That claim should be dismissed.

## CONCLUSION

For the reasons stated herein and in its opening memorandum, Helgeson requests that the Court enter an Order dismissing the Complaint with prejudice.

DATED:  JUNE 4, 2008

Respectfully submitted,

LECLAIRRYAN, A Professional Corporation

  /s/ Megan S. Ben'Ary
Megan S. Ben'Ary (D.C. Bar No. 493415)
LeClairRyan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, VA  22314
Telephone No.:  (703) 684-8007
Facsimile No.:   (703) 684-8075
Megan.Benary@leclairryan.com

Thomas A. Coulter (D.C. Bar No. 436423)
LeClairRyan, A Professional Corporation
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone No.:  (804) 916-7103
Facsimile No.:  (804) 783-2294
Thomas.Coulter@leclairryan.com

***Counsel for Defendant Helgeson Enterprises, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of June, 2008, the foregoing pleading was filed with the Court's electronic filing system, which provides service on all counsel of record for Defendants, and on Interim Co-Lead Counsel and Liaison Counsel for Plaintiffs for transmission by them to other Plaintiffs' counsel not registered on the Court's electronic filing system.

/s/ Megan S. Ben'Ary
Megan S. Ben'Ary