IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Misc. Action No. 06-0507 (ESH)<br>MDL Docket No. 1792 |

# MOTION FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES

JOHN R. CLIMACO
CLIMACO, LEFKOWITZ, PECA, WILCOX & GAROFOLI, L.P.A.
888 16th Street, N.W., Suite 800
Washington, DC 20006
Telephone: (202) 349-9864
E-mail: JRCLIM@climacolaw.com

STEPHEN A. HART
SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
One IBM Plaza, Suite 200
300 North Wabash Avenue
Chicago, IL 60611
Telephone: (312) 645-7920
E-mail: shart@smsm.com

KEVIN P. RODDY
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: kroddy@wilentz.com

**Co-Lead Counsel for Plaintiffs**

## MOTION FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on a date and at a time to be determined by the Court, Plaintiffs, Edwin Davis, Paul Rock, Hongyi Yu, Barbara McGivney, Ryan Sutherland, Walter Cover, Melinda Roquemore, Luis Morales, Shelly Salzman, Jonathan Feldman, Joshua Pevnick, Stanley J. Heller and Iona Workman ("Plaintiffs"), by their undersigned counsel and pursuant to the Settlement Agreement and Mutual Release dated August 6, 2009, and the Court's Minute Order dated September 3, 2009, will and hereby do file their Motion for Payment of Attorneys Fees and Expenses. Plaintiffs' Motion, which will be presented to the Honorable Ellen Segal Huvelle, Judge of the United States District Court for the District of Columbia, E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001, seeks an award of attorneys' fees and expenses not to exceed $950,000.

Plaintiffs' Motion will be based on the attached Memorandum of Points and Authorities, and the accompanying Declarations of Steven A. Hart, John R. Climaco and Kevin P. Roddy, as well as all pleadings and documents on file with this Court.

Dated: September 30, 2009

Respectfully Submitted,

CLIMACO, LEFKOWITZ, PECA, WILCOX
& GAROFOLI CO., L.P.A.

By: /s/ John R. Climaco
JOHN R. CLIMACO

888 16th Street N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 349-9864
E-mail: jrclim@climacolaw.com

SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.

By: /s/ Steven A. Hart
STEVEN A. HART

Willis Tower, Suite 5500
233 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 645-7800
E-mail: shart@smsm.com

WILENTZ, GOLDMAN & SPITZER, P.A.

By: /s/ Kevin P. Roddy
KEVIN P. RODDY

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: kroddy@wilentz.com

**Co-Lead Counsel for Plaintiffs**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES**

## I. INTRODUCTION

Plaintiffs, Edwin Davis, Paul Rock, Hongyi Yu, Barbara McGivney, Ryan Sutherland, Walter Cover, Melinda Roquemore, Luis Morales, Shelly Salzman, Jonathan Feldman, Joshua Pevnick, Stanley J. Heller and Iona Workman ("Plaintiffs"), by counsel and pursuant to the parties' Settlement Agreement and Mutual Release (the "Settlement Agreement") dated August 6, 2009, and the Court's Minute Order dated September 3, 2009, respectfully request that this Court enter an Order awarding them attorneys' fees and expenses in the amount of $950,000. (A true and correct copy of the Settlement Agreement is attached hereto as ***Exhibit A***.)

Plaintiffs' motion, and this Court's anticipated award of fees and expenses, will conclude the litigation of 15 separate actions that were consolidated before this Court by the Judicial Panel on Multidistrict Litigation in November 2006. *In re InPhonic, Inc., Wireless Phone Rebate Litigation,* MDL Docket No. 1792. Plaintiffs originally brought the related actions with the primary goals of (a) enjoining an ongoing and widespread pattern of consumer fraud being carried out by InPhonic Corporation ("InPhonic") and its principals, and (b) obtaining compensation for the victims of the scheme. However, as recited in Plaintiffs' Consolidated Second Amended Class Action Complaint ("SAC") (Document 54 – filed March 21, 2008), once the scheme to defraud consumers was exposed by the commencement of plaintiffs' lawsuits and parallel court and enforcement proceedings launched by federal regulators and the Attorney General of the District of Columbia, InPhonic ceased business operations, placed its assets up for sale, and filed for federal bankruptcy protection in November 2007. Thus, Plaintiffs effectively achieved one goal of the litigation by halting InPhonic's fraudulent conduct; nevertheless, Plaintiffs continued their litigation against the Individual Defendants (InPhonic's

