UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE INPHONIC, INC., WIRELESS
PHONE REBATE LITIGATION

This Document Relates To:
ALL CASES

Misc. Action No. 06-0507 (ESH)
MDL Docket No. 1792

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Payment of Attorneys' Fees and Expenses by

plaintiffs Edwin Davis, Walter Cover, Jonathan Feldman, Stanley J. Heller, Barbara McGivney,

Luis Morales, Joshua Pevnick, Paul Rock, Melinda Roquemore, Shelly Salzman, Ryan

Sutherland, Iona Workman, and Hongyi Yu.  Having considered plaintiffs' motion and the

opposition filed by defendants Helgeson Enterprises ("Helgeson"), David A. Steinberg, and

Brian T. Westrick, the Court will grant the motion in part.

## BACKGROUND

In 2006, several of the instant plaintiffs filed putative class actions in this District

alleging that InPhonic, Inc. ("InPhonic"), a provider of wireless communication services based

in the District, had violated, *inter alia*, the District of Columbia Consumer Protection and

Procedures Act ("DCCPPA"), D.C. Code §§ 28-3901 to -3913, and the Racketeer Influenced and

Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, through InPhonic's allegedly

fraudulent consumer rebate practices.  Some of these complaints also named as a defendant

Continental Promotion Group, Inc. ("CPG"), which served as one of InPhonic's rebate

processors.  Other plaintiffs filed lawsuits in federal court in Arizona, Illinois, New Jersey,

1

alleging similar causes of action, including claims under their respective states' consumer protection laws, against InPhonic, CPG, and Helgeson, another rebate processor.

On June 8, 2006, the D.C. Attorney General's Office ("DCAGO") sued InPhonic in D.C. Superior Court over its rebate practices.  Several weeks later on June 26, InPhonic moved the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C. § 1407, for an order centralizing the multidistrict ("MDL") rebate litigation against it in this District.  On October 25, the JPML issued an order consolidating and transferring the MDL litigation to this Court.  *See In re InPhonic, Inc., Wireless Phone Rebate Litigation* ("*In re InPhonic*"), 460 F. Supp. 2d 1380, 1381 (J.P.M.L 2006).

On January 26, 2007, this Court appointed Steven A. Hart of Segal McCambridge Singer & Mahoney, Ltd. ("the Segal Firm"), Kevin P. Roddy of Wilentz, Goldman & Spitzer, P.A. ("the Wilentz Firm"), and John R. Climaco of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A. ("the Climaco Firm") as interim co-lead and liaison counsel for plaintiffs pending a decision on class certification.  On February 15, the DCAGO announced that it had settled its lawsuit against InPhonic.  On February 26, plaintiffs filed their first consolidated amended class action complaint ("FAC"), naming InPhonic, CPG, and Helgeson as defendants.  During a March 14 status conference, the Court suggested that the parties engage in mediation, which the parties commenced in April with a private mediator.  On April 27, the Federal Trade Commission ("FTC") announced that it had also been investigating InPhonic's rebate practices, and that InPhonic had entered into a consent agreement with the agency.  *See* FTC Agreement Containing Consent Order, *In the Matter of InPhonic, Inc., a corporation* ("*InPhonic*"), File No. 062-3066, 2007 WL 1406416 (F.T.C. Apr. 27, 2007) (unpaginated).  On June 4, the FTC gave final approval to that consent agreement.  *See* FTC Decision and Order, *InPhonic*, Dkt. No. C-

4192, File No. 62-3066, 2007 WL 1740924 (F.T.C. June 4, 2007) (unpaginated).

On November 26, 2007, InPhonic notified the Court that it had filed for federal bankruptcy protection earlier that month.  Thereafter, on March 21, 2008, plaintiffs filed their second consolidated amended class action complaint ("SAC"), naming as defendants Helgeson, CPG, and five former InPhonic corporate officers: Brian J. Curran, George Z. Moratis, David A. Steinberg, Brian T. Westrick, and Andrew B. Zeinfeld.  On April 24, Helgeson and CPG moved to dismiss the complaint, and plaintiffs filed their opposition on May 21.  On August 15, individual defendants Moratis, Steinberg, Westrick, and Zeinfeld also filed a motion to dismiss, which was opposed by plaintiffs.

On November 14, 2008, CPG filed for bankruptcy and notified the Court of this fact on January 29, 2009, and on February 23, the Clerk of the Court entered a default against defendant Curran, who had failed to respond to the summons and complaint  On April 6, after hearing argument on the motions to dismiss, the Court issued an order denying CPG's motion because of the automatic bankruptcy stay; dismissing all claims against Moratis and Zeinfeld; and granting Steinberg and Westrick's motion to dismiss with respect to plaintiffs' claims for breach of contract, unjust enrichment and disgorgement of profits, and equitable relief, but denying their motion with respect to plaintiffs' statutory claims under the DCCPPA, other states' consumer protection laws, and RICO, as well as plaintiffs' common law claims of civil conspiracy and negligent misrepresentation.

On August 6, 2009, the thirteen instant plaintiffs ("the MDL plaintiffs") and five other individual plaintiffs who were not parties to the MDL litigation ("the non-MDL plaintiffs") entered into a settlement agreement with defendants.  Under the agreement, the MDL plaintiffs will receive $39,000 ("the Settlement Amount") "in full satisfaction of all claims" against

3

defendants, InPhonic, CPG, Curran, Moratis, Zeinfeld, or any other person or entity who could have been named as a defendant in the rebate litigation.  (*See* Pls.' Mot. for Payment of Attorneys' Fees and Expenses ["Mot."], Ex. A ("Settlement") at 2 ¶ 1.)  The agreement also permits plaintiffs to file a petition seeking up to $950,000 in attorney's fees and costs incurred the MDL litigation ("the Fee Award"),[1] and defendants are permitted to oppose that petition. (*Id.* at 2 ¶ 2.)  On September 29, plaintiffs Heller, McGivney, Rock, Salzman, Workman, and Yu filed a stipulation of dismissal with prejudice of all claims against defendants.[2]  [*See* Dkt. 86-89, 91.]  On September 30, plaintiffs filed a motion seeking payment of $950,000 in fees and costs accompanied by three declarations and billing invoices.  (*See* Mot., Ex. B (Decl. of Kevin P. Roddy) ("Roddy Decl.") & Attachment ("Wilentz Invoices"); *id.*, Ex. C (Decl. of Steven A. Hart) ("Hart Decl.") & Attachment ("Segal Invoices"); *id.*, Ex. D (Decl. of James R. Climaco) ("Climaco Decl.") & Attachment ("Climaco Invoices").)