officers and directors) and the rebate claims handlers (Defendants Continental Promotions Group and Helgeson Enterprises) who had helped carry out the scheme and benefited from it.

In response to the urging of this Court, Plaintiffs and Plaintiffs' Co-Lead Counsel have expended significant time, energy, and resources to settle this dispute through more than two years of settlement discussions with the able assistance of mediator Nancy Lessor. Following extensive negotiations, in August 2009 the parties ultimately executed the Settlement Agreement (***Exhibit A***). The Settlement Agreement resolves all of the cases within MDL Docket No. 1792 and provides valuable benefit to Plaintiffs. During the extensive settlement negotiations, and as set forth in Paragraphs 2 and 3 of the Settlement Agreement, the parties agreed that Plaintiffs could petition this Court for an award of attorneys' fees and expenses in an amount not to exceed $950,000. The fees and expenses awarded by this Court will be paid by Defendants' insurance carrier(s) and will not reduce the amounts to be paid to Plaintiffs. By the instant Motion, Plaintiffs and their counsel seek enforcement of the Settlement Agreement and request that this Court award them attorneys' fees and expenses in the amount of $950,000.

## II. STATEMENT OF THE CASE

Plaintiffs are residents of Texas, New Jersey, California, Illinois, Florida and Michigan, SAC, ¶¶ 7-19, who, along with hundreds of thousands of consumers nationwide, were victimized by a scheme to defraud, which was conceived and carried out by the Individual Defendants, who were the principal corporate officers of now-bankrupt Washington, D.C.-based InPhonic, and its business partners, rebate claims handlers CPG and Helgeson.[1] SAC, ¶¶

[1] By Order dated April 6, 2009 (Document 82), this denied the motion to dismiss filed by Defendant, Continental Promotion Group ("CPG"), as moot pending the outcome of CPG's bankruptcy.

1, 20-22 (describing scheme to defraud and each of the Defendants' knowing participation therein).

Plaintiffs, Edwin Davis, Hongyi Yu and Barbara McGivney, filed the first two actions in March and May, 2006, respectively. On June 12, 2006, InPhonic notified counsel for Plaintiffs in those cases of the two related cases. On June 26, 2006, InPhonic filed with the MDL Panel a Motion for Consolidation and Transfer of Related Cases pursuant to 28 U.S.C. § 1047, seeking to consolidate four (4) substantially similar cases before this Court. On July 6, 2006, and on a regular basis thereafter, InPhonic filed notices of "tag-along actions" as such actions were filed. In total, InPhonic filed six (6) notices identifying 15 related actions.

On November 28, 2006, the MDL Panel consolidated and transferred 15 related actions before this Court (Documents 1 & 2). On January 26, 2007, this Court held a case management conference and appointed three (3) law firms – Segal McCambridge Singer & Mahoney, Ltd. of Chicago, Climaco Lefkowitz Peca Wilcox & Garofoli Co., LPA of Cleveland, and Wilentz Goldman & Spitzer, P.A. of Woodbridge, NJ, as Interim Co-Lead Counsel for Plaintiffs. On February 26, 2007, Plaintiffs filed their Consolidated Amended Class Action Complaint (Document 19). Thereafter, pursuant to a status conferences conducted by this Court on March 14, 2007, and June 18, 2007 the parties exchanged Rule 26(a) initial disclosures and commenced document discovery. At the Court's direction, Interim Co-Lead Counsel for Plaintiffs and counsel for Defendants InPhonic, CPG and Helgeson engaged in mediation with the assistance of mediator Nancy Lesser.