On October 30, 2009, defendants filed an opposition in which they contend that plaintiffs are not entitled to attorney's fees.  Defendants argue that the "American rule" disfavors fee awards; that none of the judicially recognized exceptions to that rule "mandate a fee award" in connection with the settlement; and that even if an exception could be applied here, plaintiffs are not "'prevailing part[ies]' who qualify for a fee award."  (Defs.' Opp'n to Mot. ["Opp'n"] at 7-8, 12.) In the alternative, defendants contend that if plaintiffs are entitled to some fees, such awards must be reasonable in relation to the "success" achieved, and therefore, any fee award must be *de minimis*, because plaintiffs did not achieve what they sought when they initiated the litigation as

---

[1] The five non-MDL plaintiffs will each receive $2,000 from the Fee Award.  (*See* Settlement at 3 ¶ 2.)

[2] The other plaintiffs have agreed to dismiss their claims within ten days of receiving

a class action with potentially hundreds of thousands of class members.  (*Id.* at 10, 13; *see, e.g.*, Mot. at 5 (asserting that "hundreds of thousands of consumers nationwide" were affected by defendants' acts).)  Defendants also argue that even if plaintiffs are entitled to more than a *de minimis* fee award, it should not exceed $196,881.07 (defendants' calculation of fees reasonably incurred since the SAC was filed), less "further across-the-board reductions for vague time entries and block billing."  (*Id.* at 23.)[3]

## ANALYSIS

## I.      THE DCCPPA AUTHORIZES AWARDS OF ATTORNEY'S FEES AND COSTS.

Under what has come to be known as the "American rule," parties must ordinarily "shoulder their own counsel fees and other litigation expenses absent statutory or contractual authority for an alternative allocation."  *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 180 (D.C. Cir. 1980) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247-257 (1975)); *see also United States v. Wade*, 255 F.3d 833, 835 (D.C. Cir. 2001) ("[U]nder what is known as the 'American Rule,' each party to a lawsuit usually bears its own attorney's fees 'unless there is express statutory authorization to the contrary.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983))).

The DCCPPA provides that "[a] person, whether acting for the interests of itself, its members, or the general public, may bring an action . . . seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or

---

payment of the Settlement Amount and Fee Award.  (Settlement at 4 ¶ 5.)

[3] Plaintiffs' filed a four-page reply on December 8, 2009, three weeks after the date specified in the Court's briefing order.  (*See* Sept. 3, 2009 Minute Order.)  Despite the lateness of the submission, the Court has considered plaintiffs' reply, even though it fails to address most, if not all, of defendants' legal arguments.

obtain" various remedies, including "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer," "reasonable attorney's fees," and "any other relief which the court deems proper."  D.C. Code § 28-3905(k)(1)(A), (B) & (F).  To the extent that the statutory reference to "fees" does not include an attorney's "costs," the Court concludes that an award covering such expenses would be permitted as "other relief which the court deems proper" under § 28-3905(k)(1)(F).

Through the DCCPPA, the D.C. Council declared its opposition to deceptive advertising and other commercial misrepresentations as a policy matter, regardless of "whether or not any consumer is in fact misled, deceived or damaged thereby . . . ."  D.C. Code § 28-3904; *cf. DeBerry v. First Gov't Mortgage & Investors Corp.*, 743 A.2d 699, 700, 703 (D.C. 1999) (observing D.C. Council's "broad remedial purpose" in creating statute).  The DCCPPA's legislative history further explains that "'reasonable attorneys' fees are recoverable in order to encourage the private bar to take such [consumer protection] cases.'"  *Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 745 (D.C. Cir. 2000) (quoting Report of the Council of the District of Columbia, Committee on Public Services and Consumer Affairs, on Bill No. 1-253, "The District of Columbia Consumer Protection Procedures Act," at 23 (Mar. 24, 1976)).  Accordingly, the Court concludes that because the DCCPPA serves substantive "public policy interests," *id.* at 747, it constitutes statutory authority for departing from the American rule.[4]  *Cf. Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006) ("In light of the American Rule, generally applied in federal court, we have been instructed that state law does

---

[4] The Court rejects defendants' unsupported implication that an authorizing statute must "mandate a fee award" and that plaintiffs are not entitled to recovery of fees because "any fee award under the DCCP[P]A is discretionary, not mandatory."  (*See* Opp'n at 8.)

6

not always control the issue of attorney's fees.  Rather, we are to apply state attorney's fee law

only when it 'embod[ies] a substantive policy.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S.

32, 52 (1991)) (internal citation omitted)).

## II.   SETTLEMENT IS NOT A BAR TO PLAINTIFFS' RECOVERY OF FEES AND COSTS.

Defendants contend that plaintiffs cannot seek attorney's fees as "prevailing parties,"

because "[a] settlement agreement standing alone is insufficient for fee-shifting purposes . . . ."

(Opp'n at 12.)  This argument is unpersuasive, because it presumes incorrectly that the

DCCPPA's fee provision is legally indistinguishable from federal statutory fee provisions such

as 42 U.S.C. § 1988(b).  Under such federal provisions, a "prevailing party" may only recover

fees following a judgment on the merits or a court-ordered consent decree.  *See Buckhannon Bd.*

*& Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604

(2001); *see generally Hensley*, 461 U.S. at 433-36 (setting forth standards governing meaning of

"prevailing party" under § 1988).

The Supreme Court has explained that "[i]n designating those parties eligible for an

award of litigation costs, Congress employed the term 'prevailing party,' a legal term of art."

*Buckhannon*, 532 U.S. at 603.  The DCCPPA is not a federal statute, nor does it use the phrase

"prevailing party."  Rather, the D.C. Council chose to permit recovery of "reasonable attorney's

fees" by those who "bring an action . . . seeking relief from" an unlawful trade practice.  D.C.