On November 26, 2007, InPhonic unexpectedly filed for federal bankruptcy protection (Document 37). Following status conferences held by this Court on November 30, 2007 and January 18, 2008, and pursuant to minute orders entered by this Court on January 18, 2008 and

March 21, 2008, Plaintiffs filed their Second Amended Complaint, which reasserted claims against Defendants CPG and Helgeson (InPhonic's rebate processors) and the Individual Defendants, who were InPhonic's principal corporate officers (Document 54). Plaintiffs' claims against the Individual Defendants were based upon their alleged participation in Inphonic's fraudulent activities and their benefit therefrom.

The Second Amended Complaint alleged that Plaintiffs relied upon false, misleading and deceptive advertisements disseminated, or caused to be disseminated, by InPhonic and the Individual Defendants nationwide, claiming to provide consumers with deep price discounts and offering various types of mail-in rebates, including a "Customer Appreciation Rebate," a "Customer Loyalty Rebate," a "RAZR V3 Rebate," a "Mail-in Rebate," a "Customer Mail-in Rebate," a "Bonus Loyalty Rebate," a "Wireless Device Rebate," an "AOL Employee Rebate," a "Voice and Data Rebate" and/or a "Mail-In Voice and Data Rebate," in varying dollar amounts ranging from $50 to $200, or even more, with the purchase of a wireless service plan and a wireless device from InPhonic. Using the U.S. mail and/or interstate wire facilities, Plaintiffs purchased wireless devices and/or wireless service plans from InPhonic through one of its affiliated Internet websites and submitted to InPhonic, Helgeson and/or CPG, using the U.S. mail and/or interstate wire facilities, written rebate claim forms. Plaintiffs alleged that the Individual Defendants and Defendants Helgeson and/or CPG had no intention of timely fulfilling the rebates promised to Plaintiffs and the members of the Classes, regardless of whether they fully and completely satisfied the unreasonable and artificially complicated rebate redemption protocol. Plaintiffs alleged that in order to wrongfully increase the entities' revenues and profits and earn greater salaries and bonuses, the Individual Defendants acted in concert with CPG and Helgeson to unjustifiably reject or intentionally delay redeeming properly

submitted rebate claims. Plaintiffs alleged that these actions were part of a pattern of related and continuous wrongful acts organized to frustrate, delay, or deny properly submitted rebate claims, via U.S. mail and/or interstate wire facilities, by hundreds of thousands of consumers located throughout United States.

In April 2008, Defendants CPG and Hegelson filed motions to dismiss Plaintiffs' Second Amended Complaint (Documents 50 & 52). On August 15, 2008), the Individual Defendants moved to dismiss the Second Amended Complaint (Document 70). Plaintiffs filed extensive oppositions to Defendants' motions on May 21, 2008 and October 3, 2008 (Documents 56 & 72). By Order dated April 6, 2009, the Court refused to grant the motion to dismiss filed by Individual Defendants Steinberg and Westrick as to the First Cause of Action, which asserted claims for violations of the District of Columbia Consumer Protection & Procedures Act; the Second Cause of Action, which asserted violations of various states' consumer protection statutes; the Third Cause of Action, which asserted violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); and the Fifth Cause of Action, which asserted a claim for negligent misrepresentation (Document 82). With the intervening bankruptcy of Defendant CPG, there were three remaining Defendants: Helgeson, Steinberg and Westrick.