Code § 28-3905(k)(1).  Thus, the availability of fees under § 28-3905(k)(1) is not governed by

the Supreme Court's interpretation of a legal term of art that is not found in the statute.  *Cf.*

*Hensley*, 461 U.S. at 433 n.7 ("The standards set forth in this opinion are generally applicable in

all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

7

The District of Columbia Court of Appeals has observed that the DCCPPA "allow[s] the [C]ourt to award a *successful* plaintiff attorney fees." *Brandywine Apartments, LLC v. McCaster*, 964 A.2d 162, 169 (D.C. 2009) (emphasis added). However, nothing in the text of § 28-3905(k)(1) requires that this success must be achieved by trial or court order. In addition, to interpret § 28-3905(k)(1) so as to make settlement a bar to recovering fees would discourage private counsel from bringing consumer protection actions and thus contravene the D.C. Council's stated purpose. Therefore, the Court concludes that § 28-3905(k)(1) does not bar the recovery of attorney's fees and costs where, as here, the parties voluntarily settle the litigation. *Cf. Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 162, 165-66, 172-75 (D.D.C. 2008) (awarding attorney's fees to plaintiff under recently amended FOIA provision permitting such awards where "the complainant has substantially prevailed,'" where "the parties settled all claims without court intervention" after they filed pleadings and agency released relevant documents, and where Supreme Court's decision in *Buckhannon* was inapplicable to FOIA fee provision). By obtaining monetary compensation in "satisfaction of all claims" (Settlement at 2 ¶ 1), plaintiffs have obtained "relief" for their alleged harms within the meaning of the DCCPPA. Thus, they may seek attorney's fees and costs under § 28-3905(k)(1). *Cf. Sierra Club v. E.P.A.*, 322 F.3d 718, 719 (D.C. Cir. 2003) (granting motion for attorney's fees as "appropriate" under Clean Air Act following settlement after concluding that the Act, "unlike statutes that authorize fee awards only to 'prevailing part[ies],' permits awards to so-called catalysts – parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits").

## III.   PLAINTIFFS' REQUEST FOR FEES AND EXPENSES.

### A.   Applicable Legal Principles

"The initial estimate for attorneys' fees is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.  A strong presumption exists that the product of these two variables – the 'lodestar figure' – represents a reasonable fee."  *DL v. District of Columbia*, 256 F.R.D. 239, 242 (D.D.C. 2009) (internal quotation marks, citation, and footnote omitted).

Two key principles govern the Court's determination of how many hours plaintiffs' counsel reasonably expended on this litigation.  First, the fees awarded on a successful claim "must be reasonable in relation to the success achieved."  *Williams*, 225 F.3d at 746; *see also Goos v. Nat'l Ass'n of Realtors* ("*Goos I*"), 68 F.3d 1380, 1387 (D.C. Cir. 1995) ("[I]f the district court determines and explains why the total hours expended were not reasonable in relation to the results obtained – regardless of the number of claims raised – the court has discretion to reduce fees.").  In *Williams*, the D.C. Circuit affirmed a post-trial award of damages and fees to a plaintiff who had successfully sued the lender that had refinanced the mortgage on his home.  The jury had awarded the plaintiff $8,400 in damages under the DCCPPA, which district judge increased to $25,200, as authorized by the treble damages provision of § 28-3905(k)(1)(A).  *See* 225 F.3d at 743.  The district court also granted the plaintiff's subsequent motion for $199,340 in attorney's fees.  *Id.*  When the defendant challenged the fee award on appeal, the D.C. Circuit observed that "'[t]here is no precise rule or formula' for determining the reasonableness of the relation between the fee requested and the relief obtained."  *Id.* at 747 (quoting *Hensley*, 461 U.S. at 436) (citation omitted).  Rather, a court may consider "not only the damages . . . recovered," but also "'[t]he vindication of rights, whether constitutional or

statutory.'"  *Id.* (quoting district court).  The D.C. Circuit further explained that "[g]iven the

public policy interests served by the [DC]CPPA," it is not appropriate "to read a 'rule of

proportionality' into that statute.  Such a rule 'would make it difficult, if not impossible, for

individuals with meritorious . . . claims but relatively small potential damages to obtain redress

from the courts.'"  *Id.* (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986)).  A fee

award may therefore be reasonable in relation to the success achieved even though the plaintiff's

fee award may be "disproportionate to the damages he recovered . . . ."  *Id.*

The second governing principle is that a plaintiff may only recover fees "for work related

to the claim" on which the plaintiff was successful.  *Williams*, 225 F.3d at 746.  Where a plaintiff

has achieved success on some claims but not others, "'[f]ees for time spent on claims that

ultimately were unsuccessful should be excluded only when the claims are "distinctly different"

in all respects, both legal and factual, from plaintiff's successful claims.'"  *Id.* (quoting *Morgan*

*v. District of Columbia*, 824 F.2d 1049, 1066 (D.C. Cir. 1987) (quoting *Hensley*, 461 U.S. at

434))).  Although "'there is no certain method of determining when claims are "related" or

"unrelated,"'" *id.* (quoting *Hensley*, 461 U.S. at 437 n.12), a court may look to whether "'[m]uch

of the work done by plaintiff's counsel would have been required to litigate any one of his

claims against any single defendant,'" such as where there was "overlap" among the successful

and unsuccessful causes of action.  *Id.* (quoting district court).  In *Williams*, for example, the

D.C. Circuit approved the district court's finding that it was appropriate to award fees for time

spent on the plaintiff's unsuccessful claims for violations of the federal Truth in Lending Act

("TILA") and for fraud, because those claims sufficiently overlapped with the plaintiff's

successful claims under the DCCPA and the common law of contract unconscionability.  *See id.*

 The district court had observed that "'all the claims against all the defendants involved a

10

"common core of facts" and "related legal theories,"'" *id.*, citing as an example that "'the sale of insurance to plaintiff . . . was a common denominator of plaintiff's [TILA] theory, its fraud theory, and its D.C. statutory claims." *Id.* (quoting district court (quoting *Hensley*, 461 U.S. at 435)); *see also Goos I*, 68 F.3d at 1386-87 ("[W]here the claims do not share a common basis in fact or are not legally related, the court need not award fees if the claims prove unsuccessful.").