As this Court is well aware, it was no easy task to achieve a settlement in this action. As early as March 14, 2007, following a status conference, this Court invited opposing counsel into chambers and expressed the Court's strong opinion that the parties should try to resolve this matter through a mediated settlement. At this Court's urging, the parties commenced mediation in April 2007 before mediator Nancy Lesser. Mediation efforts began on April 13, 2007, and continued through the Spring, Summer and Fall of 2007, only to be interrupted by InPhonic's unexpected bankruptcy filing in November 2007. Following this Court's above-referenced

ruling on the Individual Defendants' motion to dismiss in April 2009, counsel for the remaining parties (Plaintiffs, Helgeson and Individual Defendants Steinberg and Westrick, and their insurance carriers) recommenced mediation efforts and negotiated throughout the Spring and into the Summer of 2009. Ultimately, on August 6, 2009, the parties executed the Settlement Agreement (***Exhibit A***), which reflects a compromise of Plaintiffs' claims against Defendants.

## III. ARGUMENT

### A. Introduction

By the instant Motion and consistent with Paragraph 2 of the Settlement Agreement, Plaintiffs seek an award of attorneys' fees and expenses in the amount of $950,000 that were incurred in the MDL Litigation since the Spring of 2006. As this Court is aware, this is a non-class action settlement of claims asserted by the Plaintiffs against Defendants that provide for the collection of statutory fees. In this context, this Court should award the fees requested because they represent payment for the time spent by Interim Co-Lead Counsel in litigating these consolidated cases to a successful settlement and resolution. With the assistance of mediator Nancy Lesser and as set forth in the Settlement Agreement, the parties negotiated the requested amount and they agreed that Plaintiffs would not quantify any fees and costs incurred beyond this amount. The request for payment of fees and expenses totaling $950,000 is fair and reasonable and should be granted by this Court.

### B. Plaintiffs Achieved A Victory Pursuant To D.C. And Federal Statutes Providing For An Award Of Attorneys Fees And Expenses

The Settlement Agreement, which was negotiated by able and experienced counsel over a period of months, following extensive litigation of federal and state law claims asserted by Plaintiffs against InPhonic, its principal officers, CPG and Helgeson, constitutes a complete victory, obtaining for Plaintiffs the full amount of the rebate payments to which they were

entitled, plus an additional payment that may be likened to punitive damages. As set forth above, Plaintiffs asserted claims against the Defendants for violations of the District of Columbia Consumer Protection & Procedures Act, D.C. Code Ann. § 28-3901 *et seq.* ("CPPA"), as well as the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). Under both statutes, this Court may award Plaintiffs their attorneys' fees and costs. *See* D.C. Code Ann. § 28-3905(k)(1)(B) (fee award is discretionary); 18 U.S.C. § 1964(c) (fee award is mandatory).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A strong presumption exists that the product of these two variables-the "lodestar figure"-represents a "reasonable fee." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 11 (D.D.C. 2008) (citing *Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)). Plaintiffs have submitted declarations from Interim Co-Lead Counsel showing that they have incurred $950,000 in attorneys' fees and costs in this matter. (*See* Declarations of Kevin P. Roddy, Steven A. Hart and John R. Climaco accompanying this Motion.) According to the terms of the Settlement Agreement, "[t]he Plaintiffs agree that the petition shall not seek attorneys' fees and costs in excess of Nine Hundred and Fifty Thousand Dollars ($950,000.00), and they further agree that they and their counsel will not submit any pleading or other document, or make any argument, to the Court stating or suggesting in any way that they have incurred in excess of $950,000 in attorneys' fees and costs." ***Exhibit A***, ¶ 2.

As the Ninth Circuit recently stated in awarding statutory fees in a civil rights context, "[i]n making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel. ***The way to***

***do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less."*** *Moreno v. Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008) (emphasis added; citations omitted). The Ninth Circuit observed that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.* at 1112.