**B.      "The Success Achieved"**

Plaintiffs obtained a settlement of $39,000.  While this is a far cry from what they intended to achieve when they first filed suit, the Court agrees that this represents a success on plaintiffs' DCCPPA claims.  Given this amount, it appears that the thirteen MDL plaintiffs will each receive $3,000.  Under the statute, the maximum compensatory damages available to "[a] person" who seeks "relief" from an unlawful trade practice would be "treble damages, or $1,500 per violation, whichever is greater . . . ."  D.C. Code § 28-3905(k)(1)(A).  If each plaintiff had successfully litigated his or her DCCPPA claim, he or she could have sought compensatory damages of $1,500 at most, because no plaintiff's allegedly unpaid rebates exceeded $425 in value (*see* SAC ¶ 10 ($425 total rebate to plaintiff McGivney)), yielding treble damages of only $1,275.  Thus, the settlement's individual average award of $3,000 represents at least double what each plaintiff could have received as compensation after trial.  *See Brandywine*, 964 A.2d at 169 (reducing jury's $2,500 fee award under DCCPPA to $1,500 where "[t]here was no evidence allowing [the court] to treat it as an award of treble damages").

However, the Court cannot credit plaintiffs' speculation that this litigation also served the public interest by "play[ing] a critical role in bringing [InPhonic's] [allegedly] fraudulent practices to an end" when it declared bankruptcy in November 2007.  (Mot. at 16.)  Plaintiffs contend that InPhonic's bankruptcy can be likened to plaintiffs' receipt of an injunction against

11

the company (*see id.*), and that their complaints had the effect of "shin[ing] the light on these practices . . . and a year and a half later InPhonic was out of the fraud business." (Reply at 4.) Because plaintiffs have offered no evidence to support their inflated view of their lawsuit's effect upon InPhonic, this argument amounts to little more than *post hoc ergo propter hoc*.

The Court is also unpersuaded by plaintiffs' contention that the enforcement actions by the DCAGO or FTC did not produce "findings that could cripple an industry[-]leading, multi-million dollar enterprise . . . ." (Reply at 5.) Even though the orders entered in those actions permitted InPhonic to disclaim wrongdoing,[5] the terms of those settlements are *far* more onerous than the terms of the instant settlement. *See generally* Consent Order, *District of Columbia v. InPhonic, Inc.*, No. 06-CV-4390 (D.C. Super. Feb. 15, 2007), *available at* http://newsroom.dc.gov/file.aspx/release/11419/consent_order.pdf (last visited December 18, 2009); FTC Decision and Order, *InPhonic*, 2007 WL 1740924 (unpaginated). Similarly, the Court is not persuaded by plaintiffs' suggestion that the DCAGO and FTC "followed [p]laintiffs' lead" by launching enforcement actions against InPhonic after plaintiffs filed their individual lawsuits in early 2006 (Mot. at 16), since there is no evidence that plaintiffs' actions motivated or assisted the governmental investigations in any way.[6]

_____

[5] The instant settlement also lets defendants "continue to deny any and all allegations of wrongdoing made against them in the Rebate Litigation . . . ." (Settlement at 1.)

[6] Defendants correctly note that the DCAGO and FTC's public statements on their respective settlements did not mention this litigation. (Opp'n at 15.) The DCAGO's press release stated only that it had "approximately 500 complaints against the company," and that "[t]he Metro Washington area's [Better Business Bureau] . . . report[ed] having received 3422 complaints against the company." *See* Press Release at 2, District of Columbia Office of the Attorney General, "The District Settles Suit Against InPhonic" (Feb. 15, 2007), *available at* http://newsroom.dc.gov/show.aspx/agency/occ/section/2/release/11419/year/2007 (last visited December 18, 2009). The FTC's public documents also make no reference to plaintiffs' suit. *See generally* FTC Agreement Containing Consent Order, *InPhonic*, 2007 WL 1406416; FTC

12

## C.       Reasonable Rate

Plaintiffs have not proposed a lodestar figure *per se*; rather, they merely request the maximum amount allowable under the settlement, $950,000.  Because the Court will be reducing the amount that plaintiffs may recover, it is necessary first to determine a reasonable rate.

Plaintiffs' counsel submitted invoices showing billings of $888,235.50 in fees for 2342.3 hours[7] and $64,910.87 in expenses.[8]  (*See* Wilentz Invoices at 21; Segal Invoices at 68; Climaco Invoices at 33.)  These fees and costs exceed the $950,000 maximum Fee Award by $3,146.37.  Because plaintiffs agreed not to make any submission suggesting that they incurred more than $950,000 in fees and costs (*see* Settlement at 2 ¶ 2), the Court will reduce plaintiffs' expenses submission by $3,146.37 to $61,764.50.

Based on the fees incurred, counsel billed an average hourly rate of $379.22.  "[I]t is well established that standard billing rates used by private attorneys are presumptively reasonable." *Mazloum v. District of Columbia*, No. 06-CV-002, 2009 WL 2952567, at *4 (D.D.C. Sept. 16, 2009) (citing *Thompson v. Kennickell*, 836 F.2d 616, 620 (D.C. Cir. 1988), *overruled on other grounds*, *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) (en banc)).  Here, the proposed average hourly rate falls squarely in the middle of the various hourly rates charged by plaintiffs' attorneys.[9]  (*See* Segal Invoices at 67; Climaco Invoices at 33; *see generally* Wilentz Invoices.)

Decision and Order, *InPhonic*, 2007 WL 1740924.

[7] There is a 120-hour discrepancy in the billings submitted by the Wilentz Firm.  A tally of the hours listed in the Roddy Declaration suggests that the firm spent a total of 808.1 hours (*see* Roddy Decl. at 2-4 ¶¶ 4-13), yet the accompanying billing invoices only account for 688.1 hours.  (*See id.*, Attachment at 21 (third column).)  The Court presumes that the invoices are correct, and that the Wilentz Firm spent 688.1 hours on this matter for a total of $334,461.50 in fees.  (*See id.*)

[8] Only the Segal and Climaco Firms submitted a list of expenses.