As stated by Judge Oberdorfer in *Freeman v. B&B Associates*, "[t]he statutory fee is not measurable so much by the amount of the recovery as by the value of the services." 595 F. Supp. 1338, 1344 (D.D.C. 1984) (settlement under CPPA). While the attorneys' fees incurred by Interim Co-Lead Counsel in these consolidated cases are significant, they are fair and reasonable given the scope of the litigation, the complex and factual issues presented herein, the number of appearances before this Court, and the protracted hours that were spent negotiating settlement through mediation. There was no duplication of effort, and the documented efforts of Interim Co-Lead Counsel were necessary to achieve a positive result for Plaintiffs. In these consolidated cases, Plaintiffs and Interim Co-Lead Counsel prosecuted claims against InPhonic, one of the largest Internet retailers in the nation, represented by one of the world's largest law firms, as well as its business partners (CPG and Helgeson). Indeed, had Interim Co-Lead Counsel not devoted the attorney time and monetary resources to this litigation that it did, there is a good chance that InPhonic's fraudulent practices may have continued and Plaintiffs would have received no compensation at all.

Plaintiffs obtained a settlement only by litigating with a host of Defendants, represented by numerous sizeable and well-respected law firms, over a three and one-half year period from the Spring of 2006 to the Fall of 2009. Even after InPhonic filed for bankruptcy protection in

November 2007, Plaintiffs and Interim Co-Lead Counsel continued to aggressively pursue the case against the corporate officers and business partners who had shared in the monetary benefits of the scheme to defraud hundreds of thousands of consumers. Few attorneys and law firms would have had the experience and resources to continue to pursue this case for their clients, and none would have without the hope that at the end of the day, they would receive some compensation.

The risks that Interim Co-Lead Counsel have taken in pursuing these consolidated cases since the Spring of 2006 fully justify the requested award of fees and expenses. In the legal marketplace, an attorney whose compensation is dependent on success and who takes a significant risk should, and does, expect a significantly higher fee than an attorney who is paid market rate as the case goes along, win or lose. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. Richard Posner, ECONOMIC ANALYSIS OF LAW § 21.9, at 534-535 (3rd ed. 1986). Here, the contingency was great, and became even greater in November 2007 when the primary Defendant shielded itself from multi-million dollar liability through bankruptcy. Interim Co-Lead Counsel undertook significant financial risk litigating this case by representing the class and prosecuting this matter on a strictly contingent basis, and by advancing the costs of suit. Interim Co-Lead Counsel were not assured of receiving ***any*** fee in this litigation and, in fact, have not been paid. Interim Co-Lead Counsel incurred the $950,000 in fees and expenses that is the subject of this Motion with no guarantee of recovering compensation for services rendered or reimbursement for costs incurred.

Typically, in this type of contingency matter, plaintiffs' counsel may seek a "multiplier" on their lodestar to reward them for taking on significant risks in the litigation. *See In re Prudential Ins. Co. of*

*America Sales Practice Litigation*, 148 F.3d 283, 339 (3d Cir. 1998) (finding that counsel's decision to take on the world's largest insurance company, and its sophisticated team of counsel, represents the type of substantial risk that warrants a multiplier); *Freeman,* 595 F. Supp. at 1343-1344 (same). In this case, however, Interim Co-Lead Counsel do not seek any multiplier and limit the fees and expenses being sought to $950,000, the amount set forth in Paragraph 2 of the Settlement Agreement.

Moreover, in order to usher through the settlement of Plaintiffs' claims, which requires the dismissal with prejudice of all MDL and non-MDL suits, Interim Co-Lead Counsel have agreed to share any attorneys' fees and expenses awarded by this Court with the other Plaintiffs' counsel that filed cases and worked on these consolidated cases during the period between the Spring of 2006 and January 2007. Pursuant to the Settlement Agreement, Interim Co-Lead Counsel are not permitted to quantify to this Court the value of the work performed by the many other law firms that will share in any award made by this Court. In any event, Interim Co-Lead Counsel have agreed to share any award of fees and expenses with other Plaintiffs' counsel that filed cases against InPhonic, CPG and Helgeson.