[9] Roddy, Hart, and Climaco are experienced lawyers who spent substantial time on this

13

The Court concludes that $379.22 per hour is a reasonable rate.[10]

### D.    Hours "Reasonably Expended"

The 2342.3 hours that were billed were not, however, spent solely in pursuit of a representative action under the DCCPPA.  Instead, this case was initially brought as a class action based on federal statutes, state statutes, and the common law.  As explained below, the Court will exclude a total of 1062.4 hours to account for work that appears unrelated to plaintiffs' success on their DCCPPA claims and will only award fees for a maximum of 1279.9 hours.

The Court's analysis is guided by *Williams*.  There, the plaintiff's original suit "named four defendants and alleged five causes of action (common law fraud, common law unconscionability, [DC]CPPA, TILA, and D.C. usury law)."  225 F.3d at 745.  After settling with two defendants and then prevailing at trial against the other two, the plaintiff submitted a fee request calculated as follows:

> Starting with the total amount of fees generated by the suit, Williams's attorneys cut in half all fees incurred prior to settlement [with two of the defendants], thus excluding fees attributable to work performed against [them].  His attorneys then excluded fees with the TILA and usury claims, as well as the post-trial fees associated with the unconscionability claim [on which the jury had delivered a favorable verdict that was vacated by the district judge as a matter of law].  Thus, according to Williams, the . . . fee request, which the district court granted in full, reflects half of all fees associated with the fraud, [DC]CPPA, and

---

matter and billed above $379.22 per hour, but they were assisted by less experienced attorneys and paralegals who billed well below $379.22 per hour.

[10] By comparison, the Laffey Matrix lists a $375 hourly rate for an attorney of 11-19 years experience in the 2006-07 period.  *See* U.S. Attorney's Office for the District of Columbia, Laffey Matrix 2003-2010, *at* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html (last visited December 18, 2009).  This reinforces the reasonableness of an average hourly rate of $379.22.  *See also Brandywine*, 964 A.2d at 169-70 (noting that district court consulted Laffey Matrix and awarded solo practitioner $13,500 in attorney's fees for 36 hours of work, suggesting average rate of $375 per hour).

unconscionability claims prior to settlement [with the two dismissed defendants],
plus the entire amount of such fees after settlement up to the end of trial.

*Id.* at 745-46 (affirming fee award); *see also Jackson v. Byrd*, No. 01-CA-825, 2004 WL

3249692, at *2 (D.C. Super. Sept. 2, 2004) (noting that attorneys for plaintiff seeking fees under

DCCPPA "removed time entries that do not relate to the prosecution of claims against"

defendant against whom plaintiff prevailed at trial).  The instant plaintiffs have not undertaken

similar exclusions from their billing invoices.  And defendants, despite correctly proposing

reductions in fees incurred for work spent on class certification issues, have suggested that the

Court use a sledgehammer approach and merely eliminate all fees and costs incurred before the

filing of the SAC, under the theory that the individual defendants had not yet been named.  (*See*

Opp'n at 21, 23 (proposing exclusion of $742,039.43 in fees and costs incurred prior to SAC's

filing).)[11]  Since neither party has provided a particularly useful method, the Court has

undertaken its own analysis of the billing records, in an attempt to calculate the number of hours

that should fairly be excluded from plaintiffs' fee request.

1.      **Work performed against all defendants on non-DCCPPA causes of
action**

Plaintiffs may recover fees for time spent on their non-DCCPPA causes of action under

other states' consumer protection statutes, RICO, and the common law to the extent that those

causes of action involved related claims.  "[A] plaintiff's claims may be related if they are

brought under different legal theories but are intended to establish the illegality of the same

conduct."  *Pigford v. Vilsack*, Nos. 97-CV 1978 & 98-CV-1693, 2009 WL 1327462, at *3

(D.D.C. May 12, 2009).  For example, in *Goos v. National Association of Realtors* ("*Goos II*"),

---

[11] Significantly, defendants' argument ignores that Helgeson, one of the settling
defendants, was sued in the original complaint.

the D.C. Circuit concluded that a plaintiff's claims for breach of contract and for unlawful

retaliation under the D.C. Human Rights Act "focused on a single, necessary factual issue:

whether [her employer] had dismissed [her] in retaliation for her refusal" to fire an employee for

allegedly racially motivated reasons.  997 F.2d 1565, 1569 (D.C. Cir. 1993).

Plaintiffs' DCCPPA claims and the other causes of action "constituted different legal

attacks upon the same factual premise," *Goos II*, 997 F.2d at 1569 – namely, that defendants

intended to deceive consumers through the issuance of misleading rebates.  "Only by

establishing this central and difficult-to-prove factual premise" could plaintiffs have recovered

on any of their legal theories.  *Id.*  Because plaintiffs' claims were based on interrelated factual

allegations with substantial factual overlap, it cannot be said that the unsuccessful claims were

"distinctly different in *all* respects, both legal and factual, from plaintiff's successful claims."

*Williams*, 225 F.3d at 746 (internal quotation marks omitted; emphasis added).  *Cf. Pigford*,

2009 WL 1327462, at *3 (concluding that unsuccessful claims were "factually distinct" from

successful claims where each of plaintiff's "eleven claims of discrimination were based on

different factual allegations, with no discernible factual overlap among claims").  The Court

concludes that the work performed on plaintiffs' unsuccessful causes of action was related to the

work done on plaintiffs' successful DCCPPA claims and thus does not provide a basis for

reducing the hours billed.

### 2.    Work performed against InPhonic

Plaintiffs will not be precluded from recovering any fees for work done against InPhonic.

Following InPhonic's declaration of bankruptcy, plaintiffs amended their complaint to name

five of InPhonic's former officers, under the theory that they were individually liable for the

corporation's alleged actions.  In other words, the former officers "st[ood] in the shoes of

InPhonic."  (Apr. 3, 2009 Hr'g Tr. at 27:22-23 (Court's comments).)  Given this theory, it is

reasonable to assume that much of the work on plaintiffs' claims against InPhonic also supported

plaintiffs' claims against InPhonic's former officers.  As a result, the Court rejects defendants'

blunderbuss proposal that work performed prior to the filing of the SAC must be excluded

because the individual defendants had not yet been named.