Largely because of the bankruptcy of InPhonic, and the relatively small amount of the individual damages, the fees and costs incurred in this case exceed the damages recovered by Plaintiffs. However, in *Williams* v. *First Government,* 225 F.3d 738, 747 (D.C. Cir. 2000), the D.C. Circuit stated that "[g]iven the public policy interests served by the CPPA, we decline to read a "rule of proportionality" into that statute. Such as rule "would make it difficult, if not impossible, for individuals with meritorious … claims but relatively small potential damages to obtain redress from the courts." *Id.* (citations omitted). The D.C. Circuit relied in part on the Supreme Court's decision in *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986), which approved

an award of fees that was more than seven times the damages awarded. As the D.C. Circuit stated, "there is no precise rule or formula for determining the reasonableness of the relation between the fee requested and the relief obtained." *Williams,* 225 F.3d at 747 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983)).

Interim Co-Lead Counsel hope that this Court will agree that their handling of these consolidated cases reflected a depth of skill and experience that only results from the expenditure of extensive time, research and resources. Interim Co-Lead Counsel are actively engaged in complex civil litigation and have achieved significant acclaim for their work in this field. The attorneys who appeared before this Court have a high degree of skill in complex litigation as fully described in Exhibit D of the Meet and Confer Statement. (Document 7 – filed on January 19, 2007.) They exercised their best efforts and professionalism in representing the interests of their clients to this Court.

### C. The Efforts Of Interim Co-Lead Counsel Served The Public Interest

In addition to obtaining a valuable result for the Plaintiffs themselves, this Court should also consider the importance of Interim Co-Lead Counsel's efforts in light of the public interest that they sought to advance through this litigation. In rejecting a proportionality requirement for fee awards in civil rights cases, in *Rivera,* 477 U.S. at 572-573, the Supreme Court permitted courts to consider a broad range of factors in determining the reasonableness of a fee award. For example, the Supreme Court approved the district court's reasoning that the counsel's efforts had served the public interest by vindicating important constitutional rights and, therefore, "the court did not abuse its discretion is awarding attorney's fees for all time reasonably spent litigating the case." *Id.*

There can be no question that when Plaintiffs commenced this litigation in the Spring of 2006, InPhonic and its corporate officers were engaging in a widescale pattern of consumer fraud. At that time, no government enforcement agency had taken action to shut down InPhonic's fraudulent operations. Interim Co-Lead Counsel and other Plaintiffs' counsel expended significant time and money developing facts and legal theories to file the subject consumer protection lawsuits, which sought injunctive relief and damages. Plaintiffs' original complaints and the Consolidated Amended Class Action Complaint that they filed in January 2007 focused on the dual goals of halting these ongoing deceptive acts and practices and obtaining compensation for the victims of the scheme to defraud.

The scale of InPhonic's fraudulent scheme was enormous. As of March 2006, InPhonic proclaimed that it was the "leading marketer and seller of wireless services on the internet," having achieve 1.1 million wireless activations in 2005. InPhonic claimed to represent 33% of the U.S. online wireless activation market. InPhonic's unlawful, unfair, and deceptive practices, as alleged in Plaintiffs' Consolidated Amended Class Action Complaint, allowed InPhonic to claim lower price than its competition and to dominate the online wireless market.

On January 26, 2007, InPhonic's counsel revealed the staggering number of customers who had submitted rebate claim forms but did not receive a rebate. InPhonic admitted that approximately 132,000 customers had their rebates rejected over just a two and one-half year period from January 1, 2004 to mid-September 2006. *See* Transcript of March 14, 2007 Status Conference, p. 46. This was by design. InPhonic conducted ongoing tests of its rebate offers in an effort to develop those that are most effective; that is, the most attractive for potential customers and the most difficult (in many cases impossible) to redeem.

The lawsuits filed by Plaintiffs beginning in the Spring of 2006 played a critical role in bringing these fraudulent practices to an end. The public interest of this effort is shown by the fact that both the D.C. Attorney General's Office and the Federal Trade Commission soon followed Plaintiffs' lead by launching enforcement actions against InPhonic. During 2006-2007, Inphonic purportedly settled the claims asserted by these government agencies, but apparently fulfilled only a portion of their commitments before filing for bankruptcy protection in November 2007 and obtaining leave of the bankruptcy court to close shop and sell its assets to another corporation. While this was not the injunction that Plaintiffs had originally sought when they commenced this consumer protection litigation, the outcome was the same in halting InPhonic's fraudulent practices.