### 3.     Work performed against the individual defendants

Plaintiffs may only recover fees for work done against individual defendants Steinberg

and Westrick.  The Court granted defendants Moratis and Zeinfeld's motion to dismiss, and

although the Clerk entered default against Curran for failure to appear, the terms of the

settlement satisfy all of plaintiffs' claims against him, thereby precluding further pursuit of a

default judgment.  (*See* Settlement at 2 ¶ 1.)  However, the Court concludes that much of the

work performed with respect to Curran, Moratis, and Zeinfeld was necessary in order for

plaintiffs to litigate the claims against the other two individual defendants, so it is reasonable to

exclude only 37.1 hours from the total 2342.3 hours billed to account for time spent only on

those three individuals (*e.g.*, for factual research and the efforts to serve Curran with a second

summons and complaint, as well as default papers).  (*See, e.g.*, Wilentz Invoices at 17-19 (listing

14 hours in defendant-specific entries).)  This represents ten percent of the 370.8 hours billed by

plaintiff's counsel between November 26, 2007, the date InPhonic notified the Court that it had

filed for bankruptcy (after which plaintiffs presumably began to consider suing InPhonic's

officers), and April 6, 2009, when the Court dismissed Moratis and Zeinfeld from the action.[12]

---

[12] Based on the Court's review of the billing invoices for this period, the Wilentz firm
billed 229.3 hours, the Segal firm billed 86.7 hours, and the Climaco Firm billed 54.8 hours.

17

### 4.    Work performed against CPG

Plaintiffs may not recover fees for work against CPG that was unrelated to work against any other defendant.  CPG was named as a defendant in several of the plaintiffs' original individual complaints and in both complaints filed in this Court, but CPG did not participate in the settlement.  (*See* Settlement at 1.)  In addition, plaintiffs did not establish that Helgeson, Steinberg, or Westrick were liable for CPG's actions, nor did plaintiffs name any individual defendants who might have stood in CPG's shoes following its declaration of bankruptcy.  Thus, plaintiffs cannot be deemed to have "succeeded" in any way against CPG.

Nonetheless, the Court concludes that a significant amount of the work performed against CPG would also have been required in order for plaintiffs to litigation their claims against InPhonic and Helgeson.  As such, it is reasonable to exclude only two percent of the total 2342.3 hours billed, or 46.8 hours, to account for work done against CPG that apparently did not overlap with work done against the settling defendants (*e.g.*, factual research into CPG's rebate processing operations and its relationship with InPhonic).  (*See, e.g.*, Segal Invoices at 43-46 (April 2007 time entries listing 19.4 hours spent communicating with former CPG employee and Arizona news reporters regarding CPG rebate policies).)

### 5.    Work performed to oppose MDL transfer to this District

Plaintiffs may not recover the fees associated with the JPML proceedings.  Although no party opposed consolidation, and although some plaintiffs supported InPhonic's motion to transfer the consolidated action to this court, others unsuccessfully argued for transfer elsewhere.  *In re InPhonic*, 460 F. Supp. 2d at 1381.  (*See, e.g.*, Hart Decl. at 2-3 ¶¶ 9-10 (citing time spent on MDL briefs and proceedings); Segal Invoices at 15, 25-26 (listing time entries for opposition to transfer to this District).)  The Court concludes that it is reasonable to exclude 236.7 hours,

which represents half of the 473.4 hours billed by plaintiff's counsel between June 26, 2006, the

date InPhonic filed its MDL motion with the JPML, and October 25, 2006, the date of the order

transferring the litigation to this District.[13]  *Cf. Jackson*, 2004 WL 3249692, at *1 (reducing fees

awarded by 25 percent "to disallow compensation for not insignificant time spent on legal

research and argument on which Plaintiff was not successful").

### 6.      Work performed on mediation prior to filing the SAC

Plaintiffs may not recover fees associated with their efforts to mediate this dispute with

InPhonic, Helgeson, and CPG prior to the filing of the SAC.  Those efforts failed to produce a

settlement, and their focus was upon InPhonic and plaintiffs' class action claims.  Based on its

review of the billing invoices after March 14, 2007, the date of the status conference where the

Court formally suggested mediation, and before March 21, 2008, the date the SAC was filed, the

Court concludes that counsel spent approximately 471.5 hours engaged in, or working on issues

related to, private mediation.[14]  These hours will be excluded from the 2342.3 total hours billed.

### 7.      Work performed on researching class certification

Plaintiffs may not recover fees associated solely with class certification issues.  The FAC

and SAC alleged the existence of a class, but none was ever certified so plaintiffs cannot claim

success on this issue.[15]  Defendants have cited persuasive authority for the proposition that

---

[13] Based on the Court's review of the billing invoices for this period, the Wilentz firm billed 28.7 hours, the Segal firm billed 419.9 hours, and the Climaco Firm billed 24.8 hours.

[14] The Court reached this number by reviewing counsel's time entries during this period and excluding all entries whose narratives referenced the mediation or settlement, including those that were block-billed with tasks unrelated to mediation.  According to this methodology, the Wilentz firm spent 152.9 hours, the Segal firm billed 140.0 hours, and the Climaco Firm billed 178.6 hours.

[15] An award of fees remains appropriate even though plaintiffs settled the litigation as a representative action and not as a class action.  "The DCCPPA specifically authorizes a private

where a plaintiff had been part of a putative class action but ultimately settles her suit as an individual, it is unreasonable for her to seek attorney's fees based upon work done in pursuit of class certification, because "[t]he legal work for which counsel seeks fees can only be justified on the basis of what was at stake for [the plaintiff] individually and by the result obtained for her." *Turner v. Beneficial Nat'l Bank*, 405 F. Supp. 2d 929, 932 (N.D. Ill. 2005) (finding that single plaintiff's request for $185,124 in attorney's fees was unreasonable where she opted out of class action and then settled her individual case for $5,000, because fee application included work done on behalf of putative class).  Because plaintiffs were not successful in their class-related claims, work that was solely related to pursuing class certification (*e.g.*, researching the scope of the class, the number and variety of consumer complaints, and a plaintiff's adequacy to serve as a class representative) must be excluded from the hours reasonably expended.