Even after that point, the public interest was served by Plaintiffs' and Interim Co-Lead Counsel's decision to pursue litigation against the corporate officers and business partners who allegedly orchestrated and profited from the fraudulent conduct. Pursuing such litigation, even after the primary corporate defendant has been sacrificed in bankruptcy, serves to deter future corporate misconduct. Indeed, it is widely recognized that holding corporate officers (and even directors) accountable is one of the only means to deter corporate abuse because such fraudulent corporate enterprises so often fail; in many cases, such individual defendants possess the only remaining assets to compensate fraud victims.

While the efforts of Interim Co-Lead Counsel were necessary to achieve a successful resolution for the Plaintiffs, such efforts also served the public interest by helping to stop InPhonic's deceptive and fraudulent practices and by seeking accountability from InPhonic's principal officers even after InPhonic's well-deserved demise and collapse into bankruptcy.

### D. Because This Motion Is Being Made Pursuant To A Negotiated Settlement Of Statutory Claims That Permit An Award Of Attorneys' Fees And Expenses, This Court Should Approve An Award Up To The Negotiated Amount

Mediator Nancy Lesser specifically engaged the parties in negotiating the award of attorneys' fees and expenses that Interim Co-Lead Counsel could request from this Court, and the resulting Settlement Agreement "caps" the instant request at $950,000. The Settlement Agreement prohibits Interim Co-Lead Counsel quantifying the actual fees and expenses incurred in prosecuting these consolidated cases to the extent that they exceeded $950,000. Indeed, Interim Co-Lead Counsel cannot even suggest to this Court that the value of their work was above $950,000. Thus, Plaintiffs and Interim Co-Lead Counsel respectfully request that this Court award 100% of the attorneys' fees that are quantified in the submitted declarations. *See* Roddy Decl. (a true and accurate copy is attached as ***Exhibit B***), Hart Decl. (a true and accurate copy is attached as ***Exhibit C***); Climaco Decl. (a true and accurate copy is attached as ***Exhibit D***).

The parties' settlement is not a class action settlement and it does not require approval of this Court under Fed. R. Civ. P. 23(e). Similarly, in this case this Court does not have the same responsibility to "police" the fee award to protect the right of absent class members as it would in a class action settlement. Every party in this case was represented by competent counsel and signed on to the Settlement Agreement that sets forth the precise amount of fees and costs that would be requested. Given these facts and circumstances, we respectfully submit that this Court's evaluation should be limited to ensuring that there is a justified basis for awarding fees, that Interim Co-Lead Counsel actually performed the work for which fees are being requested, and that Interim Co-Lead Counsel acted reasonable in performing the work and incurring the fees for which they seek reimbursement. All of these standards are easily met.

Even if this was a class action settlement, Interim Co-Lead Counsel would meet applicable tests for approval of the negotiated fees and expenses. In *In re First Capital Holding Corporation Financial Products Securities Litigation*, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992), *affirmed*, 33 F.3d 29 (9th Cir. 1993), the district court articulated three factors that courts should consider in evaluating a negotiated fee award in the context of a class action: (1) there was no conflict of interest or self-dealing on the part of plaintiff's counsel; (2) the fee was negotiated at arm's-length with sophisticated defendants; and (3) the fee was negotiated by attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained. *Id.* at *13. This test is clearly met here. Indeed, the exhaustive mediation before mediator Nancy Lessor, which was carried out during the Summer and Fall of 2007, and then resumed in the Spring and Summer of 2009, assures that there was no self-dealing on the part of plaintiffs' counsel and that the fee was negotiated at arm's-length. In *D'Amato v. Creditanstalt AG*, 236 F.3d 78 (2nd Cir. 2001), the Second Circuit emphasized that a "mediator's involvement in settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." Moreover, it is clear that the fee negotiations were carried out by attorneys who were intimately familiar with the case, including its significant risks and strengths; these were the same attorneys that this Court had appointed as Interim Co-Lead Counsel in January 2007 and who have managed this litigation on behalf of Plaintiffs since it was centralized before this Court by the MDL Panel.