Although many of counsel's time entries specifically reference research on class certification issues, many do not, even though they likely touched on certification issues. (*Compare, e.g.*, Wilentz Invoices at 5 (January 25, 2007 entry for "legal research regarding discovery bifurcation and class certification issues"), *with id.* at 6 (January 28, 2007 entry for "[l]egal research regarding Consolidated Amended Complaint").)  To better determine the proportion of time spent researching class certification, the Court has examined the billing invoices and the declarations by plaintiffs' counsel, which confirm that significant time was

---

attorney general suit without any reference to class action requirements," thus providing "a separate and distinct procedural vehicle from a class action."  *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008) (granting individual plaintiff's motion to remand his DCCPPA suit to Superior Court).  Here, thirteen plaintiffs recovered at least twice what they could have recovered under the statute. An award of fees and expenses would therefore advance the DCCPPA's goal of encouraging the private bar to represent those seeking satisfaction on potentially meritorious consumer protection claims that might otherwise yield damages too small to make litigation worthwhile.  *See Williams*, 225 F.3d at 747; *see also supra* Section II.

spent on class certification issues.

The Segal Firm spent 18.6 hours preparing the complaints filed by MDL plaintiffs Feldman and Sutherland and non-MDL plaintiff Ron Vincent, as well as consulting with those individuals about "the facts of their cases to determine if they were adequate class representatives." (Hart Decl. at 2 ¶ 5.) The firm also spent 187.1 hours on Internet research before filing those complaints in order to "identify the potential scope of the class and pervasiveness of consumer complaints" and better understand InPhonic's business model, so that counsel could support the class definition and the allegations that class certification was appropriate and that InPhonic had intentionally deceived customers. (*Id.* at 1-2 ¶¶ 4.) Of those 205.7 total hours, the Court will exclude half, or 102.8 hours, as time spent solely on the unsuccessful class certification claims. In addition, based on the Court's review of the Segal Firm's billing invoices, the Court will also exclude 64.9 hours for time spent after August 1, 2006 (the date the initial Feldman complaint was filed in Arizona) on work related to class certification that was not already accounted for by the Court's exclusions for pre-SAC mediation efforts, *see supra* Section III.D.6, such as legal research and work on the January 19 and March 2, 2007 and May 8, 2009 reports on class certification discovery.[16]

The Wilentz Firm spent 13.2 hours in the spring of 2006 preparing the complaints filed by MDL plaintiff Davis and other unspecified plaintiffs, as well as determining whether "these [p]laintiffs would be adequate class representatives." (Roddy Decl. at 2 ¶ 5.) Prior to filing those complaints, the firm also spent 11.4 hours researching InPhonic's rebate practices and their effects upon consumers in order to "determine whether the suit was viable." (*Id.* at 2 ¶ 4.)

---

[16] The Court has employed the same methodology used to calculate time spent on pre-SAC mediation efforts. *See supra* note 14.

Although the firm does not state that this research into "viab[ility]" was specifically related to class certification, the Court will presume that the inquiry mirrored the Segal Firm's similar pre-filing class action research.  Of these 24.6 total hours, the Court will exclude half, or 12.3 hours, as time spent solely on the class certification claims.  In addition, based on the Court's review of the Wilentz Firm's billing invoices, the Court will also exclude 43.1 hours for time spent after March 31, 2006 (the date the initial Davis complaint was filed in this Court) on class certification research unrelated to the pre-SAC mediation efforts.

Although the Climaco Firm summarized its work in similar (and at times identical) terms, it did not summarize how its hours were apportioned, and its billing invoices are less detailed than those of its co-counsel.  (*See generally* Climaco Decl.; *see also, e.g.*, Climaco Invoices at 11-12 (February 2007 entries including telephone conferences and email exchanges of unspecified subject matter).)  The Court will presume that the Climaco Firm apportioned its time similarly to the Wilentz firm, because the former used similar language when describing how it assisted the filing of plaintiff Davis's complaint, analyzed whether Davis would be an adequate class representative, and spent "significant time" strategizing with co-counsel on issues such as "defendants' attempt to bifurcate class and merit discovery."  (Climaco Decl. at 3-4 ¶ 8; *compare* Roddy Decl. at 2 ¶¶ 5, 7.)  Accordingly, the Court will exclude 47.2 of the total 585.7 hours billed by the Climaco Firm, which represents the same proportion of class certification-related hours excluded from the Wilentz Firm's total hours.

In sum, the Court concludes that it is reasonable to exclude 270.3 hours from the total 2342.3 hours billed to account for work done on plaintiffs' unsuccessful class certification claims.

### E.   Fixed-Value Fee Reductions

The Court has determined that plaintiffs reasonably expended, at most, 1279.9 hours on this litigation.  At a reasonable rate of $379.22 per hour, this produces a revised lodestar of $485,363.68 in fees, not including costs.  For the reasons discussed below, the Court will reduce this revised lodestar by an additional $7,589.67, yielding a final lodestar of $477,774.01.

#### 1.   Work performed on the fee motion

The Climaco Declaration asserts that plaintiffs do not seek fees or expenses associated with the instant motion (Climaco Decl. at 2 ¶ 3), but defendants correctly observe that the Climaco Firm submitted one hour of billings at a rate of $600 for reviewing drafts of the fee petition.  (*See* Climaco Invoices at 33 (entries for September 24 and 25, 2009).)  The Court will exclude $600 from the total recoverable fees.

#### 2.   Work performed on clerical tasks

Defendants seek deductions of "[a]t least" $123 for certain clerical tasks.  (Opp'n at 23.) *Cf. Miller v. Holzmann*, 575 F. Supp. 2d 2, 30 (D.D.C. 2008) ("A prevailing party entitled to 'reasonable' attorneys' fees may not recoup fees for time professionals spend on purely clerical tasks because such tasks 'ought to be considered part of normal administrative overhead.'" (quoting *Michigan v. U.S. EPA*, 254 F.3d 1087, 1095-96 (D.C. Cir. 2001)).  Plaintiffs' reply does not oppose this request, so the Court will reduce the recoverable fees by $123.