Notably, Interim Co-Lead Counsel and counsel for Defendants and their insurance carrier(s) agreed on substantive terms of the settlement before negotiating the amount of attorneys' fees and expenses. In other settlement contexts, courts have recognized that this sequence is preferable. *See Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002, 1009-1010,

1019-1020 (N.D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001) ("To eliminate any potential conflict of interest, the parties did not engage in fee negotiations until after the settlement of Plaintiffs' claims on the merits.").[2]

Further, the payment of fees and expenses, in addition to and without diminution of the amount of money to be paid to the Plaintiffs, is a well-recognized factor that weighs in favor of approval of a fee application by demonstrating arm's-length negotiations. Agreeing on the maximum amount of a fee request that defendant will pay separately and above the monetary benefits paid to the Plaintiffs, after agreeing on those benefits, similarly minimizes the danger that the interests of the Plaintiffs will be compromised to increase the fee payable to plaintiffs' counsel, and creates the attraction of certainty for defendants by establishing precisely the limit of their liability. *See Malchman v. Davis*, 761 F.2d 893, 905 (2nd Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986); *First Capital*, 1992 U.S. Dist. LEXIS 14337, *12.

**E. The Costs Expended Were Reasonable And Should Be Reimbursed**

Of the $950,000 request, Counsel seeks reimbursement of $64,910.87 in costs and expenses incurred in the prosecution of these consolidated cases. *See* Hart Decl., Climaco Decl. The out-of-pocket expenses include (1) telephone, photocopying and facsimile charges; (2) overnight delivery, postage and messenger services; (3) legal filing fees; (4) on-line legal research; and (5) expenses associated with travel for mediation and meetings (transportation, meals and

---

2 A task force created by the Third Circuit reasoned that "preventing agreement on fees at the time of settlement of the merits is discussed makes it difficult for the defendant to ascertain precisely what its liability will be, thereby eliminating the very certainty that makes settlement attractive to the defendant." Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 267 (3rd Cir. 1985). The Task Force approved of defendants making a settlement offer conditioned on a later, satisfactory resolution of the issue of attorneys' fees. "This type of offer, assuming the fee question is pursued in good faith, usefully separates the issues of settlement of the merits and resolution of the fees in a way that should minimize the defendant's reluctance to negotiate." *Id.* at 269.

hotels). *Id.* Given the complexity of this case, Interim Co-Lead Counsel and Defendants' counsel chose a mediator of the highest caliber and plaintiffs were responsible for a portion of that cost.

## IV. CONCLUSION

For the reasons stated herein, Interim Co-Lead Counsel respectfully request that this Court grant their Motion and enter an Order awarding them attorneys' fees and expenses totaling $950,000.

Dated: September 30, 2009

Respectfully Submitted,

CLIMACO, LEFKOWITZ, PECA, WILCOX
& GAROFOLI CO., L.P.A.

By: /s/ John R. Climaco
JOHN R. CLIMACO

888 16th Street N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 349-9864
E-mail: jrclim@climacolaw.com

SEGAL, McCAMBRIDGE, SINGER &
MAHONEY, LTD.

By: /s/ Steven A. Hart
STEVEN A. HART

Willis Tower, Suite 5500
233 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 645-7920
E-mail: shart@smsm.com

WILENTZ, GOLDMAN & SPITZER, P.A.

By: /s/ Kevin P. Roddy
KEVIN P. RODDY

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: kroddy@wilentz.com

**Co-Lead Counsel for Plaintiffs**