#### 3.   Travel time billed at more than one-half of standard billing rates

Defendants also seek deductions of "[a]t least" $10,300 for travel time billed at more than one-half of plaintiffs' counsel's standard billing rates.  (Opp'n at 23.)  The prevailing practice in this Circuit is to compensate travel time at no more than half the standard billing rate.  *See Miller*, 575 F. Supp. 2d at 30 (citing cases).  From the Court's review of plaintiffs' counsel's

invoices, it appears that counsel has billed attorney travel time at full rates.  Plaintiffs neither

dispute defendants' request for a rate *reduction* nor defendants' estimate of the appropriate

deduction.  (*See* Reply at 6 (characterizing defendants as arguing that plaintiffs' counsel "should

not even be compensated for Court[-]mandated travel")).)  Some of the hours billed to travel have

already been excluded in their entirety as part of the various reductions discussed above, so the

Court will further reduce the recoverable fees only by $6,866.67, or two-third of defendants'

proposed reduction.

###### F.        Across-the-Board Fee Reductions

Defendants also argue that across-the-board reductions are warranted for block billing

and vague time entries.  (Opp'n at 22-23.)  *See DL*, 256 F.R.D. at 245 ("After the Court has

subtracted out non-compensable time, the Court can conduct further across-the-board percentage

reductions as appropriate when a large number of entries suffer from one or more deficiencies.").

The Court agrees that plaintiffs' counsel use of block billing sometimes "ma[de] it impossible

for the Court to separate out the constituent tasks," *id.*, but the Court has already accounted for

this practice by eliminating all hours billed to tasks that related even in part to unsuccessful class

certification claims and pre-SAC mediation.  *See supra* notes 14 & 16.  The Court also agrees

that some of plaintiffs' counsel's time entries – located primarily in the Climaco Invoices – are

*so* lacking in detail as to preclude any analysis of how counsel's time was spent.  (*See, e.g.*,

Climaco Invoices at 13-15, 29-32 (listing entries for meetings, telephone calls, and emails

without specification of subject matter)).)  Accordingly, the Court will reduce the final lodestar of

$477,774.01 by five percent (*i.e.*, $23,888.70).  *Cf. DL*, 256 F.R.D. at 246 (reducing initial

lodestar by ten percent to account for numerous vague time entries); *Miller*, 575 F. Supp. 2d at

36 (same).

**G.     Total Recoverable Fees**

Based on the calculations and analyses discussed above, plaintiffs' may recover a total of

$453,885.31 in fees.

**H.     Costs**

Plaintiffs' counsel billed a total of $61,764.50 in allowable expenses.  *See supra* Section

III.C.  Of this total, the Court "deems [it] proper" for plaintiffs to recover $29,868.06.  D.C.

Code § 28-3905(k)(1)(F).

**1.     Pre-SAC mediation costs**

The Segal and Climaco firms incurred, respectively, $12,672.40 and $9,408.64 in

unreimbursed mediation-related costs (including airfare, mediator's fees, and overnight delivery

services to the mediator) after the March 14, 2007 status conference but before the filing of the

SAC.  (*See* Segal Invoices at 64-65; Climaco Invoices at 36, 38.)  In addition, the Climaco Firm

itemized $2,252.57 in unspecified travel to D.C. and related lodging expenses around the same

dates as the April and June 2007 mediation sessions.  (*See* Climaco Invoices at 36, 38 (April 15

and June 1, 2007 entries, but not including April 15 entry related to March 2007 trip).  The firm

also itemized $2,210.69 in additional overnight delivery, duplication, and telephone conference

costs near those mediation date (*see id.* at 35-37), which suggests that these costs were also

related to pre-SAC mediation.  For the same reasons that the Court has already excluded hours

expended on pre-SAC mediation efforts, the Court will exclude the above costs, yielding a

$26,544.30 total reduction.

**2.     Online research costs**

Counsel spent $10,704.29 on Westlaw and other online research costs.  (*See* Segal

Invoices at 61-65; Climaco Invoices at 35-39.)  In light of the exclusions discussed above for

25

hours spent on work that was unrelated to plaintiffs' satisfaction of their DCCPPA claims, *see generally supra* Section III.D, the Court will reduce the amount plaintiffs may recover for online research by half (*i.e.*, $5,352.15).

**I.     Summary of Recoverable Fees and Costs**

The Court's calculation of plaintiffs' total recovery is as follows:

| | |
|---|---:|
| Total hours billed: | 2342.3 |
| Less hours performed solely against Curran, Moratis, and Zeinfeld | -     37.1 |
| Less hours performed solely against CPG | -     46.8 |
| Less hours performed solely to oppose MDL transfer to D.C. | -   236.7 |
| Less hours performed solely to pursue mediation before SAC filing | -   471.5 |
| Less hours performed solely to research class certification issues | -   270.3 |
| **MAXIMUM RECOVERABLE HOURS:** | **1279.9** |
| | |
| Maximum recoverable hours multiplied by $379.22/hour fee rate: | $485,363.68 |
| Less work performed on fee motion | -      $600.00 |
| Less work performed on clerical tasks | -      $123.00 |
| Less travel time billed at more than half of standard billing rate | -   $6,866.67 |
| FINAL LODESTAR: | $477,774.01 |
| Less 5% reduction for vague time entries | -  $23,887.70 |
| **TOTAL RECOVERABLE FEES:** | **$453,885.31** |
| | |
| Total costs submitted (after reduction for exceeding Fee Award cap) | $61,764.50 |
| Less expenses related to pre-SAC mediation | -  $26,544.30 |
| Less half of online research expenses: | -   $5,352.14 |
| **TOTAL RECOVERABLE EXPENSES:** | **$29,868.06** |

| | |
|---|---:|
| **PLAINTIFFS' TOTAL RECOVERY:** | **$483,753.37** |

**CONCLUSION**

For the foregoing reasons, the Court grants plaintiffs' motion in part.  Plaintiffs are awarded $483,753.37 in fees and costs, and such payment shall be made in accordance with Paragraph 3 of the settlement agreement.

**SO ORDERED.**

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 18, 2009